**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| FEDERAL CURE (FedCURE), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 07–00843 (RBW) |
| ) | |
| HARLEY G. LAPPIN, DIRECTOR, ) | |
| FEDERAL BUREAU OF PRISONS, ) | |
| ) | |
| Defendant. ) | |
| ) | |

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Harley G. Lappin, Director of the Federal Bureau of Prisons, by and through undersigned counsel, hereby moves for summary judgment, pursuant to Fed. R. Civ. P. 56, because there is no genuine issue as to any material fact and the Defendant is entitled to judgment as a matter of law. In support of his motion, Defendant submits a Memorandum of Points and Authorities, a Statement of Material Facts Not In Dispute, the Declaration of Wilson J. Moorer, and copies of relevant pieces of correspondence, as Exhibits 1-9. The grounds for the motion are set forth in more detail in the accompanying memorandum of points and authorities in support of the motion. A proposed Order consistent with this motion is attached hereto.

Respectfully submitted,


___/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


___/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney


___/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| FEDERAL CURE (FedCURE), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 07–00843 (RBW) |
| | ) | |
| HARLEY G. LAPPIN, DIRECTOR, | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

This case arises under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Privacy Act of 1974 ("the Privacy Act" or "PA"), 5 U.S.C. § 552a. Plaintiff, an organization by the name of Federal Cure ("FedCure"), challenges a determination by the Federal Bureau of Prisons ("BOP"), a component of the United States Department of Justice ("DOJ"), that FedCure neither qualified for a fee waiver nor a fee reduction in connection with a FOIA request which Plaintiff sent to the BOP for records pertaining to the use of ion spectrometer scanning equipment in BOP facilities.[1] At issue in this summary judgment motion is: (1) whether BOP

---

[1] The merits of ion spectrometry technology and its use by the BOP is not before this Court, only the propriety of the BOP's denial of Plaintiff's request for a fee waiver or reduction in connection with its FOIA request. However, by way of background, Defendant here provides some information about ion spectrometry for the benefit of the Court. Ion spectrometry technology is designed to detect the presence of microscopic traces of illegal drugs on non-inmates and their clothing and belongings. See, e.g., 72 Fed. Reg. 31178-01, *31178-79 (June 6, 2007) (explaining in considerable detail the scientific basis and policy rationale underlying the technology and its use in the nation's prisons); Gray v. Bruce, 2001 W.L. 1580940, **1, n. 1 (10th Cir. 2001) (noting that "[i]n ion spectrometer testing, a damp cotton swab is rubbed against

properly denied Plaintiff's request for a fee waiver, and (2) whether Plaintiff qualifies for a fee reduction under either the "representative of the news media" or the "noncommercial scientific institution" fee categories. As is explained below, BOP's decisions as to these matters were entirely reasonable and lawful and should be sustained by this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

By letter to BOP's FOIA/PA unit dated February 25, 2005, Kenneth Linn, the Chairman of FedCure, submitted a request for information under the FOIA and Privacy Act on behalf of his organization. See Exhibit ("Ex.") 1, Declaration of Wilson J. Moorer ("Moorer Decl.") ¶ 3, Ex. A to Moorer Decl.; Ex. 2 (February 25, 2005 Letter from Kenneth Linn of FedCure to the BOP)[2]; see also Docket Entry No. 1, Verified Complaint for Declaratory and Injunctive Relief to Obtain Freedom of Information Act Information ("Compl.") ¶ 10. Mr. Linn's FOIA/Privacy Act request was for the following:

> 1) all information about the accuracy of the ion spectrometer scanning method and the number of visitors turned away at all BOP facilities (by facility) because of the results of the scanning method since institution of its use, 2) all information relating to the training methods used for personnel operating this equipment and staff comments as to these methods and 3) all records of equipment failure and repairs.

---

the clothing or skin of an individual and then placed in a machine for analysis" and that "[a]ccording to the Federal Bureau of Prisons . . . the basis of ion drug and explosives detection technology is the collection and vaporization of atmospheric particulate; ionized vapors drift through the ion mobility spectrometer at different speeds, depending on their structure and size, and the speed at which the ions move provides a distinct 'thumbprint' that identifies the original substance."); United States v. Belwood, 222 F.3d 403, 405 n. 5 (7th Cir.2000).

[2] Mr. Linn's social security number and date of birth have been redacted from the filed copies of the February 25, 2005 letter which appear in Exhibits 1 and 2, in order to protect his privacy.

See Ex. 2 (February 25, 2005 Letter from Kenneth Linn of FedCure to the BOP); see also Ex. 1,

Moorer Decl. ¶ 3, Ex. A; Compl. ¶ 11.  In this initial request, Mr. Linn did not request a fee

waiver.  See Ex. 2 (February 25, 2005 Letter from Kenneth Linn of FedCure to the BOP); see

also Ex. 1, Moorer Decl., Ex. A.

      Mr. Linn's February 25, 2005 FOIA request was received by BOP's FOIA/PA office in

Washington, D.C. on March 7, 2005.  See Ex. 2 (date stamp, indicating receipt of February 25,

2005 Letter by BOP's FOIA/PA section on that date); Ex. 1, Moorer Decl. ¶ 4, Ex. A.  Mr.

Linn's February 25, 2005 FOIA request was logged into the BOP's FOIA database on March 9,

2005 and assigned the FOIA Request Number 2005-03326.  See Ex. 1, Moorer Decl. ¶ 4.

      In a letter dated April 4, 2005, BOP's FOIA/PA office responded to Mr. Linn's FOIA

request.  See Ex. 3 (April 4, 2005 Letter from BOP to Plaintiff); see also Ex. 1, Moorer Decl.

¶¶ 4-5, Ex. B to Moorer Decl..  In that letter, BOP's FOIA/PA office informed Mr. Linn that:

> After a careful review of your request, it has been determined it will take an
> estimated 142 hours of search time to locate the above requested information.
> [i.e., the material which Plaintiff had requested.]  In accordance with 28 C.F.R.
> § 16.11(c)(1)(ii), the cost for staff time involved in the search of this information
> is assessed at $7.00 per quarter hour for professional time.
>
> Therefore, you are being charged $7.00 per quarter hour for an estimated 142
> hours for a cost of $3,976.00.  This amount does not include a duplication fee of
> .10 cents per page of information reproduced as a result of the search.

See Id. (emphasis in original); see also Compl. ¶ 12.  The April 2005 letter further explained that:

> In accordance with 28 C.F.R. § 16.11(i)(2), we can require advance payment of
> fees in excess of $250.00.  Therefore, should you require this office to proceed
> with your request, please submit a check or money order, payable to the Treasury
> of the United States, in the amount of $3,976.00 within 30 days to this office at
> the above address so that we may begin retrieval and review of these records.

See Ex. 3 (April 4, 2005 Letter from BOP to Plaintiff) (emphasis in original); see also Ex. 1,

Moorer Decl. ¶ 5, Ex. B to Moorer Decl..

On August 18, 2005, BOP's FOIA/PA office in Washington, D.C. received a faxed copy of a letter from Mr. Linn dated April 20, 2005. <u>See</u> Ex. 4 (August 18, 2005 Fax Cover Sheet and April 20, 2005 letter from Mr. Linn to BOP's FOIA/PA office); <u>see also</u> Ex. 1, Moorer Decl. ¶ 5, Ex. C to Moorer Decl.[3]. In this letter, Mr. Linn requested that the BOP waive the $3,976.00 fee which BOP had indicated would be charged for the search time required to respond to his FOIA request as well as a waiver of any copy fees. <u>Id.</u>; Compl. ¶ 13.

Mr. Linn asserted in his April 20, 2005 letter that "FedCure is a non-profit organization with less than $5,000.00 in yearly donations" and claimed that "[w]e publish a newsletter that is received by members of the public as well as maintain a website with regular daily news updates." <u>Id.</u> He also argued in the letter that Fedcure qualified for a fee waiver because: (1) "[w]e are considered a 'noncommercial scientific institution' since we are involved in the social sciences, keep an extensive library, can be called a 'think tank,' and devote time and resources to research and dissemination of information on matters of public interest"; (2) "[w]e are a representative of the news media through our regular newsletters"; and (3) "[t]he information sought is in the public interest because it is likely to contribute significantly to public understanding of the operations of the government and is certainly not in the commercial interest of the requestor." <u>Id.</u>

Mr. Linn further represented in the letter that FedCure had "received numerous requests from the public for the information requested," that it "intend[ed] to publish the response in [its]

---

[3] Mr. Linn's social security number and date of birth have been redacted from the filed copies of the April 20, 2005 letter which appear in Exhibits 1 and 4, in order to protect his privacy.

4

newsletter and on [its] website," that the "information had value to the public-particularly those who regularly visit incarcerated federal inmates," and that FedCure was "the world's leading expert in matters relating to federal inmates."  See Ex. 4 (April 20, 2005 letter from Mr. Linn to BOP's FOIA/PA office); see also Ex. 1, Ex. C to Moorer Decl.

In a letter dated September 26, 2005, the BOP's FOIA/PA Office responded to Mr. Linn's request for a fee waiver.  See Ex. 5 (September 26, 2005 letter from BOP's FOIA/PA office to Mr. Linn); see also Ex. 1, Moorer Decl. ¶¶ 6-8, Ex. D to Moorer Decl..  It that letter, BOP's FOIA/PA office noted that "[t]he statutory test for evaluating fee waiver requests is whether release of the information 'is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester,' in which event a fee waiver or reduction is required by law."  Id. (citing 5 U.S.C. §552 (a)(4)(A)(iii)).  It also noted that the "six factors used in the determination as to whether a sufficient contribution to the public understanding of government operations or activities would result from disclosure, so as to warrant the granting of a fee waiver" are as follows:

> 1) whether the subject of the requested records concerns "the operations or activities of the government"; 2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities; 3) whether disclosure of the requested information will contribute to the understanding of the general public at large; 4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations and activities; 5) whether the requester has a commercial interest that would be furthered by the requested disclosure; and 6) whether any such commercial interest outweighs the public interest in disclosure.

Id.  BOP's FOIA/PA office advised Mr. Linn that "[o]n the basis of all the information you provided" as well as an analysis of the above mentioned six factors, "we have concluded that

your request for a waiver of fees is denied." Id.; Compl. ¶ 14. It noted that, in reaching this conclusion, it had analyzed the definitions of a "noncommercial scientific institution" and a "representative of the news media," set forth in 5 U.S.C. §552(a), and had determined that FedCure did not satisfy either of these definitions. See Ex. 5, September 26, 2005 letter from BOP's FOIA/PA office); see also Ex. 1, Moorer Decl. ¶ 8, Ex. D to Moorer Decl..

The September 26, 2005 letter repeated the fee information which had been set forth in the April 4, 2005 letter, and advised Mr. Linn that he could either: (1) agree to pay the fee, in which case his FOIA request would be processed; or (2) file a written appeal of the denial of his request for a fee waiver with the U.S. Department of Justice ("DOJ")'s Office of Information and Privacy ("OIP"). See Ex. 5, September 26, 2005 letter from BOP's FOIA/PA office); see also Ex. D to Moorer Decl..

By letter dated November 1, 2005, and received on November 9, 2005, Mr. Linn appealed the BOP FOIA/PA's fee waiver denial to the OIP. See Ex. 6 (Mr. Linn's November 1, 2005 letter to the OIP); see also Compl. ¶ 15; Ex. 1, Moorer Decl. ¶ 8, Ex. E to Moorer Decl.. In his appeal letter, Mr. Linn argued that FedCURE met the definition of a "representative of the news media" and a "noncommercial scientific think tank," and that the information it sought was in the public interest. See Ex. 6 (Mr. Linn's November 1, 2005 letter to the OIP). In an attempt to support these legal contentions, Mr. Linn made the following assertions in his November 2005 letter: (1) "FedCure is the largest private organization dealing with federal inmate issues"; (2) FedCure's "website, which provides timely news for the public has been up for about two years and has already had over 250,000 hits"; (3) "[i]ts chat site at Yahoo groups has as many as 100 requests for information each day"; (4) "FedCure is a 501(c)(3) non-profit" whose "directors

6

and staff serve with no pay"; (5) "[t]he primary function of FedCure is to provide information to the public about the workings of the Bureau of Prisons"; (6) "FedCure has received hundreds of questions and complaints about the workings of the Bureau of Prisons" and "[i]n particular, FedCure has received hundreds of questions and complaints about ion spectrometer procedures and the reasoning behind their use"; (7) "[t]he general public is interested in the use of these machines" and "disclosure would 'significantly' answer the public's questions"; and (8) "FedCure has no commercial interest whatsoever in the disclosure." See Ex. 6 (Mr. Linn's November 1, 2005 letter to the OIP); see also Compl. ¶ 15; Ex. E to Moorer Decl..

In a letter dated June 29, 2006, OIP informed Mr. Linn that it had concluded that BOP had properly denied FedCure's request for a waiver of fees. See Ex. 7 (OIP's June 29, 2006 letter to Mr. Linn); see also Ex. 1, Moorer Decl. ¶ 9, Ex. F to Moorer Decl.; Compl. ¶ 16.  OIP described the statutory standard for evaluating fee waiver requests, set forth in 4 U.S.C. §§ 552(a)(4)(A)(iii).  See Ex. 7 (OIP's June 29, 2006 letter to Mr. Linn); see also Ex. F to Moorer Decl..  OIP indicated that in determining whether FedCure had satisfied this statutory standard, it had considered the six factor test set out in the implementing DOJ's regulation at 28 C.F.R. § 16.11(k), and noted that "[t]he first four of these factors concern the 'public interest' requirement; the fifth and sixth concern whether your interest in the records is primarily commercial." Id.

OIP explained that "[a]lthough the records you seek concern, in part, the operations of BOP, and you do not appear to have an overriding commercial interest in the records, you have not satisfied other factors, most significantly factors two, three, and four of the statutory public interest requirement." Id.; Ex. 1, Moorer Decl. ¶ 9.  Specifically, OIP noted that Mr. Linn had

not adequately addressed the public interest requirement imposed by the FOIA, but instead had

merely paraphrased the statutory standard.  See Ex. 7 (OIP's June 29, 2006 letter to Mr. Linn);

Ex. 1, Moorer Decl. ¶ 9, Ex. F to Moorer Decl..  OIP further indicated that Mr. Linn had failed to

adequately demonstrate that FedCURE is able to disseminate information to the public, noting

that FedCure's "newsletter" was only available on its website and was released on an infrequent

and irregular basis, with gaps as long as two years between some issuances.  See Ex. 7 (OIP's

June 29, 2006 letter to Mr. Linn) at 2.  Moreover, OIP noted that the public interest requirement

had also not been satisfied inasmuch as there was no evidence that FedCURE intended to

"extract, analyze, synthesize, and effectively convey" the highly technical information Mr. Linn

had requested for the benefit of the public.  Id at 2.  In addition, OIP explained that, for a variety

of reasons, FedCure had failed to demonstrate that it was either a "representative of the news

media" or a "noncommercial scientific institution."  See id. at 3-4.  Accordingly, OIP denied

FedCure's appeal.  Id.

Mr. Linn submitted a "Reconsideration of Appeal Denial" to OIP dated July 10, 2006.

See Ex. 8 (Mr. Linn's July 10, 2006 letter to OIP); see also Ex. 1, Moorer Decl. ¶ 10; Ex. G to

Moorer Decl..  In his reconsideration letter, Mr. Linn requested that the OIP reconsider its

decision, based on a recent U.S. District Court for District of Columbia opinion regarding the

granting of a fee waiver to a requester who had submitted a request to the BOP: Prison Legal

News v. Harley G. Lappin, Director, Federal Bureau of Prisons, Civil Action No. 05-1812, 2006

W.L. 1737483 (D.D.C. June 26, 2006).  Id.

On November 8, 2006, OIP responded to Plaintiff's request for "Reconsideration of

Appeal Denial."  See Ex. 9 (OIP's November 8, 2006 letter to Mr. Linn); see also Ex. 1, Moorer

Decl. ¶ 11; Ex. H to Moorer Decl..  In that letter, OIP informed Mr. Linn that it had determined

that its decision of June 29, 2006 was appropriate, and set forth several reasons why the decision

which Mr. Linn had cited in his July 10, 2006 request for reconsideration was distinguishable and

did not support Mr. Linn's request for a fee waiver.  Id.

On May 7, 2007, Plaintiff initiated this action by filing a Complaint in the U.S. District

Court for the District of Columbia, in which it alleged that BOP's denial of its waiver was

improper, requested declaratory relief (a judgment that BOP's denial of the fee waiver was

unlawful), injunctive relief (an order that BOP grant the requested fee waiver and produce the

requested documents without charging that fee), and reasonable attorney's fees and costs.  See

Compl. *generally*  For the reasons set forth below, this Court should uphold BOP's

determinations that Plaintiff neither qualified for a fee waiver nor a fee reduction.

## ARGUMENT

## I.    Standard of Review

### A.    Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure mandates summary judgment where

"there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment

as a matter of law."  See, e.g., Termorio S.A. E.S.P. v. Electranta S.P., 2007 W.L. 1515069, *12

(D.C. Cir. 2007); Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1041 (D.C. Cir. 2003);

Washington Post Co. v. U.S. Dep't of Health and Human Servs., 865 F.2d 320, 325 (D.C. Cir.

1989).  As the Supreme Court has declared, "[s]ummary judgment procedure is properly regarded

not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a

whole, which are designed to secure the just, speedy and inexpensive determination of every

action." See Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (emphasis added).

In this case, the agency Defendant has filed a declaration with this pleading by a Wilson

J. Moorer, a BOP employee with 19 years of experience at the BOP and three years of experience

in BOP's FOIA/PA office, who is familiar with the fee waiver provisions of the FOIA, his

agency's implementing regulations, and with Plaintiff's specific FOIA request and fee waiver

request and the bases for his office's denial of that request. See Ex. 1, Moorer Decl. *generally*.

Defendant has also attached relevant correspondence. Since Defendant's declaration and this

correspondence demonstrate that BOP's denial of Plaintiff's fee waiver request was lawful, and

the pleadings and other filings show no genuine issue as to any material fact, the Defendant is

entitled to summary judgment.

**B.    The FOIA Statute Provides for De Novo Review of Fee Waiver Decisions, but this Review is Limited to the Record Before the Agency**

The FOIA statute provides that "[i]n any action by a requester regarding the waiver of

fees . . . the court shall determine the matter de novo," but instructs that "the court's review of the

matter shall be limited to the record before the agency." See 5 U.S.C.A. § 552(a)(4)(A)(vii)

(emphasis added); see also Campbell v. United States Dep't of Justice, 164 F.3d 20, 35 (D.C.

Cir. 1998); D.C. Technical Assistance Org. v. U.S. Dep't of Housing and Urban Development,

85 F.Supp.2d 46, 48 (D.D.C. 2000) (noting that "[t]he decision of an agency to grant or deny a

fee waiver request is reviewed de novo, looking only to the administrative record before the

agency at the time of the decision"); Rozet v. Dep't of Housing and Urban Development, 59

F.Supp.2d 55, 56 (D.D.C. 1999) (noting that "[d]enials of requests for fee waivers must be

reviewed de novo . . .").[4]  Thus, this Court is required to review the record which was before the

BOP when the BOP  rendered its decisions on plaintiff's fee waiver request.[5]  This record

includes: (1) Mr. Linn's initial FOIA request dated February 25, 2005; (2) BOP's April 4, 2005

letter to Mr. Linn; (3) Mr. Linn's letter dated April 20, 2005 transmitted via facsimile on August

18, 2005; (4) BOP's September 26, 2005 letter to Mr. Linn; (5) Mr. Linn's November 1, 2005

appeal letter to OIP; (6) OIP's June 29, 2006 appeal determination; (7) Mr. Linn's July 10, 2006

Request for Reconsideration of the OIP's appeal determination; and (8) the OIP's November 8,

2006 determination on reconsideration.  See Ex. 1, Declaration of Wilson J. Moorer, Ex. A-H to

the Moorer Decl.; see also Ex. 2-9.

## C.      A Requester Has a Significant Burden to Overcome to Show Entitlement to a Fee Waiver Under the FOIA Statute and DOJ's Implementing Regulations

The FOIA statute provides that "each agency shall promulgate regulations . . . specifying

the schedule of fees applicable to the processing of requests under this section and establishing

procedures and guidelines for determining when such fees should be waived or reduced."  See 5

---

[4] Before 1986, the standard of review for all FOIA fee issues was the Administrative Procedure Act's "arbitrary, capricious, not in accordance with law" standard, 5 U.S.C. §§ 701-706.  See Larson v. Cent. Intelligence Agency, 843 F.2d 1481, 1482-83 (D.C. Cir.1988) (per curiam); Rozet, 59 F.Supp.2d at 56, n. 2.  In 1986, Congress amended the statute, changing the standard of review of fee waivers to de novo review. See Freedom of Information Act of 1986, Pub. L. No. 99-570, 1804(b)(1), 100 Stat. 3207-50; Rozet, 59 F.Supp.2d at 56, n. 2.

[5] The de novo review standard of only the record existing before the agency at the time the agency rendered its fee waiver denial is applied equally to plaintiffs and defendants in FOIA cases.  This standard prevents a requester from supplementing the record during litigation with new or better reasons that the fee waiver should be granted than he or she articulated while before the agency.  See, e.g., Nat'l Treasury Employees Union v. Griffin, 811 F.2d 644, 648 (D.C. Cir.1987) ("Griffin") (declaring that a plaintiff-requester's "failure to demonstrate a public interest before the agency cannot be remedied by doing so before a court"); see also Jarvik v. C.I.A., 495 F. Supp. 2d 67, 71 (D.D.C. 2007).

U.S.C. § 552(a)(4)(A)(i); see also id. at § 552(a)(3)(A) (requiring that FOIA requests be "made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed").  The FOIA further instructs that an agency's "[f]ee schedules shall provide for the recovery of only the direct costs of search, duplication, or review" and that "[n]o agency may require advance payment of any fee unless the requester has previously failed to pay fees in a timely fashion, or the agency has determined that the fee will exceed $250."  See 5 U.S.C. §§ 552(a)(4)(iv), 552(a)(4)(v).  The FOIA also directs that fees be set at different levels, depending on whether the "records are . . . sought for commercial use" and whether the request is made by "an educational or noncommercial scientific institution, whose purpose is scholarly or scientific research" or "a representative of the news media":

> [s]uch agency regulations shall provide that--
> (I) fees shall be limited to reasonable standard charges for document search, duplication, and review, when records are requested for commercial use;
>
> (II) fees shall be limited to reasonable standard charges for document duplication when records are not sought for commercial use and the request is made by an educational or noncommercial scientific institution, whose purpose is scholarly or scientific research; or a representative of the news media; and
>
> (III) for any request not described in (I) or (II), fees shall be limited to reasonable standard charges for document search and duplication.

See 5 U.S.C. § 552(a)(4)(A)(ii) (emphasis added).

The FOIA statute also provides that "[d]ocuments shall be furnished without charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."  See 5 U.S.C. § 552(a)(4)(A)(iii).  Thus, to qualify for a fee waiver under the FOIA statute, a requester must satisfy a two-prong statutory

test.  The requester must show that: (1) "disclosure of the information is in the public interest because it is likely to contribute significantly to the public understanding of the operations or activities of the government" and (2) that "disclosure of the information is not primarily in the commercial interest of the requester."  See 5 U.S.C. § 552(a)(4)(A)(iii); Larson v. CIA, 843 F.2d 1481, 1482-83 (D.C. Cir. 1988) ("Larson") (describing the provision as utilizing a "two-pronged analysis"); Schrecker v. DOJ, 970 F. Supp. 49, 50 (D.D.C. 1997) ("Schrecker").

The statutory requirements however are not all that a requester must satisfy to qualify for a fee waiver.  Pursuant to the statutory mandate it has been given to promulgate fee regulations, see 5 U.S.C. §§ 552(a)(3)(A), 552(a)(4)(A), the Department of Justice ("DOJ") has promulgated guidelines which "components" of DOJ are to follow in determining when fees should be waived, and these regulatory requirements must be satisfied before a fee waiver may be granted. See 28 C.F.R. §§ 16.11(a)-(k).[6]  BOP is a "component" of DOJ for purposes of these regulations. See, e.g., 46 Fed. Reg. 7953-02, 7955, available at 1981 W.L. 111105, 7955 (Jan. 26, 1981) (observing that "[t]he Bureau of Prisons, a component of the U.S. Department of Justice, is responsible for providing custody and care to committed Federal offenders in an integrated system of correctional institutions across the nation"); Cawthon v. U.S. Dep't of Justice, 2006 W.L. 581250, *1, n. 1 (D.D.C. 2006); Prison Legal News v. Lappin, 436 F.Supp.2d 17, 21 (D.D.C. 2006) (noting BOP's "status as a component agency of the DOJ").

---

[6]  The statute and the regulations compiled by the agency must both be taken into consideration when a fee waiver denial is being adjudicated.  See, e.g., Schrecker, 970 F. Supp. at 50 (explaining that [s]atisfying these two prongs [of the test under the statute], while necessary, is not always sufficient to justify a fee waiver" and proceeding to describe the regulatory requirements applicable to such requests);  D.C. Technical Assistance Organization, 85 F. Supp. 2d at 48; Campbell, 164 F.3d at 35; Samuel Gruber Education Project v. U.S. Dep't of Justice, 24 F. Supp. 2d 1, 10 (D.D.C. 1998).

DOJ regulations set forth a six-factor analysis to structure a DOJ component's consideration of the statutory two-prong test.  See 28 C.F.R. § 16.11(k).  The first four factors address the "public-interest" prong, and the latter two factors the "commercial-interest" prong.  Id. at § 16.11(k)(2).  Of particular relevance to this case, in determining the public interest aspect of the fee waiver issue, a DOJ component (and this Court) must consider the following four factors:

(i)  The subject of the request:  Whether the subject of the requested records concerns "the operations or activities of the government."  The subject of the requested records must concern identifiable operations or activities of the federal government, with a connection that is direct and clear, not remote or attenuated.

(ii) The informative value of the information to be disclosed: Whether the disclosure is "likely to contribute" to an understanding of government operations or activities.  The disclosable portions of the requested records must be meaningfully informative about government operations or activities in order to be "likely to contribute" to an increased public understanding of those operations or activities.  The disclosure of information that already is in the public domain, in either a duplicative or a substantially identical form, would not be as likely to contribute to such understanding where nothing new would be added to the public's understanding.

(iii) The contribution to an understanding of the subject by the public likely to result from disclosure: Whether disclosure of the requested information will contribute to "public understanding."  The disclosure must contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester. A requester's expertise in the subject area and ability and intention to effectively convey information to the public shall be considered. It shall be presumed that a representative of the news media will satisfy this consideration.

(iv) The significance of the contribution to public understanding: Whether the disclosure is likely to contribute "significantly" to public understanding of government operations or activities.  The public's understanding of the subject in question, as compared to the level of public understanding existing prior to the disclosure, must be enhanced by the disclosure to a significant extent. Components shall not make value judgments about whether information that would contribute significantly to public understanding of the operations or

activities of the government is "important" enough to be made public.

See 28 C.F.R. § 16.11(k)(2)(i)-(iv) (emphasis added).  It is not sufficient for a requester to

establish that he satisfies some of these criteria.  Rather, "[f]or a request to be in the 'public

interest,' [all] four criteria must be satisfied."  See, e.g., Judicial Watch v. Dep't of Justice, 365

F. 3d 1108, 1126 (D.C. Cir. 2004); see also Judicial Watch, Inc. v. U.S. Dept. of Justice, 2000

W.L. 33724693, *5 (D.D.C. 2000) (finding that "since Judicial Watch has failed to show

compliance with three of the four factors, Judicial Watch is not entitled to a public interest fee

waiver or reduction").

In addition, DOJ's regulations provide guidance regarding what sort of individuals and

entities constitute a "representative of the news media" and a "noncommerical scientific

institution" for purposes of the FOIA statute and DOJ's implementing regulations.  See 28 C.F.R.

§§ 16.11(b)(5), 16.11(b)(6).

The requester bears the burden of establishing that the statutory and regulatory

preconditions to a fee waiver, including the public interest showings, are met.  See, e.g., Judicial

Watch, 365 F.3d at 1126 ("[t]he burden of satisfying the public interest standard is on the

requestor"); Larson, 843 F. 2d at 1483 (noting that "[d]espite the alterations to the statute, the

burden for satisfying the public interest standard remains on the requester"); Griffin, 811 F.2d at

648 (noting that "[a] requester seeking a fee waiver bears the initial burden of identifying the

public interest to be served."); Jarvik v. C.I.A., 495 F.Supp.2d 67, 71 (D.D.C. 2007)  ("Jarvik")

(noting, with respect to the two prong statutory test, that "[t]he requester bears the burden of

establishing these two elements in the administrative record"); Prison Legal News v. Lappin, 436

F. Supp. 2d 17, 22-23 (D.D.C. 2006); Schrecker, 970 F.Supp. at 50 ("The requestor is assigned

15

the burden of showing that the fee waiver standard has been met"); Durham v. U.S. Dep't of Justice, 829 F.Supp. 428, 434 (D.D.C. 1993) ("The requester of the waiver has the initial burden of identifying the public interest in the information.") (internal citations omitted); Friends of the Coast Fork v. U.S. Dep't of the Interior, 110 F.3d 53, 55 (9ᵗʰ Cir. 1997) ("...[R]equesters bear the initial burden of satisfying the statutory and regulatory standards for a fee waiver.).

Furthermore, although the "FOIA is to be liberally construed in favor of waivers for noncommercial requesters," a request for a fee waiver must be formulated with "'reasonable specificity'" and be "based on more than 'conclusory allegations.'"  See Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (internal citations omitted); see also Jarvik, 495 F. Supp.2d at 71 (same); Prison Legal News, 436 F. Supp. 2d at 25; Fitzgibbon v. Agency for Int'l Dev., 724 F.Supp. 1048, 1050 (D.D.C.1989) (the requesting party bears the burden of "identifying, with reasonable specificity, the public interest to be served.").  Indeed, "the agency may infer a lack of substantial public interest "[w]hen a public interest is asserted but not identified with reasonable specificity, and circumstances do not clarify the point of the requests.'"  See Larson, 843 F.2d at 1483 (citing McClellan Ecological Seepage Situation v. Carlucci, 835 F.2d 1282, 1285 (9th Cir.1987) and Griffin, 811 F.2d at 647).

In rendering its determination on plaintiff's fee waiver request, BOP considered the requirements set forth in the FOIA statute, as well as in 28 C.F.R. § 16.11(k)(2), and concluded that FedCure had failed to satisfy the public interest prong of the FOIA statute and regulations governing FOIA fee waivers.  See Ex. 5, 7, 9; see also 5 U.S.C. § 552(a)(4)(A)(iii); 28 C.F.R. § 16.11(k)(2)(i)-(iv).  As is explained below, this conclusion was reasonable and entirely consistent with these authorities.

16

II.   **The Record Reveals that FedCure has Failed to Establish that it Satisfies the Public Interest Requirement Imposed by the FOIA Statute and DOJ's Regulations, and Thus Does Not Qualify for a Fee Waiver**

   A.   **FedCure Does Not Qualify for a Fee Waiver By Virtue of its Non-Profit Status, Its Small Budget, or the Fact that its Directors and Staff Allegedly Serve Without Pay**

In its submissions to the BOP and OIP and its Complaint, FedCure has referenced its status as a § 501(c)(3) non profit organization, alleged that it has a small budget and that its directors and staff serve without pay, and suggested that these circumstances entitle it to a FOIA fee waiver.  See, e.g., Compl. ¶¶ 3, 6 (twice noting that "FedCURE is a § 501(c)(3) non-profit organization . . ."); Ex. 4 (April 20, 2005 letter from Mr. Linn to BOP, requesting fee waiver and asserting that "Fed Cure is a non-profit with less than $5000.00 in yearly donations"); Ex. 6 (November 1, 2005 letter from Mr. Linn to OIP appealing BOP's fee denial, and stating that "FedCure is a 501(c)(3) non-profit" whose directors and staff serve with no pay").  When this matter was before the OIP, the OIP noted with respect to this argument, that "[w]hile nonprofit organizations often are capable of disseminating information, they do not by virtue of their status presumptively qualify for fee waivers."  See Ex. 7 at 2.  OIP's judgment in this regard was consistent with longstanding precedent.

In fact, the indigence of a FOIA requester does not entitle it to a fee waiver.  See, e.g., D.C. Technical Assistance Organization, 85 F. Supp. 2d at 48 (observing that "[c]ourts in this jurisdiction have consistently ruled . . . that indigence alone does not entitle one to a fee waiver"); Ely v. Postal Serv., 753 F.2d 163, 165 (D.C. Cir. 1985) (rejecting the contention that "indigency alone is justification for waiving fees"); Durham, 829 F. Supp. at 435 & n.10 (observing that "indigency alone does not constitute adequate grounds for a fee waiver");

17

Crooker v. Dep't of the Army, 577 F. Supp. 1220, 1224 (D.D.C. 1984).

Moreover, "[a]n entity's status as a non-profit or public interest organization does not relieve it of the burden of meeting the requirements of the statutory test for receiving a fee waiver."  See D.C. Technical Assistance Organization, 85 F. Supp.2d at 48; Judicial Watch, Inc. v. U.S. Dep't of Justice, 122 F. Supp. 2d 13, 17 (D.D.C. 2000) ("Judicial Watch I") (finding that an organization's claim that it was a 'a non-profit, non-partisan, tax-exempt 501(c)(3) organization which as a public interest law firm specializes in deterring, monitoring, uncovering, and addressing public corruption in government'" is "nothing more than a general description of Judicial Watch's organizational mission" and explaining that  "[t]his description in no way identifies the public interest that would be served through the specific FOIA request at issue in this case."); see also McClain v. Dep't of Justice, 13 F.3d 220, 221 (7th Cir.1993) (recognizing that "[e]ven a request from a newspaper or nonprofit institution would not lead to an automatic waiver of fees" and that "nonprofit status alone does not yield free access to facts" under the FOIA statute); Nat'l Security Archive v. Dep't of Defense, 880 F.2d 1381, 1384 (D.C. Cir. 1989).  Rather, an entity such as FedCure must establish that it satisfies the statutory and regulatory preconditions to a fee waiver request.

**B.    Plaintiff's Fee Waiver Request and Appeal Did Not Address the Overall Public Interest Requirement With the Specificity Courts Have Demanded**

As has been mentioned, to qualify for a waiver of search and copy fees under the FOIA, a requester must make an adequate showing that the information requested is in the public interest and that it is not primarily in the commercial interest of the requester.  See 5 U.S.C. § 552(a)(4)(A)(iii) ("[d]ocuments shall be furnished without charge . . . if disclosure of the

18

information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester"); see also 28 C.F.R. §16.11(k)(2)(I)-(iv) (encompassing the first four fee waiver factors).  Although BOP found that Plaintiff did "not appear to have an overriding commercial interest in the records" sought, see Ex. 7 at 1-2, it concluded that it had run afoul of the statutory and regulatory public interest requirement.

Mr. Linn's submissions did not adequately address the "public interest" requirement imposed by the FOIA statute and regulations.  With respect to this issue, they merely contained (1) statements of FedCure's organizational mission and bona fides, (2) paraphrases of the relevant statutory and regulatory language, (3) expressions of general interest in the material sought, and (4) vague and conclusory language.  See, e.g., Ex. 4 (April 20, 2005 letter) at 1 (stating that "Fed Cure is a non-profit," that "FedCure is the world's leading expert in matters relating to federal inmates"); id. at 1 (declaring that "[t]he information sought is in the public interest because it is likely to contribute significantly to public understanding of the operations of the government and is certainly not in the commercial interest of the requestor" and  that "FedCure has received numerous requests from the public for the information requested"); see also Ex. 6 (November 9, 2005 appeal letter, again noting that FedCure is a "501(c)(3) non-profit," stating that its "primary function" is to "provide information to the public about the workings of the Bureau of Prisons"); id. at 1 (mentioning that it "has received hundreds of questions and complaints about ion spectrometer procedures and the reasoning behind their use"); id. at 2 (essentially paraphrasing the six part regulatory standard set forth in 28 C.F.R. § 16.11(k)(2)(i)-(iv), 16.11(k)(3)(i)-(ii)).

19

As OIP noted in its June 29, 2006 letter denying FedCure's appeal of BOP's fee waiver denial, "[s]uch limited information is insufficient to qualify FedCure for a fee waiver."  See Ex. 7 at 2.  Rather, as OIP observed, FedCure's submissions are equivalent to the statements by a requester which the D.C. Circuit found "conclusory and insufficient" in Oglesby v. Dep't of the Army, 920 F.2d 57 (D.C. Cir. 1990) ("Oglesby"), in which a requester stated simply that "[t]he information requested is beneficial to the public interest" and that "I am a writer and lecturer who has disseminated such information in the past, and I intend to do so in the future."  See Ex. 7 at 2 (citing Oglesby, 920 F.2d at 66 & n.11).  As OIP further noted, Mr. Linn had "not in any way explain[ed] how, in what manner, or why he believ[ed] that FedCure's request meets each of the [regulatory] fee waiver factors."  See Ex. 7 at 2.

Plaintiff's statements in this case on the public interest issue are also comparable to those found to be insufficiently specific in Judicial Watch I, 122 F. Supp. 2d 13 (D.C. Cir. 2000).  The Plaintiff there was found merely to have provided a "description" of "its organizational mission" and "conclusory assertion[s]" which do not "sufficiently specif[y] the link between the information requested and the public interest."  See Judicial Watch I, 122 F. Supp. 2d at 17 (also noting that the requester there had merely stated that "it is a 'non-profit, non-partisan tax exempt 501(c)(3) organization which as a public interest law firm specializes in deterring, monitoring, uncovering, and addressing public corruption in government,'" and that "'[t]he subject of [its] request is information concerning the operations and activities of the government").

In contrast with the requesters in Prison Legal News v. Lappin, 436 F. Supp. 2d 17 (D.D.C. 2006) and Judicial Watch v. Rossotti, 326 F. 3d 1309 (D.C. Cir. 2003) ("Rossotti"), Plaintiff here has not "specifically explain[ed]" how the public will benefit from the information

20

sought in those records.  See Prison Legal News, 463 F. Supp. at 26; Rossotti, 326 F. 3d at 1313.

Certainly, the courts' conclusion in each of those two cases, that "we cannot imagine what else

[the plaintiffs] could have said to satisfy the government's appetite for specificity," does not

apply here.  See Prison Legal News, 463 F. Supp. at 26; Rossotti, 326 F. 3d at 1313.

Ample authority supports the OIP's conclusion that conclusory statements of the sort

FedCure has made to date do not satisfy the statutory and regulatory "public interest"

requirement.  See, e.g., Judicial Watch, 326 F.3d at 1312 (holding that a request for a fee waiver

must be formulated with "'reasonable specificity'" and be "based on more than 'conclusory

allegations.'"); Prison Legal News, 436 F. Supp. 2d at 25; Jarvik, 495 F. Supp.2d at 71 (same);

Fitzgibbon, 724 F.Supp. at 1050 (the requesting party bears the burden of "identifying, with

reasonable specificity, the public interest to be served."); Larson, 843 F.2d at 1483 (explaining

that "the agency may infer a lack of substantial public interest "[w]hen a public interest is

asserted but not identified with reasonable specificity, and circumstances do not clarify the point

of the requests.'") (citing McClellan, 835 F.2d at 1285 and Griffin, 811 F.2d at 647).

This is particularly true, in light of the fact that it is the requester who has the burden of

demonstrating that the public interest requirement is met.  See, e.g., Judicial Watch, 365 F.3d at

1126 ("[t]he burden of satisfying the public interest standard is on the requestor"); Larson, 843

F.2d 1483 (noting that "[d]espite the alterations to the statute, the burden for satisfying the

public interest standard remains on the requester"); Griffin, 811 F.2d at 648 (noting that "[a]

requester seeking a fee waiver bears the initial burden of identifying the public interest to be

served."); Jarvik, 495 F.Supp.2d at 71 (noting, with respect to the two prong statutory test, that

"[t]he requester bears the burden of establishing these two elements in the administrative

21

record"); <u>Schrecker</u>, 970 F.Supp. at 50 ("The requestor is assigned the burden of showing that the fee waiver standard has been met"); <u>Durham</u>, 829 F.Supp. at 434 ("The requester of the waiver has the initial burden of identifying the public interest in the information.") (internal citations omitted); <u>Friends of the Coast Fork</u>, 110 F.3d at 55 ("requesters bear the initial burden of satisfying the statutory and regulatory standards for a fee waiver.)

> **C.     Plaintiff has Failed to Satisfy Regulatory Fee Waiver Factors II, III, and IV: As It Has Not Shown that Disclosure Will Significantly Contribute to an Increased and Meaningful Understanding by a Reasonably Broad Audience**

> **1.     Plaintiff Probably Satisfies the First Regulatory Factor: Its Request Directly Pertains to Identifiable Operations of the Government**

In rendering its determination on plaintiff's fee waiver request, the BOP took into consideration each of the requirements set forth in 28 C.F.R. § 16.11(k)(2)(i)-(iv), which apply to the public interest prong of the fee waiver analysis.

First, the BOP had to consider whether the subject of the requested records "concern[ed] . . . identifiable operations and activities of the federal government, with a connection that is direct and clear, not remote and attenuated." <u>See</u> 28 C.F.R. § 16.11(k)(2)(i). This threshold requirement is normally easily met in that most records maintained by Federal agencies pertain in some way to the operations or activities of the Federal government. In this case, the Plaintiff has made a request for documents specifically pertaining to the use and maintenance and accuracy of the ion spectrometer scanning method. <u>See</u> Ex. 2. There is little doubt that the documents Plaintiff seeks concern, at least in part, the operations or activities of the government, as BOP has acknowledged. <u>See</u>, <u>e.g.</u>, Ex. 7 (June 29, 2006 letter from OIP to Mr. Linn) at 1-2 (noting that "[a]lthough the records you seek concern, in part, the operations or activities of BOP . . .").

22

However, merely meeting the threshold requirement under the public interest prong of the fee

waiver analysis is insufficient to justify a blanket fee waiver.  See, e.g., Judicial Watch, Inc. v.

U.S. Dept. of Justice, 185 F.Supp.2d 54, 62 (D.D.C. 2002) (finding that the requester in that case

failed to show compliance with three of the four factors, and as such that it was not entitled to a

public interest fee waiver); Judicial Watch, 2000 W.L. 33724693, *5 (D.D.C. 2000) (same).

The regulations required BOP to proceed to consider the remaining three regulatory

factors which relate to the public interest requirement.  As OIP concluded, in its June 29, 2006

letter, Plaintiff has "not satisfied [these] other factors, "most significantly factors two, three, and

four of the . . . public interest requirement."  See Ex. 7 at 1-2.

> **2.    Plaintiff has Not Satisfied the Second Factor as it has Not Shown that
> Disclosure of the Technical Material it Seeks Will Be "Meaningfully"
> Informative and Will Contribute to Increased Public Understanding**

The second factor that BOP had to consider in ascertaining the public interest involved

with the disclosure of the information sought by Plaintiff was "[w]hether the disclosure" was in

fact "'likely to contribute' to an understanding of government operations or activities" inasmuch

as "[t]he disclosable portions of the requested records" would be "meaningfully informative

about government operations or activities in order to be 'likely to contribute' to an increased

public understanding of those operations or activities."  See 28 C.F.R. § 16.11(k)(2)(ii).  As OIP

noted in both its June 29, 2006 and November 8, 2006 letters to Mr. Linn, and as is discussed in

greater detail below in connection with the third factor, there were numerous reasons to doubt

that Plaintiff had the ability or intention to disseminate the information it had sought to the

general public.  See Ex. 7 at 2; see also Ex. 9.  Moreover, the OIP noted that "the large volume of

23

information" Plaintiff sought was "technical," and it found "no evidence, of FedCure's intention

to extract, analyze, synthesize, and effectively convey the information received to the public."

See Ex. 7 at 2.  Thus, OIP was of the view that (1) Plaintiff would only be able to share the

information it sought with a small pool of people, and (2) in view of the technical nature of this

information and Plaintiff's intention to present it in undigested form, that only a small subset of

these individuals would understand the data being shared.  As such, these findings gave the OIP a

sound basis for concluding that disclosure was not "'likely to contribute' to an understanding of

government operations or activities" inasmuch as "[t]he disclosable portions of the requested

records" would not be "meaningfully informative about government operations or activities in

order to be 'likely to contribute' to an increased public understanding of those operations or

activities."  See 28 C.F.R. § 16.11(k)(2)(ii) (emphasis added).

3.    **Plaintiff has Not Satisfied the Third Factor as it has Not Shown that Disclosure to It Will Result in Information Being Effectively Conveyed to, and Informing, a "Reasonably Broad" Audience**

The third factor that DOJ's regulations indicate is to be considered in connection with the

public interest inquiry is whether disclosure will contribute to the understanding of the public at

large, and not just a narrow segment of interested persons.  See 28 C.F.R. § 16.11(k)(2)(iii)

(explaining that "[t]he disclosure must contribute to the understanding of a reasonably broad

audience of persons interested in the subject, as opposed to the individual understanding of the

requester" and that "[a] requester's expertise in the subject area and ability and intention to

effectively convey information to the public shall be considered.") (emphasis added); see also

Judicial Watch, Inc. v. Dep't of Justice, 185 F. Supp. 2d 54, 62 (D.D.C. 2002); Judicial Watch I,

24

122 F. Supp.2d at 18.

Specifically, the requester must state how and to whom it intends to disseminate the information it has requested, and the requester must demonstrate that he or she (or it) has the ability and intention to effectively disseminate the information to the public.  See, e.g., 28 C.F.R. § 16.11(k)(2)(iii); Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309 (D.C. Cir. 2003); see also Judicial Watch, Inc. v. Dep't of Justice, 185 F. Supp. at 62; Larson v. CIA, 843 F.2d 1481, 1483 & n. 5 (D.C. Cir. 1988) (finding "an inability to disseminate . . . information to the public" is "alone . . . a sufficient basis for denying the fee waiver request"); Trupei v. Drug Enforcement Admin., 2005 W.L. 3276290, *3 (D.D.C. 2005) (denying a fee waiver in part on the basis that "Plaintiff did not state his intention to disseminate the information to the public or describe the manner and means of dissemination"); Linn v. DOJ, 1997 W.L. 577586, *6 (D.D.C. 1997) (observing that "[i]n addition to establishing that disseminating the requested information will contribute to 'public' understanding[,] . . . Plaintiff must also establish that he has the ability to disseminate the information to the public').

The evidence provided by the Plaintiff to demonstrate its ability to disseminate the materials requested to a reasonable segment of the general public is weak.  Plaintiff has merely claimed (1) that "it publish[es] a newsletter that is received by members of the public"; (2) that it "maintain[s] a website with regular daily news updates"; (3) that its website "provides timely news for the public"; (4) that its website has "been up for about two years" and "has already had over 250,000 hits"; and (5) that "[i]ts chat site at Yahoo Groups has as many as 100 requests for information each day."   see Ex. 4; Ex. 6; Ex. 8.  In fact, an investigation by the OIP of Plaintiff's claims has revealed that Plaintiff's "newsletter": (1) only exists on its website; (2) is not

published with any regularity; and (3) is only available to those who visit its website.  See Ex. 7;

Ex. 9.  Specifically, as OIP explained in its June 29, 2006 letter to Mr. Linn:

> The record . . . merely indicates that any information you receive will be available to subscribers or visitors of FedCure's website in a newsletter which, according to FedCure, is only posted on its Web site.  Importantly, upon viewing FedCure's Web site, it appears that the release of your newsletter is infrequent and irregular, with gaps as long as two years between some issuances.  Likewise, requests such as yours that make no showing of how the information would be disseminated other than by passively making it available to anyone who might seek access to it on the Internet do not meet the burden for fee waiver purposes of demonstrating with particularity that the information will be communicated to the public.

See Ex. 7 at 2.  In its November 8, 2006 letter, OIP reiterated that "[t]he record before me

indicates that any information" Plaintiff receives "will be available to subscribers or visitors of

FedCure's Web site in a newsletter, which according to FedCure, is only posted on its Website."

See Ex. 9 at 1.  Moreover, OIP noted in that letter that "FedCure . . . does not provide the public

with any printed material, and instead relies solely on passively making information available to

anyone who might seek access to the Internet."  See Ex. 9 at 1.  In addition, OIP observed in that

letter that "a review of FedCure's Web site, shows that the release of [its] newsletter is infrequent

and irregular with gaps as long as two years between some issuances" and that "[t]here is no

indication of the size of readership or number of subscribers to this newsletter."  See Ex. 9 at 1.

A perusal of FedCure's website confirms the truth of OIP's statement that "release of [the

organization's] newsletter is infrequent and irregular, with gaps as long as two years between

some issuances."  See, e.g., http://www.fedcure.org/newsletter.shtml (page of FedCure's website,

listing newsletter issuances, and revealing that no newsletter was released between June 2003

and the summer of 2005, that no newsletter was released between March 2006 and October 2006,

and that no newsletter was issued between December 2006 and June 2007).

OIP also noted in its June 29, 2006 letter that while "FedCure's request seeks a lot of information, much of it technical . . . that would need to be collected from the seventy-one BOP facilities that use the equipment," there is "no evidence however, of FedCure's intention to extract, analyze, synthesize, and effectively convey the information received by the public." See Ex. 7 at 2. As OIP found, "[m]erely posting the required technical information on your website, as you seem to suggest, without analysis is insufficient to meet the public interest requirement." Id. at 2. Courts have recognized that "[s]imply maintaining a website is not disseminating information to a broad audience of interested individuals." See, e.g., Brown v. U.S. Patent and Trademark Office, 445 F. Supp. 2d 1347, 1360 (M.D. Fla. 2006), aff'd in 2007 W.L.446601 (11th Cir. 2007) (unpublished).

Moreover, the evidence provided by the Plaintiff to demonstrate its ability to disseminate the materials requested to a reasonable segment of the general public pales in comparison to the means of communication illustrated in other cases decided within this Circuit. In Judicial Watch, 185 F. Supp. 54 (2002), for example, plans to disseminate information through faxes, press releases, website, and radio and television appearances were found to satisfy the third factor of the public interest prong of fee waiver test. See Judicial Watch, 185 F.Supp.2d at 62. In Judicial Watch v. Rossotti, to take another example, the D.C. Circuit found the showing of the third factor to be sufficient where the requestor described, in detail, nine methods used to disseminate FOIA records to the public. See Rossotti, 326 F.3d at 1314. Among those nine methods, which were explained in detailed and non-conclusory terms, included a newsletter with a monthly circulation of over 300,000 copies nationwide; a website that has "logged up to 1,000,000

visitors in a single day; an Internet list serve with 60,000 subscribers who receive daily updates on [Judicial Watch] lawsuits, congressional testimony, a nationally syndicated news and information television show; a weekly radio-program which "airs nationwide on thirty-six radio stations and the Internet." Id. In Electronic Privacy Information Center v. Dep't of Defense, 241 F.Supp.2d 5, 13 (D.D.C. 2003), to take a third example, an organization that produced a bi-weekly electronic newsletter with 15,000 subscribers for eight consecutive years was found to qualify as an entity "disseminating news." Plaintiff has not come close to making any of these showings on the dissemination front.

Plaintiff's showing on the dissemination issue also pales in comparison to that presented in another case, upon which it relies, Prison Legal News v. Lappin, 436 F. Supp. 2d 17 (D.D.C. 2006) ("Prison Legal News"). Although Plaintiff argued during the pendency of its administrative appeal that Prison Legal News supports its position, particularly with regard to the dissemination issue, quite the opposite is true. See Ex. 8 (July 10, 2006 letter from Mr. Linn to OIP). In fact, as OIP noted in its November 8, 2006 letter to Mr. Linn, the Prison Legal News case is distinguishable and the case does not support Plaintiff's position. See Ex. 9. As OIP explained, "[w]hile the Court in Prison Legal News did suggest that a Web site could be a viable distribution channel, it was not the basis of its finding that the plaintiff in that case (PLN) had the intent and ability to disseminate the requested records." See Ex. 9 at 1. As OIP further explained, the Court in Prison Legal News "specifically stated that its finding was made 'regardless of the viability of the PLN website as a mechanism for distributing the requested information.'" See Ex. 9 at 1. This is certainly true. See Prison Legal News, 436 F. Supp. 2d at 26.)

28

Moreover, as the OIP noted, the <u>Prison Legal News</u> court found that the requester there, in marked contrast with Plaintiff here, had "demonstrated an ability to disseminate information by electronic means, specifically its distribution of a printed journal to the public, with a readership population of approximately 18,000" and that in addition PLN "was able to demonstrate that it has published a monthly newsletter since 1990, and was able to provide an estimated number of subscribers and size of readership." <u>See</u> Ex. 9 at 1; <u>see also</u> <u>Prison Legal News</u>, 436 F. Supp. 2d at 19; <u>id</u>. at 26-27. As OIP found, this gave the court in <u>Prison Legal News</u> a basis for determining that PLN had "a represented readership of 'thousands each month' and could "'widely disseminate' the requested information to the "'relevant public.'" <u>See</u> Ex. 9 at 2; <u>Prison Legal News</u>, 436 F. Supp. 2d at 19, 26-27. Plaintiff, by contrast, does not provide the public with any printed material, relies solely on passively making information available to anyone who might seek access to it online on its website and its Yahoo chat room, publishes its newsletter only on its website and on an infrequent basis, has provided no estimate of the size of its readership or the number of subscribers to its newsletter. <u>See</u> Ex. 6; Ex. 7; Ex. 8; Ex. 9.

With specific regard to Plaintiff's claim that its "chat site at Yahoo Groups has as many as 100 requests for information each day," <u>see</u> Ex. 6; Ex. 8; Compl. ¶ 9, OIP noted that it is "aware of no authority to the effect that an Internet 'chat room' is a sufficient demonstration of an ability to communicate to the public, nor that it is consistent with common practice." <u>See</u> Ex. 9 at 2. Moreover, as OIP observed, "FedCure's chat rooms are distinct from the PLN newsletters that were affirmatively distributed to a defined membership." <u>Id</u>. at 2. Moreover, it should also be noted that whereas PLN's "printed journal" was found to have "a readership population of approximately 18,000," <u>see</u> <u>Prison Legal News</u>, 436 F. Supp. 2d at 19, 26-27, a visit to

29

FedCure's yahoo discussion group on September 16, 2007  revealed that as of that date, it only had 1,660 members, with no indication provided of how regularly those members participated in that forum.  See http://groups.yahoo.com/group/FedCure-org/.  Between January and September 2007, the number of messages in that forum ranged from 218 and 677, suggesting that a small percentage of the 1,660 members regularly participate in the forum or read postings there.  Id.

Nor does the case of Linn v. DOJ, 1997 W.L. 577586 (D.D.C. 1997) ("Linn"), which Plaintiff cited in its reconsideration request, help Plaintiff's cause.  See Ex. 8.  As the OIP noted, the requester in that case specified particular lobbying organizations that would disseminate the information it received and indicated that "[t]heir member mailings number in the thousands each month and they have both an interest and the ability to further disseminate the information."  See Linn ,1997 W.L. 577586 at *6; Ex. 9 at 2.  Moreover, the defendant in Linn did "not challenge Plaintiff's claimed ability to disseminate the requested information," whereas Defendant in this case does.  See Linn ,1997 W.L. 577586 at *6; Ex. 9 at 2.  As OIP noted, "[a]nswering questions as provided by anyone who might seek access to the site on Yahoo does not demonstrate a comparable ability to transmit the requested information to the public."  See Ex. 9 at 2.

Nor has Plaintiff explained its track record of conveying to the public information obtained through FOIA requests.  See Judicial Watch, Inc., 185 F. Supp. 2d 62 (referring to the plaintiff's past dissemination of information derived from FOIA requests as one factor leading to the conclusion that plaintiff had fulfilled the third prong of the regulation's public interest test.).

Collectively, based on the records available for review, FedCure has failed to demonstrate that it has the "ability and intention to effectively convey" or disseminate the requested

information to a "<u>reasonably broad</u> audience of persons interested in the subject," as opposed to

the individual understanding of the requester. <u>See</u> 28 C.F.R. § 16.11(k)(2)(iii)*; <u>Judicial Watch</u>,*

185 F. Supp. 2d at 62 (emphasis added).

> **4. Plaintiff has Not Satisfied the Fourth Factor as It has Not Shown that Disclosure Will Significantly Increase Public Understanding**

The fourth factor that the regulations required BOP to consider in resolving the public

interest prong of the fee waiver analysis was whether the disclosure of the information sought

was "likely to contribute 'significantly' to the public's understanding of the government's

operations or activities" and whether "[t]he public's understanding of the subject in question, as

compared to the level of the public understanding existing prior to the disclosure" would be

"enhanced by the disclosure to a significant extent." <u>See</u> 28 C.F.R. § 16.11(k)(2)(iv).  As has

been explained, there are many reasons to doubt that Plaintiff had the ability to disseminate the

information it had sought to the general public. <u>See</u> Ex. 7 at 2; <u>see also</u> Ex. 9.  Moreover, the

OIP noted that "the large volume of information" Plaintiff sought was "technical," and it found

"no evidence, of FedCure's intention to extract, analyze, synthesize, and effectively convey the

information received to the public." <u>See</u> Ex. 7 at 2.  These findings suggested that Plaintiff

would only be able to share the information it sought with a small pool of people, and, in view of

the technical nature of this information and Plaintiff's intention to present it in undigested form,

that only a small subset of these individuals would understand the data being shared.  As such,

these findings gave the OIP (and give this Court) a sound basis for concluding that disclosure

was not likely to contribute '<u>significantly</u>' to the public's understanding of the government's

operations or activities" and that "[t]he public's understanding of the subject in question, as

compared to the level of the public understanding existing prior to the disclosure" would not be "enhanced by the disclosure <u>to a significant extent</u>."  <u>See</u> 28 C.F.R. § 16.11(k)(2)(iv) (emphasis added)

## III.    FedCure has Not Established that it is a Member of the News Media or NonScientific Commercial Institution

Plaintiff has argued that "[w]e are considered a 'noncommercial scientific institution' since we are involved in the social sciences, keep an extensive library, can be called a 'think tank', and devote time and resources to research and dissemination of information on matters of public interest."  <u>See</u> Ex. 4 at 1.  Plaintiff has also claimed that "[w]e are representatives of the news media through our regular newsletters."  <u>See</u> Ex. 4 at 1; <u>see also</u> Ex. 6 at 1 (claiming that both of these propositions "should be obvious.")  Placement in either category would entitle FedCure to favorable fee treatment by limiting fees to duplication costs only.  <u>See</u> 5 U.S.C. § 552(a)(4)(A)(ii)(II); 28 C.F.R. §§ 16.11(a), (b)(5), (b)(6), (c)(1)(i), (c)(2), (c)(3), (d)(1). Because the statutory standard speaks to the use to which the requester will put the information released to it, it is essential to any fee category analysis that the agency be provided sufficient information about the requester's intended use for the records in order for the agency to make a proper fee category determination.  <u>See</u> <u>Nat'l Sec. Archive v. DOD</u>, 880 F.2d 1381, 1382 (D.C. Cir. 1989); Ex. 7.

The regulation defines a "[r]epresentative of the news media" as "any person actively gathering news for an entity that is <u>organized and operated to publish or broadcast news to the public</u>."  <u>See</u> 28 C.F.R. § 16.11(b)(6) (emphasis added).  The regulations define a "[n]oncommercial scientific institution" as one that is "<u>operated solely for the purpose of</u>

32

conducting scientific research the results of which are not intended to promote any particular product or industry." Id. at § 16.11(b)(5) (emphasis added). To date, Plaintiff has provided no information that suggest that it should be placed in either of these categories.

The fact that Plaintiff maintains a website and a yahoo discussion group does not, by itself, entitle it to claim status as a member of the news media. See, e.g., Electronic Privacy Information Center v. Dep't of Defense, 241 F.Supp.2d 5, 14, n. 7 (D.D.C. 2003) (noting that "the Court is not convinced that a website is, by itself, sufficient to qualify a FOIA requester as a 'representative of the news media' entitled to preferred fee status" and that "[v]irtually every entity in the Washington area-businesses, law firms, trade associations, etc.-as well as many individuals, has a website, but certainly all are not entitled to news media status for fee determinations"); see also Brown v. U.S. Patent and Trademark Office, 2007 W.L. 446601,**2 (11th Cir. 2007) (unpublished) (finding that the requester "[B]rown's status as the publisher of a website does not make him a representative of the news media," and that "Brown's statements regarding the purpose of his website and the traffic and notice it has received do not establish that he broadcasts or disseminates news to the public at large"); Brown, 445 F. Supp. 2d at 1357- 58 & n. 10 (rejecting the proposition that "simply maintaining a website makes a FOIA requester a 'representative of the news media.,'" and agreeing with the D.C. Circuit's ruling in Electronic Privacy Information Center that "the presence of a website alone does not qualify a FOIA requester as a representative of the news media").

Indeed, there is no indication on Plaintiff's website that FedCure is "organized and operated to publish or broadcast news to the public" or, for that matter, that it is "operated solely for the purpose of conducting scientific research," as the regulations require. See 28 C.F.R.

33

§§ 16.11(b)(5), (b)(6).  Rather, nearly every page of Plaintiff's own website suggests that it is primarily an advocacy organization, not a news organization or a center of scientific research. See, e.g., http://www.fedcure.org/ (home pages of FedCure, declaring that "FedCURE is the world's leading advocate for America's, ever growing, federal inmate population," referring to "our efforts to reform the federal criminal justice system in the United States," and that "[w]e are working to reinstate parole; increase good time allowances; provide for compassionate releases; restore PELL grants; and opportunities for successful reentry into the community, for all federal offenders; and promote a system that incarcerates fewer people and provides humane conditions for those who are incarcerated or under post-incarceration supervision via parole or supervised release") (emphasis added); see also http://www.fedcure.org/aboutus.shtml (group's "[m]ission [s]tatement" stating that "[a]dvocacy on behalf of the federal inmate population is the central focus of Federal CURE, Inc. . .")

In addition, there is nothing on FedCure's website that indicates that the information it posts is "news" as defined by 28 C.F.R. § 16.11(b)(6) (defining news as "information that is about current events or that would be of current interest to the public," and indicating that "[e]xamples of news media entities include television or radio stations broadcasting to the public at large and publishers of periodicals . . . but only in those instances where they can qualify as disseminators of 'news' . . . who make their products available for purchase or subscription by the general public."). See http://www.fedcure.org/ generally; see also Ex. 7 (making this point).

While Mr. Linn's claims that FedCure maintains "a website with regular daily news updates" that "provides timely news to the public," see Ex. 4, Ex. 6, these claims are belied by FedCure's own Web site.  As has been stated previously, a review of FedCure's website reveals

34

that the release and update of the newsletters are infrequent and irregular.  See, e.g.,

http://www.fedcure.org/newsletter.shtml (page of FedCure's website, listing newsletter

issuances); Ex. 7 at 3; Ex. 9.  As the OIP noted in its June 29, 2006 letter, as of the date of that

letter, "there ha[d] been a total of only six [newsletters] since Winter 2003."  See Ex. 7 at 3.

This is true today.  See http://www.fedcure.org/newsletter.shtml.  The irregularity of its news

postings is one more reason that FedCure does not qualify for special fee treatment as a member

of the news media.  See, e.g., Electronic Privacy Information Center, 241 F.Supp.2d at 14, n. 6

(observing that "[o]f course, not every organization with its own newsletter will necessarily

qualify for news media status . . . " and that "[a]t a minimum, newsletters must be published

regularly, over a period of time, and must disseminate actual "news" to the public, rather than

solely self-promoting articles about that organization") (emphasis added).

　　　In addition, as the OIP noted, "at least four of the six newsletters posted contain

significant overlap of information with other newsletters."  See Ex. 7 at3 (noting specifically that

"the several paragraphs that comprise FedCure's Summer 2005 newsletter are repeated virtually

verbatim in three subsequent newsletters, with minimal differences in overall content").

Moreover, as OIP also noted, "at least two of FedCure's six newsletters contain disclaimers that

advise the reader that 'the content herein is presented for informational purposes only.'"  See Ex.

7 at 3-4.  A visit to FedCure's website confirms that this is true.  See, e.g.,

http://www.fedcure.org/April2003Newsletter.pdf at 30 (Winter 2003 newsletter, containing the

language cited by the OIP and also advising readers that "www.fedcure.org does not attest to

accuracy thereof"); http://www.fedcure.org/June2003Newsletter.pdf at 15 (June 2003 newsletter,

containing identical disclaimer language).

In its request for a fee waiver and appeal, Plaintiff argued that it "intend[ed] to publish the response [it received from BOP to its FOIA request] in [its] newsetter and on [its] website." <u>See</u> Ex. 4 (April 20, 2005 letter from Mr. Linn to BOP) at 1.  As the OIP noted "the large volume of information" Plaintiff sought was "technical," and it found "no evidence, of FedCure's intention to extract, analyze, synthesize, and effectively convey the information received to the public." <u>See</u> Ex. 7 at 2.  However, the D.C. Circuit has ruled that a requestor who seeks information simply in order to make it "available" in raw undigested form, without in any way manipulating, extracting, analyzing,  synthesizing, or exercising editorial control over it, does not qualify for favored fee category treatment as a member of the news media under the FOIA.  <u>See</u> <u>Nat'l Sec. Archive v. U.S. Dep't of Defense</u>, 880 F.2d 1381 1386  (D.C. Cir. 1989) (noting that activities that amount to a way "of making information available to the public . . .are insufficient to establish an entitlement to preferred [fee] status"); <u>id</u>. at 1387 (explaining that "[a] representative of the news media is, in essence, a person or entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience"); <u>see also</u> Ex. 7.  Thus, there are numerous reasons that this Court should find that Plaintiff is neither a noncommercial scientific institution or a member of the news media for FOIA fee purposes.

## **CONCLUSION**

For the foregoing reasons, Defendant respectfully submits that summary judgment should be granted to it in this matter.

36

Respectfully submitted,


__/s/_____
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


__/s/_____
RUDOLPH CONTRERAS, D.C. BAR # 434122
Assistant United States Attorney



__/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

37

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FEDERAL CURE (FedCURE),<br><br>Plaintiff,<br><br>v.<br><br>HARLEY G. LAPPIN, DIRECTOR,<br>FEDERAL BUREAU OF PRISONS,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 07–00843 (RBW)<br>)<br>)<br>)<br>)<br>)<br>) |

## STATEMENT OF MATERIAL FACTS NOT IN DISPUTE

Pursuant to Local Rule 7(h), Defendants submit this statement of material facts as to which there is no genuine issue:

1. By letter to BOP's FOIA/PA unit dated February 25, 2005, Kenneth Linn, the Chairman of FedCure, submitted a request for information under the FOIA and Privacy Act on behalf of his organization. See Exhibit ("Ex.") 1, Declaration of Wilson J. Moorer ("Moorer Decl.") ¶ 3, Ex. A to Moorer Decl.; Ex. 2 (February 25, 2005 Letter from Kenneth Linn of FedCure to the BOP); see also Docket Entry No. 1, Verified Complaint for Declaratory and Injunctive Relief to Obtain Freedom of Information Act Information ("Compl.") ¶ 10. Mr. Linn's FOIA/Privacy Act request was for the following:

> 1) all information about the accuracy of the ion spectrometer scanning method and the number of visitors turned away at all BOP facilities (by facility) because of the results of the scanning method since institution of its use, 2) all information relating to the training methods used for personnel operating this equipment and staff comments as to these methods and 3) all records of equipment failure and repairs.

See Ex. 2 (February 25, 2005 Letter from Kenneth Linn of FedCure to the BOP); see also Ex. 1,

Moorer Decl. ¶ 3, Ex. A; Compl. ¶ 11.  In this initial request, Mr. Linn did not request a fee

waiver.  See Ex. 2 (February 25, 2005 Letter from Kenneth Linn of FedCure to the BOP); see

also Ex. 1, Moorer Decl., Ex. A.

    2.  In a letter dated April 4, 2005, BOP's FOIA/PA office responded to Mr. Linn's FOIA

request.  See Ex. 3 (April 4, 2005 Letter from BOP to Plaintiff); see also Ex. 1, Moorer Decl.

¶¶ 4-5, Ex. B to Moorer Decl..  In that letter, BOP's FOIA/PA office informed Mr. Linn that:

> After a careful review of your request, it has been determined it will take an
> estimated 142 hours of search time to locate the above requested information.
> [i.e., the material which Plaintiff had requested.]  In accordance with 28 C.F.R.
> § 16.11(c)(1)(ii), the cost for staff time involved in the search of this information
> is assessed at $7.00 per quarter hour for professional time.
>
> Therefore, you are being charged $7.00 per quarter hour for an estimated 142
> hours for a cost of $3,976.00.  This amount does not include a duplication fee of
> .10 cents per page of information reproduced as a result of the search.

See Id. (emphasis in original); see also Compl. ¶ 12.

    3.  The April 2005 letter further explained that:

> In accordance with 28 C.F.R. § 16.11(i)(2), we can require advance payment of
> fees in excess of $250.00.  Therefore, should you require this office to proceed
> with your request, please submit a check or money order, payable to the Treasury
> of the United States, in the amount of $3,976.00 within 30 days to this office at
> the above address so that we may begin retrieval and review of these records.

See Ex. 3 (April 4, 2005 Letter from BOP to Plaintiff) (emphasis in original); see also Ex. 1,

Moorer Decl. ¶ 5, Ex. B to Moorer Decl..

    4.  In a letter dated April 20, 2005, Mr. Linn requested that the BOP waive the $3,976.00

fee which BOP had indicated would be charged for the search time required to respond to his

FOIA request as well as a waiver of any copy fees.  Id.; Compl. ¶ 13.

5.  Mr. Linn asserted in his April 20, 2005 letter that "FedCure is a non-profit organization with less than $5,000.00 in yearly donations" and claimed that "[w]e publish a newsletter that is received by members of the public as well as maintain a website with regular daily news updates." Id.  He also argued in the letter that Fedcure qualified for a fee waiver because: (1) "[w]e are considered a 'noncommercial scientific institution' since we are involved in the social sciences, keep an extensive library, can be called a 'think tank,' and devote time and resources to research and dissemination of information on matters of public interest"; (2) "[w]e are a  representative of the news media through our regular newsletters"; and (3) "[t]he information sought is in the public interest because it is likely to contribute significantly to public understanding of the operations of the government and is certainly not in the commercial interest of the requestor." Id.

6.  Mr. Linn further represented in his April 20, 2005 letter that FedCure had "received numerous requests from the public for the information requested," that it "intend[ed] to publish the response in [its] newsletter and on [its] website," that the "information had value to the public-particularly those who regularly visit incarcerated federal inmates," and that FedCure was "the world's leading expert in matters relating to federal inmates." See Ex. 4 (April 20, 2005 letter from Mr. Linn to BOP's FOIA/PA office); see also Ex. 1, Ex. C to Moorer Decl.

7.  In a letter dated September 26, 2005, the BOP's FOIA/PA Office responded to Mr. Linn's request for a fee waiver.  See Ex. 5 (September 26, 2005 letter from BOP's FOIA/PA office to Mr. Linn); see also Ex. 1, Moorer Decl. ¶¶ 6-8, Ex. D to Moorer Decl..  It that letter, BOP's FOIA/PA office noted that "[t]he statutory test for evaluating fee waiver requests is whether  release of the information 'is in the public interest because it is likely to contribute

3

significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester,' in which event a fee waiver or reduction is required by law." Id. (citing 5 U.S.C. §552 (a)(4)(A)(iii)). It also noted that the "six factors used in the determination as to whether a sufficient contribution to the public understanding of government operations or activities would result from disclosure, so as to warrant the granting of a fee waiver" are as follows:

> 1) whether the subject of the requested records concerns "the operations or activities of the government"; 2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities; 3) whether disclosure of the requested information will contribute to the understanding of the general public at large; 4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations and activities; 5) whether the requester has a commercial interest that would be furthered by the requested disclosure; and 6) whether any such commercial interest outweighs the public interest in disclosure.

Id. BOP's FOIA/PA office advised Mr. Linn that "[o]n the basis of all the information you provided" as well as an analysis of the above mentioned six factors, "we have concluded that your request for a waiver of fees is denied." Id.; Compl. ¶ 14. It noted that, in reaching this conclusion, it had analyzed the definitions of a "noncommercial scientific institution" and a "representative of the news media," set forth in 5 U.S.C. §552(a), and had determined that FedCure did not satisfy either of these definitions. See Ex. 5, September 26, 2005 letter from BOP's FOIA/PA office); see also Ex. 1, Moorer Decl. ¶ 8, Ex. D to Moorer Decl..

    8. The September 26, 2005 letter repeated the fee information which had been set forth in the April 4, 2005 letter, and advised Mr. Linn that he could either: (1) agree to pay the fee, in which case his FOIA request would be processed; or (2) file a written appeal of the denial of his request for a fee waiver with the U.S. Department of Justice ("DOJ")'s Office of Information and

4

Privacy ("OIP").  See Ex. 5, September 26, 2005 letter from BOP's FOIA/PA office); see also

Ex. D to Moorer Decl..

     9.  By letter dated November 1, 2005, and received on November 9, 2005, Mr. Linn

appealed the BOP FOIA/PA's fee waiver denial to the OIP.  See Ex. 6 (Mr. Linn's November 1,

2005 letter to the OIP); see also Compl. ¶ 15; Ex. 1, Moorer Decl. ¶ 8, Ex. E to Moorer Decl..  In

his appeal letter, Mr. Linn argued that FedCURE met the definition of a "representative of the

news media" and a "noncommercial scientific think tank," and that the information it sought was

in the public interest.  See Ex. 6 (Mr. Linn's November 1, 2005 letter to the OIP).  In an attempt

to support these legal contentions, Mr. Linn made the following assertions in his November 2005

letter: (1) "FedCure is the largest private organization dealing with federal inmate issues";

(2) FedCure's "website, which provides timely news for the public has been up for about two

years and has already had over 250,000 hits"; (3) "[i]ts chat site at Yahoo groups has as many as

100 requests for information each day"; (4) "FedCure is a 501(c)(3) non-profit" whose "directors

and staff serve with no pay"; (5) "[t]he primary function of FedCure is to provide information to

the public about the workings of the Bureau of Prisons"; (6) "FedCure has received hundreds of

questions and complaints about the workings of the Bureau of Prisons" and "[i]n particular,

FedCure has received hundreds of questions and complaints about ion spectrometer procedures

and the reasoning behind their use"; (7) "[t]he general public is interested in the use of these

machines" and "disclosure would 'significantly' answer the public's questions"; and (8)

"FedCure has no commercial interest whatsoever in the disclosure."  See Ex. 6 (Mr. Linn's

November 1, 2005 letter to the OIP); see also Compl. ¶ 15; Ex. E to Moorer Decl..

     10.  In a letter dated June 29, 2006, OIP informed Mr. Linn that it had concluded that

BOP had properly denied FedCure's request for a waiver of fees.  See Ex. 7 (OIP's June 29, 2006 letter to Mr. Linn); see also Ex. 1, Moorer Decl. ¶ 9, Ex. F to Moorer Decl.; Compl. ¶ 16.  OIP described the statutory standard for evaluating fee waiver requests, set forth in 4 U.S.C. §§ 552(a)(4)(A)(iii).  See Ex. 7 (OIP's June 29, 2006 letter to Mr. Linn); see also Ex. F to Moorer Decl..  OIP indicated that in determining whether FedCure had satisfied this statutory standard, it had considered the six factor test set out in the implementing DOJ's regulation at 28 C.F.R. § 16.11(k), and noted that "[t]he first four of these factors concern the 'public interest' requirement; the fifth and sixth concern whether your interest in the records is primarily commercial."  Id.

11.  In the June 29, 2006 letter, OIP explained that "[a]lthough the records you seek concern, in part, the operations of BOP, and you do not appear to have an overriding commercial interest in the records, you have not satisfied other factors, most significantly factors two, three, and four of the statutory public interest requirement."  Id.; Ex. 1, Moorer Decl. ¶ 9.  Specifically, OIP noted that Mr. Linn had not adequately addressed the public interest requirement imposed by the FOIA, but instead had merely paraphrased the statutory standard.  See Ex. 7 (OIP's June 29, 2006 letter to Mr. Linn); Ex. 1, Moorer Decl. ¶ 9, Ex. F to Moorer Decl..

12.  In the June 29, 2006 letter, OIP further indicated that Mr. Linn had failed to adequately demonstrate that FedCURE is able to disseminate information to the public, noting that FedCure's "newsletter" was only available on its website and was released on an infrequent and irregular basis, with gaps as long as two years between some issuances.  See Ex. 7 (OIP's June 29, 2006 letter to Mr. Linn) at 2.  Moreover, OIP noted that the public interest requirement had also not been satisfied inasmuch as there was no evidence that FedCURE intended to

6

"extract, analyze, synthesize, and effectively convey" the highly technical information Mr. Linn

had requested for the benefit of the public. Id at 2. In addition, OIP explained that, for a variety

of reasons, FedCure had failed to demonstrate that it was either a "representative of the news

media" or a "noncommercial scientific institution." See id. at 3-4. Accordingly, OIP denied

FedCure's appeal. Id.

13. Mr. Linn submitted a "Reconsideration of Appeal Denial" to OIP dated July 10,

2006. See Ex. 8 (Mr. Linn's July 10, 2006 letter to OIP); see also Ex. 1, Moorer Decl. ¶ 10; Ex.

G to Moorer Decl.. In his reconsideration letter, Mr. Linn requested that the OIP reconsider its

decision, based on a recent U.S. District Court for District of Columbia opinion regarding the

granting of a fee waiver to a requester who had submitted a request to the BOP: Prison Legal

News v. Harley G. Lappin, Director, Federal Bureau of Prisons, Civil Action No. 05-1812, 2006

W.L. 1737483 (D.D.C. June 26, 2006). Id.

14. On November 8, 2006, OIP responded to Plaintiff's request for "Reconsideration of

Appeal Denial." See Ex. 9 (OIP's November 8, 2006 letter to Mr. Linn); see also Ex. 1, Moorer

Decl. ¶ 11; Ex. H to Moorer Decl.. In that letter, OIP informed Mr. Linn that it had determined

that its decision of June 29, 2006 was appropriate, and set forth several reasons why the decision

which Mr. Linn had cited in his July 10, 2006 request for reconsideration was distinguishable and

did not support Mr. Linn's request for a fee waiver. Id.

15. FedCure's newsletter is only posted on its Website. See Ex. 7 at 2; Ex. 9 at 1.

FedCure does not regularly circulate a printed copy of its newsletter. See Ex. 7 at 2; Ex. 9 at 1.

There is no indication in the record of the size of readership or number of subscribers to

FedCure's online newsletter. See Ex. 9 at 1.

16.  The release of FedCure's online newsletter is infrequent and irregular, with gaps as long as two years between some issuances.  <u>See</u> Ex. 7 at 2-3; Ex. 9 at 1; <u>see also</u> http://www.fedcure.org/newsletter.shtml (page of FedCure's website, listing newsletter issuances, and revealing that no newsletter was released between June 2003 and the summer of 2005, that no newsletter was released between March 2006 and October 2006, and that no newsletter was issued between December 2006 and June 2007).  There have been a total of about six online newsletters posted on FedCure's website since the Winter of 2003.  <u>See</u> Ex. 7 at 2.

17.  At least four of the online newsletters FedCure has posted on its website contain information which significantly overlaps with information found in other online newsletters.  <u>See</u> Ex. 7 at 3 (noting specifically that "the several paragraphs that comprise FedCure's Summer 2005 newsletter are repeated are repeated virtually verbatim in three subsequent newsletters, with minimal differences in overall content").

18.  At least two of FedCure's online newsletters contain disclaimers that advise the reader that "the content herein is presented for informational purposes only."  <u>See</u> Ex. 7 at 3-4; <u>see also</u> http://www.fedcure.org/April2003Newsletter.pdf at 30 (Winter 2003 newsletter, containing the language cited by the OIP and also advising readers that "www.fedcure.org does not attest to accuracy thereof"); http://www.fedcure.org/June2003Newsletter.pdf at 15 (June 2003 newsletter, containing identical disclaimer language).

19.  As of September 16, 2007, FedCure's chat site at Yahoo groups had only 1,660 members.  <u>See</u> http://groups.yahoo.com/group/FedCure-org/.  Between January and September 2007, the number of messages in that forum ranged from 218 and 677.  <u>Id</u>.

20.  Plaintiff's own website suggests that it is primarily an advocacy organization, not a

8

news organization or a center of scientific research.  See, e.g., http://www.fedcure.org/ (home

pages of FedCure, declaring that "FedCURE is the world's leading advocate for America's, ever

growing, federal inmate population," referring to "our efforts to reform the federal criminal

justice system in the United States," and that "[w]e are working to reinstate parole; increase good

time allowances; provide for compassionate releases; restore PELL grants; and opportunities for

successful reentry into the community, for all federal offenders; and promote a system that

incarcerates fewer people and provides humane conditions for those who are incarcerated or

under post-incarceration supervision via parole or supervised release") (emphasis added); see

also http://www.fedcure.org/aboutus.shtml (group's "[m]ission [s]tatement" stating that

"[a]dvocacy on behalf of the federal inmate population is the central focus of Federal CURE, Inc.

. .")


                            Respectfully submitted,


                            __/s/_____
                            JEFFREY A. TAYLOR, D.C. BAR # 498610
                            United States Attorney


                            __/s/_____
                            RUDOLPH CONTRERAS, D.C. BAR # 434122
                            Assistant United States Attorney

___/s/_____
JONATHAN C. BRUMER, D.C. BAR # 463328
Special Assistant United States Attorney
555 Fourth Street, N.W., Room E4815
Washington, D.C. 20530
(202) 514-7431
(202) 514-8780 (facsimile)

10

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that, on this 18th day of September, 2007, the Foregoing

Defendant's Motion for Summary Judgment, Defendant's Memorandum in Support of its Motion

for Summary Judgment, and Defendant's Statement of Material Facts Not in Dispute, and the

accompanying Declaration and other Exhibits were served upon Plaintiff's counsel pursuant to

the Court's Electronic Case Filing System, addressed to:

> James R. Klimaski
> Lynn Ilene Miller
> KLIMASKI & ASSOCIATES, P.C.
> 1819 L Street, N.W.
> Washington, D.C. 20036

> s/Jonathan C. Brumer
> JONATHAN C. BRUMER, D.C. BAR # 463328
> Special Assistant United States Attorney
> 555 4th Street, N.W., Room E4815
> Washington, D.C. 20530
> (202) 514-7431
> (202) 514-8780 (facsimile)

# EXHIBIT   1

Declaration of Wilson J. Moorer (and exhibits A-H to the Declaration)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Federal CURE (FedCURE), | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) |
| v. | ) Civil Action No.: 1:07-cv-00843(RBW) |
| | ) |
| HARLEY G. LAPPIN, DIRECTOR, | ) |
| FEDERAL BUREAU OF PRISONS, | ) |
| | ) |
| Defendant. | ) |

## DECLARATION OF WILSON J. MOORER

I, Wilson J. Moorer, do hereby declare and state the following:

1.  I am currently a Paralegal Specialist at the Federal Bureau of Prisons, Office of General Counsel, Freedom of Information Act Section, Washington, D.C.  I have been employed in this position since April 2003; however, I have been employed with the Bureau of Prisons since July of 1988.  My duties include assisting the Chief, Freedom of Information Act/Privacy Act Section and Freedom of Information Administrator in the review and possible release of information requested from the Bureau of Prisons via the Freedom of Information Act.

2.  The Freedom of Information Act, commonly referred to as FOIA, is a statute governing the release of government records.  In general, FOIA provides that any person has a right, enforceable in court, to obtain access to federal agency records, except to the extent that such records (or portions of them) are protected from public disclosure by one of nine exemptions or by one of three (3) special law enforcement record exclusions.

1

3. The Plaintiff, Federal CURE (FedCURE) alleges the Bureau of Prisons (BOP) failed to grant a fee waiver associated with its request for access to records pertaining to the use of ion spectronmeter scanning equipment in BOP facilities. A careful review of Plaintiff's complaint has revealed the following information. Plaintiff's initial FOIA request was dated February 25, 2005, in which a FOIA request was made for a copy of "1) all information about the accuracy of the ion spectrometer scanning method and the number of visitors turned away at all BOP facilities (by facility) because of the results of the scanning method since institution of its use, 2) all information relating to the training methods used for personnel operating this equipment and staff comments as to these methods and 3) all records of equipment failure and repairs." See Letter from Kenneth Linn, Chairman, FedCure, to the Federal Bureau of Prisons dated February 25, 2005, a true and correct copy of which is attached here to as Exhibit A.

4. FedCURE's FOIA request was received at the BOP's FOIA Office, Washington, D.C. on March 7, 2005. The request was logged into the FOIA data base on March 9, 2005 and assigned FOIA Request Number 2005-03326. BOP responded to Plaintiff's FOIA request on April 4, 2005, in which the requester was informed that it would take an estimated 142 hours of search time to locate the requested material. In accordance with 28 C.F.R. §16.11(c)(1)(ii), the cost for staff time involved in the search of this information is assessed at $7.00 per quarter hour for professional time. The cost was estimated at $3,976.00 which did not include a duplication fee of .10 cents per page of information reproduced as a result of the search. See Letter from Federal Bureau of Prisons to Kenneth Linn, Chairman, FedCure, dated April 4, 2005, a true and correct copy of which is attached here to as Exhibit B.

5. The response letter informed the Plaintiff the BOP required advance payment of the estimated fee of $3,976.00 before we could proceed with the request. On August 18, 2005, the BOP's FOIA Office, Washington, D.C. received a faxed copy of a letter from the Plaintiff dated April 20, 2005. In the letter, the Plaintiff requested a fee waiver of the $3,976.00 being charged for the search time to respond to the FOIA request and for any copy fees. The letter stated FedCURE is a non-profit organization with less than $5,000.00 in yearly donations. See faxed Letter from Kenneth Linn, Chairman, FedCure, a true and correct copy of which is attached here to as Exhibit C. FedCURE stated it was entitled to a fee waiver because it is considered a "noncommercial scientific institution;" it is a representative of the news media because they publish a regular newsletter; and the information it was seeking was in the public interest and would contribute to the public's understanding of an operation of the government. See Exhibit C.

6. On September 26, 2005, the BOP's FOIA Office responded to Plaintiff's request for a fee waiver. The letter stated that a waiver of fees is based upon whether the release of the information "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester," in which event a fee waiver or reduction is required by law. 5 U.S.C. §552 (a)(4)(A)(iii). See Letter from Federal Bureau of Prisons to Kenneth Linn, Chairman, FedCure, dated September 26, 2005, a true and correct copy of which is attached here to as Exhibit D.

7. There are six (6) factors used to determine if a requester is eligible for a fee waiver. These factors were weighed against the reasons stated in Plaintiff's request for the fee waiver.

The 6 factors used to warrant the granting of a fee waiver are as follows: 1) whether the subject of the requested records concerns "the operations or activities of the government"; 2) whether the disclosure is "likely to contribute" to an understanding of government operations or activities; 3) whether disclosure of the requested information will contribute to the understanding of the general public at large; 4) whether the disclosure is likely to contribute "significantly" to public understanding of government operations and activities; 5) whether the requester has a commercial interest that would be furthered by the requested disclosure; and 6) whether any such commercial interest outweighs the public interest in disclosure.

8. On the basis of all the information provided by the Plaintiff in his request for fee waiver letter, it was decided the request for waiver of fees would be denied. In making this determination, we analyzed the definition of a "noncommercial scientific institution" and "representative of the news media" as stated in 5 U.S.C. §552(a). See Exhibit D. On November 9, 2005 a letter was received by the Office of Information and Privacy (OIP) from Kenneth Linn, Chairman, FedCure appealing the denial of the fee waiver by the BOP. See Letter from Kenneth Linn, Chairman, FedCure to Co-Director, OIP, dated November 1, 2005, a true and correct copy of which is attached here to as Exhibit E.

9. The Office of Information and Privacy responded to Plaintiff on June 29, 2006. In the response, OIP concluded the BOP properly denied Plaintiff's request for a waiver of fees. It was determined the basis of Plaintiff's request for waiver of fees did not satisfy three of the six factors mentioned previously that needed to be met to have a fee waiver approved. Specifically, factors two, three, and four of the statutory public interest requirements were not achieved. See Letter

4

from Office of Information and Privacy to Kenneth Linn, Federal CURE, Inc., dated June 29,

2006, a true and correct copy of which is attached here to as Exhibit F.

10. Upon receipt of the appeal denial letter, Plaintiff submitted a "Reconsideration of

Appeal Denial" to OIP dated July 10, 2006. In the reconsideration letter, Plaintiff requested the

OIP to consider a recent DC District Court opinion regarding the granting a fee waiver to a

requester who had submitted a request to the BOP. The case in question is Prison Legal News v.

Harley G. Lappin, Director, Federal Bureau of Prisons, Civil Action No. 05-1812. See Letter

from Kenneth Linn, Chairman, FedCure to Daniel Metcalfe, Director, OIP, dated July 10, 2006, a

true and correct copy of which is attached here to as Exhibit G.

11. On November 8, 2006, OIP responded to Plaintiff's request for "Reconsideration of

Appeal Denial." It was determined the original decision issued/outlined in OIP's letter dated

June 29, 2006 (See Exhibit F), was appropriate. See Letter from Office of Information and

Privacy to Kenneth Linn, Federal CURE, Inc., dated November 8, 2006, a true and correct copy

of which is attached here to as Exhibit H.

I declare under the penalty of perjury, pursuant to Title 28 U.S.C. § 1746, the foregoing is

true and correct to the best of my information, knowledge and belief.

Executed this _22_ day of June 2007, at Washington, D.C.

Wilson J. Moorer
Paralegal Specialist
Federal Bureau of Prisons
Washington, D.C.

5

# EXHIBIT   A

**to the Declaration of Wilson J. Moorer**

2005-03326



# Citizens United for Rehabilitation of Errants

### Federal Prison Chapter

*A National Effort to Reduce Crime
Through Federal Criminal Justice Reform*

**Federal CURE, Inc.**
P.O. Box 15667
Plantation, Florida
33318-5667

E-mail:
e-Fax: (408) 549-8935
Web site:

**Chairman of the Board**

Kenny H. Linn, J.D., L.L.M.

**Executive Director**
Office Vacant

**Board of Directors**

Mark A. Varca, J.D.
Chief Information Officer

Elizabeth Alexander, J.D.
Paula Eyre
Jana V. Jay, J.D.
Rev. Alan Laird
Sylvia McAfee
John McCarty
Justine C. McCarty
Daniel S. Murphy, Ph. D..
Fred M. Mosely, J.D., L.L.M.
Stephen C. Richards, Ph. D.
Mike Shryock, M.Ed.

**National CURE**

Charles & Pauline Sullivan
Co-Directors

**Public Official Sponsors**

Senate

Daniel K. Akaka (HI)
Tom Harkin (IA)
James M. Jeffords (VT)

Congressmen

Howard L. Berman (CA)
William L. Clay (MO)
Bob Clement (D) TN
John Conyers, Jr. (MI)
Lane Evans (IL)
Martin Frost (TX)
Sheila Jackson-Lee (TX)
John Lewis (GA)
James P. Moran, Jr. (VA)
Charles B. Rangel (NY)
Martin O. Sabo (MN)
Robert Scott (VA)
Louise M. Slaughter (NY)
Fortney "Pete" Stark (CA)
Mel Watt (NC)

February 25, 2005

Bureau of Prisons
320 First St., NW
Washington DC 20534

Attention:  FOIPA Unit

This is a request under the Freedom of Information Act as amended (Title 5 USC Sec. 552) in conjunction with the Privacy Act (Title 5 USC Sec. 552a).

I wish to obtain 1) all information about the accuracy of the ion spectrometer scanning method and the number of visitors turned away at all BOP facilities (by facility) because of the results of the scanning method since institution of its use, 2) all information relating to the training methods used for personnel operating this equipment and staff comments as to these methods and 3) all records of equipment failures and repairs.

If all or part of my request is denied, please list the specific exemption(s) which is (are) being claimed to withhold information.  If you determine that some portions of the requested material are exempt, I will expect, as the Act provides, that you will provide me with the remaining non-exempt portions.  I, of course, reserve the right to appeal any decision to withhold information and expect that you will list the address and office where such an appeal can be sent.  As provided in the FOIA, I will expect to receive a response within ten working days.

Pursuant to Title 28 USC Sec. 1746, I declare all information herein is true and correct to the best of my information and belief under penalty of perjury.

Sincerely,

Kenneth Linn, J.D., LL.M.
Chairman, FedCure

POB: New York, N. Y.
FBI #: 620 829 D

RECEIVED
MAR 0 7 2005
FOIA/PA SECTION
FEDERAL BUREAU OF PRISON

*Serving Federal Prisoners and Their Families
Working to Reinstate Parole and to Increase Good Time Allowances*

"Using Technology To Bring About Federal Criminal Justice Reform" TM
2002-2005.  All rights reserved.

# EXHIBIT   B

**to the Declaration of Wilson J. Moorer**



U.S. Department of Justice

Federal Bureau of Prisons

APR  4 2005

_____

Kenneth Linn, J.D., LL.M.
Chairman, FedCure, Inc.
P.O. Box 15667
Plantation, Florida 33318-5667

*Washington, DC 20534*
For Further Inquiry Contact:
Federal Bureau of Prisons
320 First Street. N.W.
Room 841, HOLC Building
Washington, D.C. 20534
Attn: FOIA/Privacy Act Office


RE:  Request for Information, FOIA Request No. 2005-03326

Dear Mr. Linn:

     This is in response to your Freedom of Information Act
request for a copy of the following information:

1.   All information about the accuracy of the ion spectrometer
     scanning method and the number of visitors turned away at
     all BOP facilities (by facility) because of the results of
     the scanning method since institution of its use.

2.   All information relating to the training methods used for
     personnel operating this equipment and staff comments as to
     these methods.

3.   All records of equipment failure and repairs.

     After a careful review of your request, it has been
determined it will take an estimated **142** hours of search time to
locate the above requested information.  In accordance with
28 C.F.R. §16.11(c)(1)(ii), the cost for staff time involved in
the search of this information is assessed at **$7.00** per quarter
hour for professional time.

     Therefore, you are being charged $7.00 per quarter hour for
an estimated **142** hours for a cost of **$3,976.00**.  This amount does
not include a duplication fee of .10 cents per page of
information reproduced as a result of the search.

     In accordance with 28 C.F.R. § 16.11(i)(2), we can require
advance payment of fees in excess of $250.00.  Therefore,
should you require this office to proceed with your request,
please submit a check or money order, payable to the **Treasury of
the United States,** in the amount of **$3,976.00 within 30 days** to
this office at the above address so that we may begin retrieval
and review of these records.

Page 2
Kenneth Linn
FOIA Request Number 2005-03326


    Please reference the above-listed request number in any
further correspondence.  If you have any questions or concerns
please contact Wilson J. Moorer, Paralegal at 202-514-6655,
ext. 4879.

                            Sincerely,

                            Wanda M. Hunt
                            Chief, FOIA/PA Section

cc: File

# EXHIBIT   C

**to the Declaration of Wilson J. Moorer**

# FAX

**ATTN.** Mr. Wilson Moore

---

**Fax Number** 101686812023070828

**Phone Number**


**FROM** Kenneth Linn, J.D., LL.M.

---

**Fax Number** 727-734-0579

**Phone Number** 727-734-1428


**SUBJECT** 2005-03326

---

**Number of Pages** 1

**Date** 8/18/2005


## MESSAGE

---

Please provide a response at your earliest convenience.  This was sent back in April and had your file reference number. Thanks!

## Citizens United for Rehabilitation of Errants

### Federal Prison Chapter

*A National Effort to Reduce Crime*
*Through Federal Criminal Justice Reform*

**Federal CURE, Inc.**
P.O. Box 15667
Plantation, Florida
33318-5667

E-mail: Information@FedCURE.org
e-Fax: (408) 549-8935
Web site: www.FedCURE.org

**Chairman of the Board**

Kenny H. Linn, J.D., L.L.M.

**Executive Director**
Office Vacant

**Board of Directors**

Mark A. Varca, J.D.
Chief Information Officer

Elizabeth Alexander, J.D.
Paula Eyre
Jana V. Jay, J.D.
Rev. Alan Laird
Sylvia McAfee
John McCarty
Justine C. McCarty
Daniel S. Murphy, Ph.D.
Fred M. Mosely, J.D., L.L.M.
Stephen C. Richards, Ph.D.
Mike Shryock, M.Ed.

**National CURE**

Charles & Pauline Sullivan
Co-Directors

**Public Official Sponsors**

*Senators*

Daniel K. Akaka (HI)
Tom Harkin (IA)
James M. Jeffords (VT)

*Congressmen*

Howard L. Berman (CA)
William L. Clay (MO)
Bob Clement (D) TN
John Conyers, Jr. (MI)
Lane Evans (IL)
Martin Frost (TX)
Sheila Jackson-Lee(TX)
John Lewis (GA)
James P. Moran, Jr. (VA)
Charles B. Rangel (NY)
Martin O. Sabo (MN)
Robert Scott (VA)
Louise M. Slaughter (NY)
Fortney "Pete" Stark (CA)
Mel Watt (NC)

April 20, 2005

Bureau of Prisons
320 First St., NW
Washington DC 20534

Attention: FOIPA Unit            Re: 2005-03326

Please let this letter serve as an application for a fee waiver of the $3976.00 sought for search time to respond to this FOIA request and for any copy fees. FedCure is a non-profit with less than $5000.00 in yearly donations. We publish a newsletter that is received by members of the public as well as maintain a website with regular daily news updates.

We believe we qualify for a fee waiver for the following reasons:

1. We are considered a "noncommercial scientific institution," since we are involved in the social sciences, keep an extensive library, can be called a "think tank," and devote time and resources to research and dissemination of information on matters of public interest. See: §552(a)(4)(A)(ii)(II) and §6(i) OMB Guidelines (1986).

2. We are representatives of the news media through our regular newsletters. See: §552(a)(4)(A)(ii)(II) and §6(j) OMB Guidelines (1986); <u>National Security Archive v. Dept. Of Defense</u>, 880 F2d 1381, 1386-7.

3. The information sought is in the public interest because it is likely to contribute significantly to public understanding of the operations of the government and is certainly not in the commercial interest of the requestor. See: §552(a)(4)(A)(ii)(II); <u>Ettlinger v. FBI</u>, 596 F. Supp. 867, 872 (D MA-1984)(public interest benefit test to be liberally construed).

FedCure has received numerous requests from the public for the information requested and we intend to publish the response in our newsletter and on our website. The information has value to the public - particularly those who regularly visit incarcerated federal inmates. The information is not now in the public domain.

FedCure is the world's leading expert in matters relating to federal inmates. Collectively, five of FedCURE 's 14 board members have over 50 years of in prison experience--behind the fence--as former federal inmates, each holding J.D.'s, two holding LL.M's and two holding Ph.D's. Our lifetime members include the best criminal attorneys in the United States.

*Serving Federal Prisoners and Their Families*
*Working to Reinstate Parole and to Increase Good Time Allowances*

**"Using Technology To Bring About Federal Criminal Justice Reform"** TM
**www.FedCURE.org** 2002-2005. All rights reserved.

Thank you for consideration of this fee waiver request. I, of course, reserve the right to appeal any decision to seek a fee and expect that you will list the address and office where such an appeal can be sent. Pursuant to Title 28 USC Sec. 1746, I declare all information herein is true and correct to the best of my information and belief under penalty of perjury.

Sincerely,

Kenneth Linn, J.D., LL.M.
Chairman, FedCure
Soc. Sec. No.: 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
DOB: 7/22/39
POB: New York, N. Y.
FBI #: 620 829 D

*Serving Federal Prisoners and Their Families*
*Working to Reinstate Parole and to Increase Good Time Allowances*

**"Using Technology To Bring About Federal Criminal Justice Reform" TM**
**www.FedCURE.org  2002-2005.  All rights reserved.**

# EXHIBIT   D

**to the Declaration of Wilson J. Moorer**



U.S. Department of Justice

Federal Bureau of Prisons

SEP 2 6 2005

_____

*Washington, DC 20534*

Kenneth Linn, J.D., LL.M.             For Further Inquiry Contact:
Chairman, FedCure, Inc.               Federal Bureau of Prisons
P.O. Box 15667                        320 First Street. N.W.
Plantation, Florida 33318-5667        Room 841, HOLC Building
                                      Washington, D.C. 20534
                                      Attn: FOIA/Privacy Act Office

RE:  Request for Fee Wavier, FOIA Request No. 2005-03326

Dear Mr. Linn:

     This is in response to your request for a fee wavier of the
**$3,976.00** being sought for search time to respond to the above
FOIA request.  Specifically, you believe you qualify for a fee
wavier for the following reasons: you are considered a
"noncommercial scientific institution," you are representative of
the news media, and the information you seek is in the public
interest.

     The statutory test for evaluating fee waiver requests is
whether the release of the information "is in the public interest
because it is likely to contribute significantly to public
understanding of the operations or activities of the government
and is not primarily in the commercial interest of the
requester," in which event a fee waiver or reduction is required
by law. 5 U.S.C. §552 (a)(4)(A)(iii).

     The six factors used in the determination as to whether a
sufficient contribution to public understanding of government
operations or activities would result from disclosure, so as to
warrant the granting of a fee waiver are as follows: 1) whether
the subject of the requested records concerns "the operations or
activities of the government"; 2) whether the disclosure is
"likely to contribute" to an understanding of government
operations or activities; 3) whether disclosure of the requested
information will contribute to the understanding of the general
public at large; 4) whether the disclosure is likely to
contribute "significantly" to public understanding of government
operations and activities; 5) whether the requester has a
commercial interest that would be furthered by the requested
disclosure; and 6) whether any such commercial interest outweighs
the public interest in disclosure.

Page 2
Kenneth Linn
FOIA Request Number 2005-03326

On the basis of all the information you provided, we have concluded that your request for a waiver of fees is denied.  In reaching this conclusion, we analyzed the above six factors as they applied to the circumstances of your request.  We analyzed the definition of a "noncommercial scientific institution" as stated in 5 U.S.C. §552(a) which is a "noncommercial" institution that is operated solely for the purpose of conducting scientific research the results of which are not intended to promote any particular product or industry.  Based on the information you have provided, this definition has not been met.

We also analyzed the definition of a "representative of the news media" as stated in 5 U.S.C. §552(a) which is any person actively gathering information of current interest to the public for an organization that is organized and operated to publish or broadcast news to the general public.  Based on the information you have provided, this definition has not been met.  There is no evidence that releasing the information to you will contribute significantly to the public's understanding of how the Bureau of Prisons operates.

As stated in our letter dated April 4, 2005, the cost for staff time involved in the search of this information is assessed at $7.00 per quarter hour for 142 hours.  See 28 C.F.R. §16.11(c)(1)(ii).  The fee for search and review of this information is estimated to be **$3,976.00**.  This cost does not include the duplication cost of .10 cents per page after the first one-hundred pages.

Before we begin processing your request, you must indicate your willingness to pay such a fee.  In the alternative, you can reformulate your request to meet your needs at a lower cost.  In accordance with 28 C.F.R. §16.11(e), until you agree to pay the anticipated total fee, or you reformulate what you seek,  this request will not be considered as received and no further action will be taken.

Pursuant to 28 C.F.R. §16.9, this partial denial may be appealed to the Attorney General by filing a written appeal within sixty days of the receipt of this letter.  The appeal should be addressed to the **Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530.**

Page 3
Kenneth Linn
FOIA Request Number 2005-03326


Both the envelope and the letter of appeal itself must be clearly
marked:  **"Freedom of Information Act Appeal."**

    Please reference the above-listed request number in future
correspondence concerning this request.  If you have any
questions or concerns please contact Wilson J. Moorer, Paralegal
at 202-514-6655, ext. 4879.

                                Sincerely,



                                Wanda M. Hunt
                                Chief, FOIA/PA Section

cc: File

# EXHIBIT   E

**to the Declaration of Wilson J. Moorer**

Rec'd 11-04-05                                    06-0453



## Citizens United for Rehabilitation of Errants


Federal Prison Chapter

*A National Effort to Reduce Crime Through Federal Criminal Justice Reform*

**Federal CURE, Inc.**
P.O. Box 15667
Plantation, Florida
33318-5667

E-mail: FedCURE@FedCURE.org

e-Fax (408) 549-8835

Web site: www.FedCURE.org

**Chairman**
Kenny Linn, J.D., LL.M

**Executive Director**
Office Vacant

**Board of Directors**
Mark A. Varca, J.D.
Chief Information Officer

Elizabeth Alexander, J.D.
Fred M. Mosely, J.D., LL.M
Paula Eyre
Jana V. Jay, J.D.
Rev. Alan Laird
Sylvia McAfee
John McCarty
Justine C. McCarty
Daniel S. Murphy, Ph.D.
Stephen C. Richards, Ph.D.
Mike Shryock, M.Ed.

**National CURE**

Charles & Pauline Sullivan
Co-Directors

**Public Official Sponsors**

*Senators*

Daniel K. Akaka (HI)
Tom Harkin (IA)
James M. Jeffords (VT)

*Congressmen*

Howard L. Berman (CA)
William L. Clay (MO)
Bob Clement (D) TN
John Conyers, Jr. (MI)
Lane Evans (IL)
Martin Frost (TX)
Sheila Jackson-Lee (TX)
John Lewis (GA)
James P. Moran, Jr. (VA)
Charles B. Rangel (NY)
Martin O. Sabo (MN)
Robert Scott (VA)
Louise M. Slaughter (NY)
Fortney "Pete" Stark (CA)
Mel Watt (NC)

*Of Counsel*

EJ, Hurst. II. Attorney.
Chief of Legislative Affairs

11/01/05

OFFICE OF INFORMATION AND PRIVACY   Fee w. app'l → JGM

NOV 0 9 2005

**RECEIVED**

Co-Director, OIP
US DOJ
Flag Building, Suite 570
Washington DC 20530

Re: FOIA Request No. 2005-03326

Gentlemen:

This is a Freedom of Information Act appeal of the denial of a fee waiver dated 9/26/05.

In a letter dated 2/25/05, the Federal Chapter of C.U.R.E. requested documents relating to complaints about the use of ion spectrometers during visitor processing at all BOP facilities using this equipment. That request was "lost." A second request was faxed to the FOIA on 8/18/05 to the FOIA component of the BOP, which led to the fee request of $3,976.00 for processing and a subsequent denial of the fee waiver request.

FedCure is the largest private organization dealing with federal inmate issues. Its website, which provides timely news for the public has been up for about two years and has already had over 250,000 hits. Its chat site at Yahoo Groups has as many as 100 requests for information each day. It should be obvious that FedCure meets the definition of "representative of the news media," that it is a "noncommercial scientific think tank" and that the information sought is in the public interest. See: §552(a)(4)(A)(ii)(II) and 6(i) and (j) OMB Guidelines (1986); National Security Archive v. Dept. of Defense, 880 F2d 1381, 1386-7; Ettlinger v. FBI, 596 F. Supp. 867, 872 (D MA-1984). There are numerous cases holding that the public interest benefit test is to be liberally construed.

Moreover, FedCure is a 501(c)(3) non-profit. Its directors and staff serve with no pay. The primary function of FedCure is to provide information to the public about the workings of the Bureau of Prisons. In particular, FedCure has received hundreds of questions and complaints about ion spectrometer procedures and the reasoning behind their use.

*Serving Federal Prisoners and Their Families*
*Working to Reinstate Parole and to Increase Good Time Allowances*

"Using Technology To Bring About Federal Criminal Justice Reform" TM
www.FedCURE.org 2002-2005. All rights reserved.

FedCure meets each of the six factors used to determine whether a fee waiver should be granted: 1. This request deals solely with the operations of government. 2. The disclosure would contribute to the public's understanding of government operations. 3. The general public at large is interested in the use of these machines. 4. The disclosure would "significantly" answer the public's questions. 5. FedCure has no commercial interest whatsoever in the disclosure. 6. There is no commercial interest to outweigh the public interest.

On October 27, 2005, the Chairman of FedCure, Kenny Linn, met with the Director of the Bureau of Prisons, Harley Lappin, in his office about various prison issues. First on the agenda was the subject of ion spectrometers. A news posting about this meeting and this issue is now on the FedCure website.

FedCure is fully prepared to litigate whether it meets the criteria for a fee exemption and hopes that this appeal will forestall that scenario. Thank you for your consideration.

Sincerely,

Kenneth Linn, ND, LLM
Chairman, FedCure

# EXHIBIT  F

**to the Declaration of Wilson J. Moorer**

**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                              _Washington, D.C. 20530_

JUN 2 9 2006

Mr. Kenneth Linn, J.D., LL.M.
Federal CURE, Inc.                          Re:    Appeal No. 06-0453
Post Office Box 15667                              Request No. 2005-03326
Plantation, FL 33318-5667                          JGM:TEH

Dear Mr. Linn:

　　　You appealed on behalf of Federal CURE, Inc. (FedCure) from the Federal Bureau of
Prisons' (BOP) denial of your request for a waiver of the fees associated with your request for
access to records pertaining to the use of ion spectrometer scanning equipment in BOP facilities.
You also challenged BOP's determination that FedCure does not qualify for statutory fee
limitations as either a representative of the media or as a noncommercial scientific institution.

　　　The statutory standard for evaluating fee waiver requests provides that fees shall be
waived or reduced "if disclosure of the information is in the public interest because it is likely to
contribute significantly to public understanding of the operations or activities of the government
and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). In
determining whether you have satisfied this statutory standard, I considered the six factors set out
in the Department of Justice regulation that puts this statutory standard into effect. See 28 C.F.R.
§ 16.11(k) (2005). The first four of these factors concern the "public interest" requirement; the
fifth and six factors concern whether your interest in the records is primarily commercial.

　　　In support of your appeal, you state that FedCure has received "hundreds of complaints
and questions about the ion spectrometers and the reasoning behind their use." (FedCure appeal,
Nov. 1, 2005, at 1.) In that same letter, you also state that "[t]he disclosure would 'significantly'
answer the public's questions." (Id, at 2). Furthermore, you describe FedCure as a nonprofit
corporation, as having a small budget, and as the largest organization dealing with federal inmate
issues. In your appeal you characterize FedCure's primary function as "to provide information to
the public about the working of the Bureau of Prisons." (Id. at 1). Your letter of appeal also
describes the methods by which FedCure advances its mission and advises that this request is not
in its financial interest.

　　　On the basis of all of the information available to this Office, I have concluded that your
request for a waiver of fees was properly denied. Although the records you seek concern, in part,
the operations or activities of BOP, and you do not appear to have an overriding commercial

-2-

interest in the records, you have not satisfied other factors, most significantly factors two, three, and four of the statutory public interest requirement.

First, your fee waiver request letter of April 20, 2005 did not adequately address the public interest requirement imposed by the Freedom of Information Act. See Oglesby v. Dep't of the Army, 920 F.2d 57, 66 & n.11 (D.C. Cir. 1990); see also 28 C.F.R. § 16.11(k)(2)(i)-(iv) (encompassing the first four fee waiver factors). The only information you provide in support of FedCure's fee waiver request is a paraphrase of the statutory standard. (See FedCure fee waiver request, Apr. 20, 2005, item 3 at 1.) Such limited information is insufficient to qualify FedCure for a fee waiver. Indeed, the Court of Appeals for the District of Columbia Circuit found "conclusory and clearly insufficient" the statement of a requester who asserted that "[t]he information requested is beneficial to the public interest. I am a writer and a lecturer who has disseminated in the past, and I intend to do so in the future." Oglesby, 920 F.2d at 66 n.11. Similarly, your letter of appeal states that "FedCure meets each of the six factors used to determine whether a fee waiver should be granted." (FedCure appeal, Nov. 1, 2005, at 2.) But again, you did little more than paraphrase each of those six fee waiver factors. (See id.) You do not in any way explain how, in what manner, or why you believe that FedCure's request meets each of the fee waiver factors. The burden, as you are aware, is on the requester to prove entitlement to a fee waiver; you have not done so.

In addition to failing to substantiate the overall public interest requirement, the information you did provide raises additional specific concerns with regard to fee waiver factor three. Notably, you have not adequately demonstrated that FedCure is able to disseminate this information to the public. While nonprofit organizations often are capable of disseminating information, they do not by virtue of their status presumptively qualify for fee waivers. The record before me merely indicates that any information you receive will be available to subscribers or visitors of FedCure's Web site in a newsletter which, according to FedCure, is only posted on its Web site. Importantly, upon viewing FedCure's Web site, it appears that the release of your newsletter is infrequent and irregular, with gaps as long as two years between some issuances. Likewise, requests such as yours that make no showing of how the information would be disseminated other than by passively making it available to anyone who might seek access to it on the Internet do not meet the burden for fee waiver purposes of demonstrating with particularity that the information will be communicated to the public.

FedCure's request seeks a large volume of information, much of it technical (particularly records sought with regard to the accuracy of ion spectrometers, training methods used for operating the equipment, and equipment failure rates and repairs), that would need to be collected from the seventy-one BOP facilities that use the equipment. I find no evidence, however, of FedCure's intention to extract, analyze, synthesize, and effectively convey the information received to the public. Merely posting the requested technical information on your Web site, as you seem to suggest, without analysis is insufficient to meet the public interest requirement. See, e.g., S.A. Ludsin & Co. v. SBA, 1997 U.S. Dist. LEXIS 8617 (S.D.N.Y. June 19, 1997).

-3-

You further assert that FedCure falls within both the "representative of the news media" and the "noncommercial scientific institution" subcategories of the second statutory fee category. See 5 U.S.C. § 552(a)(4)(A)(ii)(II). Placement in either of those subcategories would entitle FedCure to favored fee treatment by limiting fees to duplication costs only. Because the statutory standard speaks to the use to which the requester will put the information released to it, it is essential to any fee category analysis that the agency be provided sufficient information about the requester's intended use for the records in order for the agency to make a proper fee category determination. See Nat'l Sec. Archive v. DOD, 880 F.2d 1381, 1382 (D.C. Cir. 1989).

By definition, a "representative of the news media" is one who gathers "news for an entity that is organized and operated to publish or broadcast news." 28 C.F.R. § 16.11(b)(6) (2005) (Department of Justice FOIA regulation encompassing definitions). The regulations also define a "noncommercial scientific institution" as one that is "operated solely for the purpose of conducting scientific research the results of which are not intended to promote any particular product or industry." Id. § 16.11(b)(5).[1] Although you state that "it should be obvious that FedCure meets the definition of 'representative of the news media' and that [FedCure] is a 'noncommercial scientific think tank'" you provide no information that would lead me to conclude that FedCure should be placed in either of these fee subcategories. (FedCure appeal, Nov. 1, 2005, at 1). According to your appeal and the information you provided BOP, your intended use for this request is "to publish the response [received from BOP] in [y]our newsletter and on [y]our website." (FedCure fee waiver request, Apr. 20, 2005, at 1.) However, the D.C. Circuit in National Security Archive ruled that requesting information in order to make it "available" is insufficient to include the requester in the favored fee category under the FOIA. In that case the D.C. Circuit warned that activities that provide a way "of making information available to the public . . . are insufficient to establish an entitlement to preferred [fee] status." Id. 880 F.2d at 1386.

Additionally, there is nothing on FedCure's Web site that indicates that the information it posts is "news" as defined by 28 C.F.R. § 16.11(b)(6) (defining news as "information that is about current events or that would be of current interest to the public"). Your statements that FedCure maintains "a website with regular daily news updates" (FedCure fee waiver request, Apr. 20, 2005) and that it "provides timely news to the public" (FedCure appeal, Nov. 1, 2005) are not substantiated by FedCure's Web site. As already noted above, there appears to be no regularity to the posting of FedCure's newsletters -- i.e., there have been a total of only six since Winter 2003. In addition, at least four of the six newsletters posted contain significant overlap of information with other newsletters. Indeed, the several paragraphs that comprise FedCure's Summer 2005 newsletter are repeated virtually verbatim in three subsequent newsletters, with minimal differences in overall content. Moreover, at least two of FedCure's six newsletters

---

[1] Department regulations that provide definitions for FOIA fee categories should be read in conjunction the Uniform Freedom of Information Act Fee Schedule and Guidelines, issued by the Office of Management and Budget, 52 Fed. Reg. 10,012 (Mar. 27, 1987), the official guidance used by federal agencies in implementing their fee regulations.

-4-

contain disclaimers that advise the reader that "the content herein is presented for informational purposes only." This is not to suggest that the information you post may not be of assistance to the federal prison population or their families, but rather to indicate that FedCure's newsletters do not appear to publish "regular daily news updates" nor post "news" as defined by Department regulations.

Similarly, FedCure's Web site does not demonstrate that FedCure is operated solely to conduct scientific research. See 28 C.F.R. § 16.11(b)(5). While I agree that those organizations that further scientific research within the "soft sciences," such as social studies, could come within this category, FedCure is not such an organization. Accordingly, your appeal is denied.

Inasmuch as I have concluded that FedCure is an "other" requester for fee limitation purposes, you are entitled to the first two hours of search time at no cost. 5 U.S.C. § 552(a)(4)(A)(iv)(II). You may ask BOP to process your request up to this time limit or you may specify a particular amount you are willing to pay. For either of these options, please contact BOP directly.

If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Daniel J. Metcalfe
Director

# EXHIBIT   G

**to the Declaration of Wilson J. Moorer**

  




# Citizens United for Rehabilitation of Errants

**Federal Prison Chapter**

*A National Effort to Reduce Crime
Through Federal Criminal Justice Reform*

**Federal CURE, Inc.** 06-04
P.O. Box 15667
Plantation, Florida
33318-5667

E-mail: FedCURE@FedCURE.org
e-Fax (408) 549-8835
Web site: www.FedCURE.org

**Chairman**

Kenny Linn, J.D., LL.M

**Executive Director**

Office Vacant

**Board of Directors**

Mark A. Varca, J.D.
Chief Information Officer

Elizabeth Alexander, J.D.
Fred M. Mosely, J.D., LL.M
Paula Eyre
Jana V. Jay, J.D.
Rev. Alan Laird
Sylvia McAfee
John McCarty
Justine C. McCarty
Daniel S. Murphy, Ph.D.
Stephen C. Richards, Ph.D.
Mike Shryock, M.Ed.

**National CURE**

Charles & Pauline Sullivan
Co-Directors

**Public Official Sponsors**

*Senators*

Daniel K. Akaka (HI)
Tom Harkin (IA)
James M. Jeffords (VT)

*Congressmen*

Howard L. Berman (CA)
William L. Clay (MO)
Bob Clement (D) TN
John Conyers, Jr. (MI)
Lane Evans (IL)
Martin Frost (TX)
Sheila Jackson-Lee(TX)
John Lewis (GA)
James P. Moran, Jr. (VA)
Charles B. Rangel (NY)
Martin O. Sabo (MN)
Robert Scott (VA)
Louise M. Slaughter (NY)
Fortney "Pete" Stark (CA)
Mel Watt (NC)

*Of Counsel*

EJ, Hurst, II, Attorney,
Chief of Legislative Affairs

July 10, 2006

Mr. Daniel Metcalfe, Director
Office of Information & Privacy
Washington DC 20530

VIA FAX
Re: Appeal No. 06-0453

Attention: Ms. Janice McLeod

## RECONSIDERATION OF APPEAL DENIAL

Pursuant to my conversation with you this morning, I would appreciate it if you would take another look at the fee waiver issue involved in this appeal. I would ask you to consider the DC District Court opinion filed in an almost identical case on June 26, 2006 in Prison Legal News v. Harley G. Lappin, Director, Federal Bureau of Prisons, Civil Action No. 05-1812 (RBW). That case cited extensively from Linn v. DOJ, 1997 WL 577586 (D.D.C. May 29 1997), particularly about dissemination of requested information. I am quite familiar with the Linn case, since I am the Linn mentioned.

In FedCure's request for information, we specifically advised that FedCure has a website *and a chat site* at Yahoo groups. We stated "its chat site at Yahoo Groups has as many as 100 requests for information each day" (Request, ¶ 2). The appeal response does not address FedCure's Yahoo Groups site whatsoever, which is where our daily information is disseminated and goes on to say that there is "no evidence ... of FedCure's intention to extract, analyze, synthesize, and effectively convey the information received to the public" (Appeal Response, pg. 3), even though that is exactly what we do every day when we answer those requests.

The appeal response makes no distinction whether a web-based organization is large or small, old or new, sophisticated or rudimentary. If this type of decision is allowed to stand, it would be virtually impossible for a small, new, unsophisticated web-based organization to ever receive a fee waiver from the government for requested information from one of its agencies. I do not believe that is what the FOIA stands for and would appreciate a response to this reconsideration at your earliest convenience.

Thank you for your consideration.

Sincerely,

Kenneth Linn, J.D., LL.M

*Serving Federal Prisoners and Their Families
Working to Reinstate Parole and to Increase Good Time Allowances*

**"Using Technology To Bring About Federal Criminal Justice Reform"** TM
www.FedCURE.org 2002-2006. All rights reserved.

# EXHIBIT   H

**to the Declaration of Wilson J. Moorer**



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                      *Washington, D.C. 20530*

**NOV - 8 2006**

Mr. Kenneth Linn, J.D., LL.M.
Federal CURE, Inc.                  Re:    Appeal No. 06-0453
Post Office Box 15667                     Request No. 2005-03326
Plantation, FL 33318-5667                 JGM:TEH

Dear Mr. Linn:

    This responds to your letter dated July 10, 2005, in which you request that I reconsider
my decision on your appeal from the action of the Federal Bureau of Prisons (BOP) on your
request for a waiver of fees associated with your request for access to records pertaining to the
use of ion spectrometer scanning equipment in BOP facilities. Specifically, you ask that I
reconsider my fee waiver decision in light of the decision in <u>Prison Legal News v. Lappin</u>, No.
05-1812, 2006 WL 1737483 (D.D.C. June 26, 2006).

    After careful consideration, I have determined that my original decision, as outlined in my
letter to you of June 29, 2006, was appropriate.

    You have specifically asked that I review Federal CURE, Inc.'s (FedCure) ability to
disseminate information to the public. (FedCure Request for Reconsideration, July 10, 2006, at
1). The record before me merely indicates that any information you receive will be available to
subscribers or visitors of FedCure's Web site in a newsletter which, according to FedCure, is only
posted on its Web site. While the Court in <u>Prison Legal News</u> did suggest that a Web site could
be viable distribution channel, it was not the basis of its finding that the plaintiff in that case
(PLN) had the intent and ability to disseminate the requested records. In fact, the Court
specifically stated that its finding was made "regardless of the viability of the PLN website as a
mechanism for distributing the requested information." <u>Prison Legal News</u>, 2006 WL 1737483,
at *8. The opinion then found that PLN had demonstrated an ability to disseminate information
through a nonelectronic means, specifically its distribution of a printed journal to the public, with
a readership population of approximately 18,000. <u>Id.</u>

    FedCure, however, does not provide the public with any printed material, and instead
relies solely on passively making information available to anyone who might seek access to it on
the Internet. Furthermore, a review of FedCure's Web site, shows that the release of your
newsletter is infrequent and irregular, with gaps as long as two years between some issuances.
There is also no indication of the size of readership or number of subscribers to this newsletter.
PLN, by contrast, was able to demonstrate that it has published a monthly newsletter since 1990,
and it was able to provide an estimated number of subscribers and size of readership. <u>See id.</u> at

7/10

*1. This information was a basis for the Court in Prison Legal News to determine that the plaintiff had a "represented readership of 'thousands each month'" and could "'widely disseminate' the requested information to the "'relevant public.'" Id. at *8. Conversely, requests such as yours, that make no showing of how the information would be disseminated other than by passively making it available to anyone who might seek access to it on the Internet, do not meet the standard for fee waiver purposes of demonstrating with particularity that the information will be communicated to the public.

Furthermore, you assert in your Request for Reconsideration that FedCure has a "chat site at Yahoo groups" that allows it to disseminate the information received. (FedCure Request for Reconsideration, July 10, 2006, at 1). I am aware of no legal authority to the effect that the existence of an Internet "chat room" is a sufficient demonstration of an ability to communicate to the public, nor is that consistent with common practice. FedCure's chat rooms are distinct from the PLN newsletters that were affirmatively distributed to a defined membership. Reliance on chat rooms administered by Yahoo Groups is also distinct from the holding in Linn v. Dep't of Justice, No. 92-1406, 1997 WL 577586, at *6 (D.D.C. May 29, 1997), where the plaintiff specified the particular lobbying organizations that would disseminate the received information to a defined mailing membership numbering in the thousands each month. Answering questions as provided by anyone who might seek access to the site on Yahoo does not demonstrate a comparable ability to transmit the requested information to the public.

If you remain dissatisfied with my action on your appeal, judicial review of it is available to you as indicated in my letter of June 29, 2006.

Sincerely,

Daniel J. Metcalfe
Director

# EXHIBIT   2

February 25, 2005 Letter from Kenneth Linn of FedCure to the BOP

2 005-03326



# Citizens United for Rehabilitation of Errants

### Federal Prison Chapter

*A National Effort to Reduce Crime Through Federal Criminal Justice Reform*

**Federal CURE, Inc.**
P.O. Box 15667
Plantation, Florida
33318-5667

E-mail:
e-Fax: (408) 549-8935
Web site:



**Chairman of the Board**

Kenny H. Linn, J.D., L.L.M.

**Executive Director**
Office Vacant

**Board of Directors**

Mark A. Varca, J.D.
Chief Information Officer

Elizabeth Alexander, J.D.
Paula Eyre
Jana V. Jay, J.D.
Rev. Alan Laird
Sylvia McAfee
John McCarty
Justine C. McCarty
Daniel S. Murphy, Ph. D..
Fred M. Mosely, J.D., L.L.M.
Stephen C. Richards, Ph. D.
Mike Shryock, M.Ed.

**National CURE**

Charles & Pauline Sullivan
Co-Directors

**Public Official Sponsors**

**Senators**

Daniel K. Akaka (HI)
Tom Harkin (IA)
James M. Jeffords (VT)

**Congressmen**

Howard L. Berman (CA)
William L. Clay (MO)
Bob Clement (D) TN
John Conyers, Jr. (MI)
Lane Evans (IL)
Martin Frost (TX)
Sheila Jackson-Lee (TX)
John Lewis (GA)
James P. Moran, Jr. (VA)
Charles B. Rangel (NY)
Martin O. Sabo (MN)
Robert Scott (VA)
Louise M. Slaughter (NY)
Fortney "Pete" Stark (CA)
Mel Watt (NC)

February 25, 2005

Bureau of Prisons
320 First St., NW
Washington DC 20534

Attention: FOIPA Unit

This is a request under the Freedom of Information Act as amended (Title 5 USC Sec. 552) in conjunction with the Privacy Act (Title 5 USC Sec. 552a).

I wish to obtain 1) all information about the accuracy of the ion spectrometer scanning method and the number of visitors turned away at all BOP facilities (by facility) because of the results of the scanning method since institution of its use, 2) all information relating to the training methods used for personnel operating this equipment and staff comments as to these methods and 3) all records of equipment failures and repairs.

If all or part of my request is denied, please list the specific exemption(s) which is (are) being claimed to withhold information. If you determine that some portions of the requested material are exempt, I will expect, as the Act provides, that you will provide me with the remaining non-exempt portions. I, of course, reserve the right to appeal any decision to withhold information and expect that you will list the address and office where such an appeal can be sent. As provided in the FOIA, I will expect to receive a response within ten working days.

Pursuant to Title 28 USC Sec. 1746, I declare all information herein is true and correct to the best of my information and belief under penalty of perjury.

Sincerely,

Kenneth Linn, J.D., LL.M
Chairman, FedCure

POB: New York, N. Y.
FBI #: 620 829 D

**RECEIVED**

MAR 0 7 2005

FOIA/PA SECTION
FEDERAL BUREAU OF PRISONS

*Serving Federal Prisoners and Their Families*
*Working to Reinstate Parole and to Increase Good Time Allowances*

"Using Technology To Bring About Federal Criminal Justice Reform" TM
2002-2005. All rights reserved.

# EXHIBIT   3

April 4, 2005 Letter from BOP to Mr. Linn

U.S. Department of Justice

Federal Bureau of Prisons

APR  4 2005

_Washington, DC 20534_

Kenneth Linn, J.D., LL.M.          For Further Inquiry Contact:
Chairman, FedCure, Inc.            Federal Bureau of Prisons
P.O. Box 15667                     320 First Street. N.W.
Plantation, Florida 33318-5667     Room 841, HOLC Building
                                   Washington, D.C. 20534
                                   Attn: FOIA/Privacy Act Office


RE:  Request for Information, FOIA Request No. 2005-03326

Dear Mr. Linn:

     This is in response to your Freedom of Information Act
request for a copy of the following information:

1.   All information about the accuracy of the ion spectrometer
     scanning method and the number of visitors turned away at
     all BOP facilities (by facility) because of the results of
     the scanning method since institution of its use.

2.   All information relating to the training methods used for
     personnel operating this equipment and staff comments as to
     these methods.

3.   All records of equipment failure and repairs.

     After a careful review of your request, it has been
determined it will take an estimated **142** hours of search time to
locate the above requested information.  In accordance with
28 C.F.R. §16.11(c)(1)(ii), the cost for staff time involved in
the search of this information is assessed at **$7.00** per quarter
hour for professional time.

     Therefore, you are being charged $7.00 per quarter hour for
an estimated **142** hours for a cost of **$3,976.00**.  This amount does
not include a duplication fee of .10 cents per page of
information reproduced as a result of the search.

     In accordance with 28 C.F.R. § 16.11(i)(2), we can require
advance payment of fees in excess of **$250.00**.  Therefore,
should you require this office to proceed with your request,
please submit a check or money order, payable to the **Treasury of
the United States,** in the amount of **$3,976.00 within 30 days** to
this office at the above address so that we may begin retrieval
and review of these records.

Page 2
Kenneth Linn
FOIA Request Number 2005-03326


    Please reference the above-listed request number in any further correspondence.  If you have any questions or concerns please contact Wilson J. Moorer, Paralegal at 202-514-6655, ext. 4879.

                           Sincerely,

                           Wanda M. Hunt
                           Chief, FOIA/PA Section

cc: File

# EXHIBIT   4

August 18, 2005 Fax Cover Sheet and April 20, 2005 letter from Mr. Linn to
BOP's FOIA/PA office



# FAX

**ATTN.** Mr. Wilson Moore

Fax Number 1016868120230 70828

Phone Number

**FROM** Kenneth Linn, J.D., LL.M.

Fax Number 727-734-0579

Phone Number 727-734-1428

**SUBJECT** 2005-03326

Number of Pages 1

Date 8/18/2005

## MESSAGE

Please provide a response at your earliest convenience. This was sent back in April and had your file reference number. Thanks!

# Citizens United for Rehabilitation of Errants

## Federal Prison Chapter

*A National Effort to Reduce Crime*
*Through Federal Criminal Justice Reform*

**Federal CURE, Inc.**
P.O. Box 15667
Plantation, Florida
33318-5667

E-mail: Information@FedCURE.org
e-Fax: (408) 549-8935
Web site:  www.FedCURE.org

**Chairman of the Board**

Kenny H. Linn, J.D., L.L.M.

**Executive Director**
Office Vacant

**Board of Directors**

Mark A. Varca, J.D.
Chief Information Officer

Elizabeth Alexander, J.D.
Paula Eyre
Jana V. Jay, J.D.
Rev. Alan Laird
Sylvia McAfee
John McCarty
Justine C. McCarty
Daniel S. Murphy, Ph. D..
Fred M. Mosely, J.D., L.L.M.
Stephen C. Richards, Ph. D.
Mike Shryock, M.Ed.

**National CURE**

Charles & Pauline Sullivan
Co-Directors

**Public Official Sponsors**

*Senators*

Daniel K. Akaka (HI)
Tom Harkin (IA)
James M. Jeffords (VT)

*Congressmen*

Howard L. Berman  (CA)
William L. Clay (MO)
Bob Clement (D) TN
John Conyers, Jr. (MI)
Lane Evans (IL)
Martin Frost (TX)
Sheila Jackson-Lee(TX)
John Lewis (GA)
James P. Moran, Jr. (VA)
Charles B. Rangel (NY)
Martin O. Sabo (MN)
Robert Scott (VA)
Louise M. Slaughter (NY)
Fortney "Pete" Stark (CA)
Mel Watt (NC)

April 20, 2005

Bureau of Prisons
320 First St., NW
Washington DC 20534

Attention:  FOIPA Unit                    Re:  2005-03326

**Please let this letter serve as an application for a fee waiver of the $3976.00 sought for search time to respond to this FOIA request and for any copy fees. FedCure is a non-profit with less than $5000.00 in yearly donations. We publish a newsletter that is received by members of the public as well as maintain a website with regular daily news updates.**

We believe we qualify for a fee waiver for the following reasons:

1. We are considered a "noncommercial scientific institution," since we are involved in the social sciences, keep an extensive library, can be called a "think tank," and devote time and resources to research and dissemination of information on matters of public interest. See: §552(a)(4)(A)(ii)(II) and §6(i) OMB Guidelines (1986).
2. We are representatives of the news media through our regular newsletters. See: §552(a)(4)(A)(ii)(II) and §6(j) OMB Guidelines (1986); National Security Archive v. Dept. Of Defense, 880 F2d 1381, 1386-7.
3. The information sought is in the public interest because it is likely to contribute significantly to public understanding of the operations of the government and is certainly not in the commercial interest of the requestor. See: §552(a)(4)(A)(ii)(II); Ettlinger v. FBI, 596 F. Supp. 867, 872 (D MA-1984)(public interest benefit test to be liberally construed).

FedCure has received numerous requests from the public for the information requested and we intend to publish the response in our newsletter and on our website. The information has value to the public - particularly those who regularly visit incarcerated federal inmates. The information is not now in the public domain.

FedCure is the world's leading expert in matters relating to federal inmates. Collectively, five of FedCURE 's 14 board members have over 50 years of in prison experience-- behind the fence--as former federal inmates, each holding J.D.'s, two holding LL.M's and two holding Ph.D's. Our lifetime members include the best criminal attorneys in the United States.

*Serving Federal Prisoners and Their Families*
*Working to Reinstate Parole and to Increase Good Time Allowances*

"Using Technology To Bring About Federal Criminal Justice Reform" TM
**www.FedCURE.org**  2002-2005. All rights reserved.

Aug 18 05 04:33p    Kenneth Linn, J.D., LL.M. 727-734-0579    p.2

Thank you for consideration of this fee waiver request. I, of course, reserve the right to appeal any decision to seek a fee and expect that you will list the address and office where such an appeal can be sent. Pursuant to Title 28 USC Sec. 1746, I declare all information herein is true and correct to the best of my information and belief under penalty of perjury.

Sincerely,

Kenneth Linn, J.D., LL.M.
Chairman, FedCure

POB: New York, N. Y.
FBI #: 620 829 D

*Serving Federal Prisoners and Their Families*
*Working to Reinstate Parole and to Increase Good Time Allowances*

"**Using Technology To Bring About Federal Criminal Justice Reform**" TM
www.FedCURE.org 2002-2005. All rights reserved.

# EXHIBIT   5

September 26, 2005 letter from BOP's FOIA/PA office to Mr. Linn



U.S. Department of Justice

Federal Bureau of Prisons

SEP 2 6 2005

_____

*Washington, DC 20534*

Kenneth Linn, J.D., LL.M.          For Further Inquiry Contact:
Chairman, FedCure, Inc.            Federal Bureau of Prisons
P.O. Box 15667                     320 First Street. N.W.
Plantation, Florida 33318-5667     Room 841, HOLC Building
                                   Washington, D.C. 20534
                                   Attn: FOIA/Privacy Act Office

RE:  Request for Fee Wavier, FOIA Request No. 2005-03326

Dear Mr. Linn:

     This is in response to your request for a fee wavier of the
**$3,976.00** being sought for search time to respond to the above
FOIA request.  Specifically, you believe you qualify for a fee
wavier for the following reasons: you are considered a
"noncommercial scientific institution," you are representative of
the news media, and the information you seek is in the public
interest.

     The statutory test for evaluating fee waiver requests is
whether the release of the information "is in the public interest
because it is likely to contribute significantly to public
understanding of the operations or activities of the government
and is not primarily in the commercial interest of the
requester," in which event a fee waiver or reduction is required
by law. 5 U.S.C. §552 (a)(4)(A)(iii).

     The six factors used in the determination as to whether a
sufficient contribution to public understanding of government
operations or activities would result from disclosure, so as to
warrant the granting of a fee waiver are as follows: 1) whether
the subject of the requested records concerns "the operations or
activities of the government"; 2) whether the disclosure is
"likely to contribute" to an understanding of government
operations or activities; 3) whether disclosure of the requested
information will contribute to the understanding of the general
public at large; 4) whether the disclosure is likely to
contribute "significantly" to public understanding of government
operations and activities; 5) whether the requester has a
commercial interest that would be furthered by the requested
disclosure; and 6) whether any such commercial interest outweighs
the public interest in disclosure.

Page 2
Kenneth Linn
FOIA Request Number 2005-03326


On the basis of all the information you provided, we have concluded that your request for a waiver of fees is denied. In reaching this conclusion, we analyzed the above six factors as they applied to the circumstances of your request. We analyzed the definition of a "noncommercial scientific institution" as stated in 5 U.S.C. §552(a) which is a "noncommercial" institution that is operated solely for the purpose of conducting scientific research the results of which are not intended to promote any particular product or industry. Based on the information you have provided, this definition has not been met.

We also analyzed the definition of a "representative of the news media" as stated in 5 U.S.C. §552(a) which is any person actively gathering information of current interest to the public for an organization that is organized and operated to publish or broadcast news to the general public. Based on the information you have provided, this definition has not been met. There is no evidence that releasing the information to you will contribute significantly to the public's understanding of how the Bureau of Prisons operates.

As stated in our letter dated April 4, 2005, the cost for staff time involved in the search of this information is assessed at $7.00 per quarter hour for 142 hours. See 28 C.F.R. §16.11(c)(1)(ii). The fee for search and review of this information is estimated to be **$3,976.00**. This cost does not include the duplication cost of .10 cents per page after the first one-hundred pages.

Before we begin processing your request, you must indicate your willingness to pay such a fee. In the alternative, you can reformulate your request to meet your needs at a lower cost. In accordance with 28 C.F.R. §16.11(e), until you agree to pay the anticipated total fee, or you reformulate what you seek, this request will not be considered as received and no further action will be taken.

Pursuant to 28 C.F.R. §16.9, this partial denial may be appealed to the Attorney General by filing a written appeal within sixty days of the receipt of this letter. The appeal should be addressed to the **Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530.**

Page 3
Kenneth Linn
FOIA Request Number 2005-03326


Both the envelope and the letter of appeal itself must be clearly
marked:  **"Freedom of Information Act Appeal."**

    Please reference the above-listed request number in future
correspondence concerning this request.  If you have any
questions or concerns please contact Wilson J. Moorer, Paralegal
at 202-514-6655, ext. 4879.

                              Sincerely,


                              Wanda M. Hunt
                              Chief, FOIA/PA Section

cc: File

# EXHIBIT   6

Mr. Linn's November 1, 2005 letter to the OIP

*Rec'd 11-04-05*

*06-0453*



## Citizens United for Rehabilitation of Errants

**Federal Prison Chapter**

*A National Effort to Reduce Crime
Through Federal Criminal Justice Reform*

**Federal CURE, Inc.**
P.O. Box 15667
Plantation, Florida
33318-5667

E-mail: FedCURE@FedCURE.org

e-Fax: (408) 549-8935

Web site: www.FedCURE.org

---

**Chairman**

Kenny Linn, J.D., LL.M

**Executive Director**

Office Vacant

**Board of Directors**

Mark A. Varca, J.D.
Chief Information Officer

Elizabeth Alexander, J.D.
Fred M. Mosely, J.D., LL.M
Paula Eyre
Jana V. Jay, J.D.
Rev. Alan Laird
Sylvia McAfee
John McCarty
Justine C. McCarty
Daniel S. Murphy, Ph.D.
Stephen C. Richards, Ph.D.
Mike Shryock, M.Ed.

**National CURE**

Charles & Pauline Sullivan
Co-Directors

**Public Official Sponsors**

*Senators*

Daniel K. Akaka (HI)
Tom Harkin (IA)
James M. Jeffords (VT)

*Congressmen*

Howard L. Berman (CA)
William L. Clay (MO)
Bob Clement (D) TN
John Conyers, Jr. (MI)
Lane Evans (IL)
Martin Frost (TX)
Shelia Jackson-Lee(TX)
John Lewis (GA)
James P. Moran, Jr. (VA)
Charles B. Rangel (NY)
Martin O. Sabo (MN)
Robert Scott (VA)
Louise M. Slaughter (NY)
Fortney "Pete" Stark (CA)
Mel Watt (NC)

*Of Counsel*

EJ. Hurst. II. Attorney.
Chief of Legislative Affairs

---

11/01/05



OFFICE OF INFORMATION
AND PRIVACY *Fee v. air →JGM*

NOV 0 9 2005

**RECEIVED**

Co-Director, OIP
US DOJ
Flag Building, Suite 570
Washington DC 20530

Re: FOIA Request No. 2005-03326

Gentlemen:

This is a Freedom of Information Act appeal of the denial of a fee waiver dated 9/26/05.

In a letter dated 2/25/05, the Federal Chapter of C.U.R.E. requested documents relating to complaints about the use of ion spectrometers during visitor processing at all BOP facilities using this equipment. That request was "lost." A second request was faxed to the FOIA on 8/18/05 to the FOIA component of the BOP, which led to the fee request of $3,976.00 for processing and a subsequent denial of the fee waiver request.

FedCure is the largest private organization dealing with federal inmate issues. Its website, which provides timely news for the public has been up for about two years and has already had over 250,000 hits. Its chat site at Yahoo Groups has as many as 100 requests for information each day. It should be obvious that FedCure meets the definition of "representative of the news media," that it is a "noncommercial scientific think tank" and that the information sought is in the public interest. See: §552(a)(4)(A)(ii)(II) and 6(i) and (j) OMB Guidelines (1986); National Security Archive v. Dept. of Defense, 880 F2d 1381, 1386-7; Ettlinger v. FBI, 596 F. Supp. 867, 872 (D MA-1984). There are numerous cases holding that the public interest benefit test is to be liberally construed.

Moreover, FedCure is a 501(c)(3) non-profit. Its directors and staff serve with no pay. The primary function of FedCure is to provide information to the public about the workings of the Bureau of Prisons. In particular, FedCure has received hundreds of questions and complaints about ion spectrometer procedures and the reasoning behind their use.

*Serving Federal Prisoners and Their Families
Working to Reinstate Parole and to Increase Good Time Allowances*

**"Using Technology To Bring About Federal Criminal Justice Reform"** TM
www.FedCURE.org 2002-2005. All rights reserved.

FedCure meets each of the six factors used to determine whether a fee waiver should be granted: 1. This request deals solely with the operations of government. 2. The disclosure would contribute to the public's understanding of government operations. 3. The general public at large is interested in the use of these machines. 4. The disclosure would "significantly" answer the public's questions. 5. FedCure has no commercial interest whatsoever in the disclosure. 6. There is no commercial interest to outweigh the public interest.

On October 27, 2005, the Chairman of FedCure, Kenny Linn, met with the Director of the Bureau of Prisons, Harley Lappin, in his office about various prison issues. First on the agenda was the subject of ion spectrometers. A news posting about this meeting and this issue is now on the FedCure website.

FedCure is fully prepared to litigate whether it meets the criteria for a fee exemption and hopes that this appeal will forestall that scenario. Thank you for your consideration.

Sincerely,

Kenneth Linn, ND, LLM        App
Chairman, FedCure

*Serving Federal Prisoners and Their Families*
*Working to Reinstate Parole and to Increase Good Time Allowances*

**"Using Technology To Bring About Federal Criminal Justice Reform" TM**
www.FedCURE.org  2002-2005. All rights reserved.

# EXHIBIT   7

OIP's June 29, 2006 letter to Mr. Linn

**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                                              _Washington, D.C. 20530_

## JUN 2 9 2006

Mr. Kenneth Linn, J.D., LL.M.
Federal CURE, Inc.                                    Re:     Appeal No. 06-0453
Post Office Box 15667                                          Request No. 2005-03326
Plantation, FL 33318-5667                                      JGM:TEH

Dear Mr. Linn:

        You appealed on behalf of Federal CURE, Inc. (FedCure) from the Federal Bureau of
Prisons' (BOP) denial of your request for a waiver of the fees associated with your request for
access to records pertaining to the use of ion spectrometer scanning equipment in BOP facilities.
You also challenged BOP's determination that FedCure does not qualify for statutory fee
limitations as either a representative of the media or as a noncommercial scientific institution.

        The statutory standard for evaluating fee waiver requests provides that fees shall be
waived or reduced "if disclosure of the information is in the public interest because it is likely to
contribute significantly to public understanding of the operations or activities of the government
and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). In
determining whether you have satisfied this statutory standard, I considered the six factors set out
in the Department of Justice regulation that puts this statutory standard into effect. See 28 C.F.R.
§ 16.11(k) (2005). The first four of these factors concern the "public interest" requirement; the
fifth and six factors concern whether your interest in the records is primarily commercial.

        In support of your appeal, you state that FedCure has received "hundreds of complaints
and questions about the ion spectrometers and the reasoning behind their use." (FedCure appeal,
Nov. 1, 2005, at 1.) In that same letter, you also state that "[t]he disclosure would 'significantly'
answer the public's questions." (Id. at 2). Furthermore, you describe FedCure as a nonprofit
corporation, as having a small budget, and as the largest organization dealing with federal inmate
issues. In your appeal you characterize FedCure's primary function as "to provide information to
the public about the working of the Bureau of Prisons." (Id. at 1). Your letter of appeal also
describes the methods by which FedCure advances its mission and advises that this request is not
in its financial interest.

        On the basis of all of the information available to this Office, I have concluded that your
request for a waiver of fees was properly denied. Although the records you seek concern, in part,
the operations or activities of BOP, and you do not appear to have an overriding commercial

interest in the records, you have not satisfied other factors, most significantly factors two, three, and four of the statutory public interest requirement.

First, your fee waiver request letter of April 20, 2005 did not adequately address the public interest requirement imposed by the Freedom of Information Act. See Oglesby v. Dep't of the Army, 920 F.2d 57, 66 & n.11 (D.C. Cir. 1990); see also 28 C.F.R. § 16.11(k)(2)(i)-(iv) (encompassing the first four fee waiver factors). The only information you provide in support of FedCure's fee waiver request is a paraphrase of the statutory standard. (See FedCure fee waiver request, Apr. 20, 2005, item 3 at 1.) Such limited information is insufficient to qualify FedCure for a fee waiver. Indeed, the Court of Appeals for the District of Columbia Circuit found "conclusory and clearly insufficient" the statement of a requester who asserted that "[t]he information requested is beneficial to the public interest. I am a writer and a lecturer who has disseminated in the past, and I intend to do so in the future." Oglesby, 920 F.2d at 66 n.11. Similarly, your letter of appeal states that "FedCure meets each of the six factors used to determine whether a fee waiver should be granted." (FedCure appeal, Nov. 1, 2005, at 2.) But again, you did little more than paraphrase each of those six fee waiver factors. (See id.) You do not in any way explain how, in what manner, or why you believe that FedCure's request meets each of the fee waiver factors. The burden, as you are aware, is on the requester to prove entitlement to a fee waiver; you have not done so.

In addition to failing to substantiate the overall public interest requirement, the information you did provide raises additional specific concerns with regard to fee waiver factor three. Notably, you have not adequately demonstrated that FedCure is able to disseminate this information to the public. While nonprofit organizations often are capable of disseminating information, they do not by virtue of their nature presumptively qualify for fee waivers. The record before me merely indicates that any information you receive will be available to subscribers or visitors of FedCure's Web site in a newsletter which, according to FedCure, is only posted on its Web site. Importantly, upon viewing FedCure's Web site, it appears that the release of your newsletter is infrequent and irregular, with gaps as long as two years between some issuances. Likewise, requests such as yours that make no showing of how the information would be disseminated other than by passively making it available to anyone who might seek access to it on the Internet do not meet the burden for fee waiver purposes of demonstrating with particularity that the information will be communicated to the public.

FedCure's request seeks a large volume of information, much of it technical (particularly records sought with regard to the accuracy of ion spectrometers, training methods used for operating the equipment, and equipment failure rates and repairs), that would need to be collected from the seventy-one BOP facilities that use the equipment. I find no evidence, however, of FedCure's intention to extract, analyze, synthesize, and effectively convey the information received to the public. Merely posting the requested technical information on your Web site, as you seem to suggest, without analysis is insufficient to meet the public interest requirement. See, e.g., S.A. Ludsin & Co. v. SBA, 1997 U.S. Dist. LEXIS 8617 (S.D.N.Y. June 19, 1997).

-3-

You further assert that FedCure falls within both the "representative of the news media" and the "noncommercial scientific institution" subcategories of the second statutory fee category. See 5 U.S.C. § 552(a)(4)(A)(ii)(II). Placement in either of those subcategories would entitle FedCure to favored fee treatment by limiting fees to duplication costs only. Because the statutory standard speaks to the use to which the requester will put the information released to it, it is essential to any fee category analysis that the agency be provided sufficient information about the requester's intended use for the records in order for the agency to make a proper fee category determination. See Nat'l Sec. Archive v. DOD, 880 F.2d 1381, 1382 (D.C. Cir. 1989).

By definition, a "representative of the news media" is one who gathers "news for an entity that is organized and operated to publish or broadcast news." 28 C.F.R. § 16.11(b)(6) (2005) (Department of Justice FOIA regulation encompassing definitions). The regulations also define a "noncommercial scientific institution" as one that is "operated solely for the purpose of conducting scientific research the results of which are not intended to promote any particular product or industry." Id. § 16.11(b)(5).[1] Although you state that "it should be obvious that FedCure meets the definition of 'representative of the news media' and that [FedCure] is a 'noncommercial scientific think tank'" you provide no information that would lead me to conclude that FedCure should be placed in either of these fee subcategories. (FedCure appeal, Nov. 1, 2005, at 1). According to your appeal and the information you provided BOP, your intended use for this request is "to publish the response [received from BOP] in [y]our newsletter and on [y]our website." (FedCure fee waiver request, Apr. 20, 2005, at 1.) However, the D.C. Circuit in National Security Archive ruled that requesting information in order to make it "available" is insufficient to include the requester in the favored fee category under the FOIA. In that case the D.C. Circuit warned that activities that provide a way "of making information available to the public . . . are insufficient to establish an entitlement to preferred [fee] status." Id. 880 F.2d at 1386.

Additionally, there is nothing on FedCure's Web site that indicates that the information it posts is "news" as defined by 28 C.F.R. § 16.11(b)(6) (defining news as "information that is about current events or that would be of current interest to the public"). Your statements that FedCure maintains "a website with regular daily news updates" (FedCure fee waiver request, Apr. 20, 2005) and that it "provides timely news to the public" (FedCure appeal, Nov. 1, 2005) are not substantiated by FedCure's Web site. As already noted above, there appears to be no regularity to the posting of FedCure's newsletters -- i.e., there have been a total of only six since Winter 2003. In addition, at least four of the six newsletters posted contain significant overlap of information with other newsletters. Indeed, the several paragraphs that comprise FedCure's Summer 2005 newsletter are repeated virtually verbatim in three subsequent newsletters, with minimal differences in overall content. Moreover, at least two of FedCure's six newsletters

---

[1] Department regulations that provide definitions for FOIA fee categories should be read in conjunction the Uniform Freedom of Information Act Fee Schedule and Guidelines, issued by the Office of Management and Budget, 52 Fed. Reg. 10,012 (Mar. 27, 1987), the official guidance used by federal agencies in implementing their fee regulations.

-4-

contain disclaimers that advise the reader that "the content herein is presented for informational purposes only." This is not to suggest that the information you post may not be of assistance to the federal prison population or their families, but rather to indicate that FedCure's newsletters do not appear to publish "regular daily news updates" nor post "news" as defined by Department regulations.

Similarly, FedCure's Web site does not demonstrate that FedCure is operated solely to conduct scientific research. See 28 C.F.R. § 16.11(b)(5). While I agree that those organizations that further scientific research within the "soft sciences," such as social studies, could come within this category, FedCure is not such an organization. Accordingly, your appeal is denied.

Inasmuch as I have concluded that FedCure is an "other" requester for fee limitation purposes, you are entitled to the first two hours of search time at no cost. 5 U.S.C. § 552(a)(4)(A)(iv)(II). You may ask BOP to process your request up to this time limit or you may specify a particular amount you are willing to pay. For either of these options, please contact BOP directly.

If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Daniel J. Metcalfe
Director

# EXHIBIT 8

Mr. Linn's July 10, 2006 letter to OIP

05/31/2007 13:16 FAX 2025141009 DOJ-OIP ☑004/006

Case 1:07-cv-00843-RBW Document 8-9 Filed 09/18/2007 Page 2 of 2



## Citizens United for Rehabilitation of Errants



### Federal Prison Chapter

*A National Effort to Reduce Crime
Through Federal Criminal Justice Reform*

**Federal CURE, Inc.**
P.O. Box 15667
Plantation, Florida
33318-5667

E-mail: FedCURE@FedCURE.org

e-Fax (408) 549-8935

Web site: www.FedCURE.org

---

**Chairman**

Kenny Linn, J.D., LL.M

**Executive Director**
Office Vacant

**Board of Directors**

Mark A. Varca, J.D.
Chief Information Officer

Elizabeth Alexander, J.D.
Fred M. Mosely, J.D., LL.M
Paula Eyre
Jana V. Jay, J.D.
Rev. Alan Laird
Sylvia McAfee
John McCarty
Justine C. McCarty
Daniel S. Murphy, Ph.D.
Stephen C. Richards, Ph.D.
Mike Shryock. M.Ed.

**National CURE**

Charles & Pauline Sullivan
Co-Directors

**Public Official Sponsors**

*Senators*

Daniel K. Akaka (HI)
Tom Harkin (IA)
James M. Jeffords (VT)

*Congressmen*

Howard L. Berman (CA)
William L. Clay (MO)
Bob Clement (D) TN
John Conyers, Jr. (MI)
Lane Evans (IL)
Martin Frost (TX)
Sheila Jackson-Lee (TX)
John Lewis (GA)
James P. Moran, Jr. (VA)
Charles B. Rangel (NY)
Martin O. Sabo (MN)
Robert Scott (VA)
Louise M. Slaughter (NY)
Fortney "Pete" Stark (CA)
Mel Watt (NC)

*Of Counsel*

EJ, Hurst, II, Attorney,
Chief of Legislative Affairs

---

July 10, 2006

Mr. Daniel Metcalfe, Director
Office of Information & Privacy
Washington DC 20530

Attention: Ms. Janice McLeod

VIA FAX
Re: Appeal No. 06-0453

### RECONSIDERATION OF APPEAL DENIAL

Pursuant to my conversation with you this morning, I would appreciate it if you would take another look at the fee waiver issue involved in this appeal. I would ask you to consider the DC District Court opinion filed in an almost identical case on June 26, 2006 in Prison Legal News v. Harley G. Lappin, Director, Federal Bureau of Prisons, Civil Action No. 05-1812 (RBW). That case cited extensively from Linn v. DOJ, 1997 WL 577586 (D.D.C. May 29 1997), particularly about dissemination of requested information. I am quite familiar with the Linn case, since I am the Linn mentioned.

In FedCure's request for information, we specifically advised that FedCure has a website *and a chat site* at Yahoo groups. We stated "Its chat site at Yahoo Groups has as many as 100 requests for information each day" (Request, ¶ 2). The appeal response does not address FedCure's Yahoo Groups site whatsoever, which is where our daily information is disseminated and goes on to say that there is "no evidence ... of FedCure's intention to extract, analyze, synthesize, and effectively convey the information received to the public" (Appeal Response, pg. 3), even though that is exactly what we do every day when we answer those requests.

The appeal response makes no distinction whether a web-based organization is large or small, old or new, sophisticated or rudimentary. If this type of decision is allowed to stand, it would be virtually impossible for a small, new, unsophisticated web-based organization to ever receive a fee waiver from the government for requested information from one of its agencies. I do not believe that is what the FOIA stands for and would appreciate a response to this reconsideration at your earliest convenience.

Thank you for your consideration.

Sincerely,

Kenneth Linn, J.D., LL.M

---

*Serving Federal Prisoners and Their Families
Working to Reinstate Parole and to Increase Good Time Allowances*

**"Using Technology To Bring About Federal Criminal Justice Reform"** ™
www.FedCURE.org 2002-2006. All rights reserved.

# EXHIBIT   9

OIP's November 8, 2006 letter to Mr. Linn



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

**NOV - 8 2006**


Mr. Kenneth Linn, J.D., LL.M.
Federal CURE, Inc.                     Re:     Appeal No. 06-0453
Post Office Box 15667                          Request No. 2005-03326
Plantation, FL 33318-5667                      JGM:TEH

Dear Mr. Linn:

        This responds to your letter dated July 10, 2005, in which you request that I reconsider
my decision on your appeal from the action of the Federal Bureau of Prisons (BOP) on your
request for a waiver of fees associated with your request for access to records pertaining to the
use of ion spectrometer scanning equipment in BOP facilities. Specifically, you ask that I
reconsider my fee waiver decision in light of the decision in <u>Prison Legal News v. Lappin</u>, No.
05-1812, 2006 WL 1737483 (D.D.C. June 26, 2006).

        After careful consideration, I have determined that my original decision, as outlined in my
letter to you of June 29, 2006, was appropriate.

        You have specifically asked that I review Federal CURE, Inc.'s (FedCure) ability to
disseminate information to the public. (FedCure Request for Reconsideration, July 10, 2006, at
1). The record before me merely indicates that any information you receive will be available to
subscribers or visitors of FedCure's Web site in a newsletter which, according to FedCure, is only
posted on its Web site. While the Court in <u>Prison Legal News</u> did suggest that a Web site could
be viable distribution channel, it was not the basis of its finding that the plaintiff in that case
(PLN) had the intent and ability to disseminate the requested records. In fact, the Court
specifically stated that its finding was made "regardless of the viability of the PLN website as a
mechanism for distributing the requested information." <u>Prison Legal News</u>, 2006 WL 1737483,
at *8. The opinion then found that PLN had demonstrated an ability to disseminate information
through a nonelectronic means, specifically its distribution of a printed journal to the public, with
a readership population of approximately 18,000. <u>Id.</u>

        FedCure, however, does not provide the public with any printed material, and instead
relies solely on passively making information available to anyone who might seek access to it on
the Internet. Furthermore, a review of FedCure's Web site, shows that the release of your
newsletter is infrequent and irregular, with gaps as long as two years between some issuances.
There is also no indication of the size of readership or number of subscribers to this newsletter.
PLN, by contrast, was able to demonstrate that it has published a monthly newsletter since 1990,
and it was able to provide an estimated number of subscribers and size of readership. <u>See id.</u> at

7/10

*1. This information was a basis for the Court in Prison Legal News to determine that the plaintiff had a "represented readership of 'thousands each month'" and could "'widely disseminate' the requested information to the "'relevant public.'" Id. at *8. Conversely, requests such as yours, that make no showing of how the information would be disseminated other than by passively making it available to anyone who might seek access to it on the Internet, do not meet the standard for fee waiver purposes of demonstrating with particularity that the information will be communicated to the public.

Furthermore, you assert in your Request for Reconsideration that FedCure has a "chat site at Yahoo groups" that allows it to disseminate the information received. (FedCure Request for Reconsideration, July 10, 2006, at 1). I am aware of no legal authority to the effect that the existence of an Internet "chat room" is a sufficient demonstration of an ability to communicate to the public, nor is that consistent with common practice. FedCure's chat rooms are distinct from the PLN newsletters that were affirmatively distributed to a defined membership. Reliance on chat rooms administered by Yahoo Groups is also distinct from the holding in Linn v. Dep't of Justice, No. 92-1406, 1997 WL 577586, at *6 (D.D.C. May 29, 1997), where the plaintiff specified the particular lobbying organizations that would disseminate the received information to a defined mailing membership numbering in the thousands each month. Answering questions as provided by anyone who might seek access to the site on Yahoo does not demonstrate a comparable ability to transmit the requested information to the public.

If you remain dissatisfied with my action on your appeal, judicial review of it is available to you as indicated in my letter of June 29, 2006.

Sincerely,

Daniel J. Metcalfe
Director

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

|                                              |     |                                   |
|----------------------------------------------|-----|-----------------------------------|
| FEDERAL CURE (FedCURE),                      | )   |                                   |
|                                              | )   |                                   |
| Plaintiff,                                   | )   |                                   |
|                                              | )   |                                   |
| v.                                           | )   | Civil Action No. 07–00843 (RBW)   |
|                                              | )   |                                   |
| HARLEY G. LAPPIN, DIRECTOR,                  | )   |                                   |
| FEDERAL BUREAU OF PRISONS,                   | )   |                                   |
|                                              | )   |                                   |
| Defendant.                                   | )   |                                   |
|                                              | )   |                                   |
_____      )

## ORDER

UPON CONSIDERATION of Defendant's Motion for Summary Judgment, Plaintiff's

Opposition thereto, and the entire record herein, it is this _____ day of _____, 2007,

ORDERED that Defendant's Motion be and hereby is granted; and it is

FURTHER ORDERED that the above-captioned action should be, and hereby is

DISMISSED from the Court's docket, with prejudice.


_____
REGGIE B. WALTON
United States District Court Judge

Copies of this order to:

James R. Klimaski
Lynn Ilene Miller
Klimaski & Associates, P.C.
1819 L Street, N.W.
Washington, D.C.  20036

Jonathan C. Brumer
Special Assistant United States Attorney
United States Attorney's Office
  for the District of Columbia
555 Fourth Street, N.W., Room E-4815
Washington, D.C. 20530

2