UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FedCURE,

      Plaintiff,

          v.

HARLEY G. LAPPIN, Director
Federal Bureau of Prisons,

      Defendant.

Civil Action No. 07-0843 (RBW)

January 11, 2008

PLAINTIFF'S OPPOSITION TO
MOTION FOR SUMMARY JUDGMENT

Plaintiff Federal Cure, Inc. (FedCURE), respectfully files this opposition to the summary judgment motion of Harley G. Lappin, Director, Federal Bureau of Prisons (BOP), and moves for summary judgment in its favor concerning the denied fee waiver.

The record supports FedCURE's entitlement to a fee waiver under the Freedom of Information Act (FOIA), 5 U.S.C. § 552 (2007). The FOIA request in question concerns records on use of ion spectrometer scanning equipment in BOP facilities.[1] FedCURE meets all the requirements of the public interest prong of the fee waiver test. Therefore, FedCURE is entitled to a complete fee waiver.

Moreover, FedCURE is qualified for a fee waiver under both the "representative of the news media" or "noncommercial scientific institution" categories. 5 U.S.C. § 552(a).

---

[1] The Defendant explains the ion spectrometer scanning equipment in its Memorandum in Support of Summary Judgment, at 102, fn. 1.

Lastly, Defendant relies upon the Declaration of Wilson J. Moorer (Lappin Memorandum at Exhibit 1). Defendant cannot introduce this Declaration because it is not part in the administrative record.

As Defendant acknowledges, the Court's *de novo* review is limited to the administrative record. (Lappin Memorandum at 10-11); Prison Legal News v. Lappin, 436 F.Supp.2d 17, 22 (D.D.C. 2006). The Moorer Declaration is dated June 22, 2007, after the close of the administrative record with the Department of Justice (DOJ) denial of FedCURE's request for reconsideration of the appeal decision. (Exhibit I, November 8, 2006, Letter from Daniel J. Metcalfe, Director, Office of Information and Privacy, DOJ).

The administrative record consists of the correspondence between FedCURE, BOP and DOJ concerning the FOIA request, the fee waiver application, the appeal and the reconsideration. Therefore, this Court should disregard the Moorer Declaration.

## I. STATEMENT OF FACTS
## AND PROCEDURAL BACKGROUND.

### A. Description of the Requester, FedCURE.

FedCURE is a 501(c)(3) non-profit organization. (Exhibit E, November 1, 2005, letter from Kennth Linn, Esq., FedCURE Chairman, to Co-Direcor, OIP, the DOJ's Office of Information and Privacy). Wanda Hunt's September 26, 2005, denial of a Fees Waiver (Exhibit D) directed Mr. Linn and FedCURE to appeal the denial of a Fees Waiver to the DOJ's OIP. FedCURE's directors and staff serve with no pay. (Ex. E).

FedCURE's primary function is providing information to the public about the workings of the United States Bureau of Prisons (BOP) and the federal prison system. Id. FedCURE is the world's leading expert group in matters relating to federal prison inmates. Collectively, five of

FedCURE's 14 board members have over 50 years of prison experience — "behind the fence" — as former federal inmates.  (Exhibit C, April 20, 2005, Letter from Mr. Linn to the FOIPA Unit, BOP).

FedCURE receives less than $5000.00 in yearly donations.  <u>Id</u>.  The organization publishes a newsletter sent to the public and maintains a website with regular daily news updates. <u>Id</u>.

As of November 2005, FedCURE's two-year-old website had had over 250,000 visits, or "hits."  The organization also maintained a chat site at Yahoo Groups.  The chat cite received as many as 100 requests a day for information on the federal prison system.  (Exhibit E and Exhibit J, page prints from www.FedCURE.org).

### B.  Initial FOIA Request to BOP.

By letter dated February 25, 2005, Mr. Linn, on behalf of FedCURE, requested that the BOP release, pursuant to FOIA and the Privacy Act:

> 1) All information about the accuracy of the ion spectrometer scanning method and the number of visitors turned away at all BOP facilities (by facility) because of the results f the scanning method since institution of its use
>
> 2) all information relating to the training methods used for personnel operating this equipment and staff comments as to these methods and
>
> 3) all records of equipment failures and repairs.

(Exhibit A).

### C.  BOP Response, Listing Search Time and Charges.

The BOP responded on April 4, 2005.  In this letter, the BOP stated that the search would consist of 142 hours, with staff time assessed at $7.00 per quarter hour.  The total charge was

$3,976.00, not including a duplication fee of 10 cents per page.  (Exhibit B, the April 4, 2005,

Letter from Wanda M. Hunt, Chief, FOIA/PA Section, to Mr. Linn).  The BOP required payment

of the $3,976.00 before retrieving and reviewing the records.

### D.  FedCURE's Application for a Fee Waiver.

In response, FedCURE applied for a fee waiver (Exhibit C) on April 20, 2005, for the

document search and duplication.  In support of the fee waiver, FedCURE noted  its non-profit

status, less than $5,000.00 in yearly donations, newsletter and website.

FedCURE further explained that it qualified for a fee waiver because:

> 1.  We are considered a "noncommercial scientific institution"
> since we are involved in the social sciences, keep an extensive
> library, can be called a "think tank" and devoted time and
> resources to research and dissemination of information on matters
> of public interest. ...
>
> 2.  We are representatives of the news media through our regular
> newsletters. ...
>
> 3.  The information sought is in the pubic interest because it is
> likely to contribute significantly to public understanding of the
> operations of the government and is certainly not in the
> commercial interest of the requestor. ... Ettinger v. FBI, 596
> F.Supp. 867, 872 (D.Mass. 1984) (public interest test to be
> liberally construed).

Id.  (Some citations omitted).

FedCURE also explained the need for disseminating the ion spectrometer information.

> FedCure has received numerous requests from the public for the
> information requested and we intend to publish the response in our
> newsletter and on our website.  The information has value to the

> public — particularly those who regularly visit incarcerated federal
> inmates.  The information is not now in the public domain.

Id.[2]

### E.  BOP's Denial of the Fee Waiver Application.

In a September 26, 2005, letter, the BOP denied FedCURE's application for the fee

waiver.  (Exhibit D:  September 26, 2005, Letter from Ms. Hunt to Mr. Linn).  The BOP relied

upon the two-prong statutory test of public interest and lack of commercial interest.  Id., *citing* 5

U.S.C. § 552(A)(4)(A)(iii).  (*See* discussion of this test, below).

BOP also applied the six regulatory factors, the four under the public interest prong and

the two under the lack of commercial interest prong.  Id.  *See* 28 C.F.R. §§ 16.11 (a)-(k) (2007)

(*See also* discussion of factors, below).

The September 26, 2005, denial, however, did not contain any factual findings.  Id.

Although BOP claimed that it analyzed the above six factors "as they applied to the

circumstances of your request," BOP did not provide an explanation of this analysis.  (Id. at 2).

BOP's explanation of why FedCURE did not qualify for the "noncommercial scientific

institution" category was equally conclusory.  After enunciating the definition of such an

institution, BOP simply stated:

> Based on the information you have provided, this definition has not
> been met.

Id.

-----

[2]  As Defendant explained in its memorandum, ion spectrometry detects microscopic
traces of illegal drugs on prison visitors and their clothing and belongings.  (Lappin
Memorandum at 1-2, fn. 1).

Likewise, in rejecting FedCURE's claim that it was a "representative of the news media," BOP, after defining this category, concluded:

> Based on the information you have provided, this definition has not been met.

Id.

Lastly, the BOP concluded that:

> There is no evidence that releasing the information to you will contribute significantly to the public's understanding of how the Bureau of Prisons operates.

Id.

The BOP's denial never discussed any of the supporting evidence that FedCURE had included in its fee application.

## F. FedCURE's Appeal of the Fee Waiver Denial.

By letter of November 1, 2005, FedCURE appealed BOP's denial of its fee waiver application to the Department of Justice (Exhibit E). In this appeal, FedCURE described the nature of the organization, its two-year-old website with over 250,000 hits and the Yahoo chat site with over 100 requests for information each day. Id.

The letter renewed FedCURE's contentions that it met the definitions of "representative of the news media," "noncommercial scientific think tank" and the information on ion spectrometry was in the public interest. Id.

The appeal letter also noted that:

> There are numerous cases holding that the public interest benefit test is to be liberally construed.

Id.

The letter further stated:

> Moreover, FedCure is a 501(c)(3) non-profit. Its directors and staff serve with no pay. The primary function of FedCure is to provide information to the public about the workings of the Bureau of Prisons. **In particular, FedCure has received hundreds of questions and complaints about ion spectrometer procedures and the reasoning behind their use.**
>
> FedCure meets each of the six factors used to determine whether a fee waiver should be granted: 1. This request deals solely with the operations of government. 2. The disclosure would contribute to the public's understanding of government operations. 3. The general public at large is interested in the use of these machines. 4. The disclosure would "significantly" answer the public's questions. 5. FedCure has no commercial interest whatsoever in the disclosure. 6. There is no commercial interest to outweigh the public interest.
>
> On October 27, 2005, the Chairman of FedCure, Kenny Linn, met with the Director of the Bureau of Prisons, Harley Lappin, in his office about various prison issues. First on the agenda was the subject of ion spectrometers. A news posting about this meeting and this issue is now on the FedCure website.

Id. Emphasis added.

### G. DOJ's Upholding the Fee Waiver Denial.

On June 29, 2006, the DOJ upheld the BOP denial of the fee waiver.[3] (Exhibit G: June 29, 2006, Letter from Daniel J. Metcalfe, Director, Office of Information and Privacy, DOJ). The basis for the DOJ decision was that FedCURE had not satisfied factors two, three and four of the statutory public interest requirement.

---

[3] In a November 17, 2005, letter to Mr. Linn, the DOJ acknowledged receipt of the fee waiver appeal on November 9, 2005. The letter also informed Mr. Linn of the DOJ backlog of appeals, assigned the appeal a number and stated that it would decide the appeal as soon as possible. (Exhibit F: November 17, 2005, Letter from Priscilla Jones, Chief, Administrative Staff, DOJ, to Mr. Linn).

First, the Agency found that the April 20, 2005, fee request waiver did not "adequately address the [FOIA] public interest requirement .... (encompassing the first four fee waiver factors).[4]  Ex. G at 2.  DOJ claimed that FedCURE merely "paraphrased the statutory standard" and six waiver factors.  Id.

Second, the DOJ claimed that FedCURE failed to show that it would adequately disseminate the information to the public and therefore failed factor three.  Id.

Third, DOJ pointed to the large volume of information and technical nature of the material.  DOJ asserted that FedCURE had not specified that it would "extract, analyze, synthesize and effectively convey" that information to the public.  Id.

Fourth, the DOJ asserted that FedCURE did not fit the definitions of news media representative or a noncommercial scientific institution.  Id. at 3.  DOJ found that making information available on a website was insufficient to place the requester in a favored fee category.  Id.

Fifth, DOJ claimed that the information on FedCURE's website was not news because is was not "current."  Id.

Lastly, DOJ determined that FedCURE's website did not fall within scientific organizations that conducted research in the "soft sciences," such as social studies.  Id. at 4.

**H.  FedCURE's Request for Reconsideration.**

Subsequently, on July 10, 2006, FedCURE requested that DOJ reconsider its appeal denial in light of the then just-decided Prison Legal News v. Lappin, 436 F.Supp.2d 17 (D.D.C.

---

[4]  FedCURE will not respond to these claims in this Statement of Facts and Procedural Background.  Rather, FedCURE will save its rebuttal for the Argument section of this opposition.

2006).  (Exhibit H:  July 10, 2006, Letter from Mr. Linn to Mr. Metcalfe).  FedCURE pointed out

that Prison Legal News dealt with the sufficiency of news dissemination and relied upon Linn v.

DOJ, 1997 U.S. Dist. LEXIS 9321 (May 29, 1997).  Id.

   The reconsideration request also explained that:

> In FedCure's request for information, we specifically advised that
> FedCure has a website *and a chat site* at Yahoo groups.  We stated
> "its chat site at Yahoo Groups has as many as 1000 requests for
> information each day."  The appeal response does not address
> FedCure's Yahoo Groups site whatsoever, which is where our
> daily information is disseminated and goes on to say that there is
> "no evidence ... of FedCure's intention to extract, analyze,
> synthesize, and effectively convey the information received to the
> public," ... even though that is exactly what we do every day when
> we answer those requests.
>
> The appeal response make no distinction whether a web-based
> organization is large or small, old or new, sophisticated or
> rudimentary.  If this type of decision is allowed to stand, it would
> be virtually impossible for a small, new, unsophisticated web-
> based organization to ever receive a fee waiver from the
> government for requested information from one of its agencies.

Id.  (Italics emphasis is in the original).

### I.  DOJ's Response to the Reconsideration Request.

   DOJ upheld its denial, finding that FedCURE's failure to provide printed material, i.e., a

newsletter mailed out to subscribers or the public distinguished it from the plaintiff in Prison

Legal News.  DOJ also rejected the Yahoo chat room as a means of sufficient dissemination to

the public.  (Exhibit I:  November 8, 2006, Letter from Mr. Metcalfe to Mr. Linn).

### J.  FedCURE's Filing for Judicial Review.

   On May 7, 2007, FedCURE filed a Complaint in this Court, claiming that BOP's waiver

denial was improper.  FedCURE requested a declaratory judgment that BOP's denial of the fee

waiver was unlawful, an injunction ordering BOP to grant the fee waiver and produce the requested material without charge and reasonable attorney's fees and costs.

In light of the Argument below, this Court should deny Defendant's motion for summary judgment and find that FedCURE is qualified for a fee waiver for all costs.

## II.  LEGAL STANDARDS.

### A.  Summary Judgment Standard.

Summary judgment is appropriate only when the record shows that there is not genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.RCiv.P. 56(c).  The moving party bears the initial burden of demonstrating the absence of any genuine issues of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A genuine issue is one that, if resolved, establishes a claim or defense, affecting the action's outcome.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

Defendant relies upon the Moorer Declaration to support a summary judgment that denial of FedCURE's fee waiver request was valid as a matter of law.   As the next section establishes, and the Defendant acknowledged (Lappin Memorandum at 10-11), while judicial review is *de novo*, the Court is limited to the record before the agency.   In Landmark Legal Foundation v. IRS, 1998 U.S. Dist. LEXIS 21722 at 7* (T.C. Sept. 22, 1998), the Tax Court discussed the scope of judicial review:

> The IRS's decision to deny a fee waiver to Landmark is subject to *de novo* review by this court.  However, this review is limited to the record that was before the IRS at the time of its decision. ... Consequently, the court will consider only the correspondence between Landmark and the IRS between January 28, 1997, when Landmark made its FOIA request, and July 17, 1997, when the IRS denied that request. **Information, theories, and evidence newly**

> **introduced by the parties in their summary judgment papers
> cannot be** considered. ...

(Citations omitted).  (Italics in original).  (Emphasis added).

Moreover, in <u>D.C. Technical Assistance Org., Inc. v.  U.S. Dep't of Housing and Urban Development</u>, 85 F.Supp.2d 46, 47 (D.D.C. 2000), a case which Defendant cites, the court noted the limitation of the *de novo* review to the agency record.  As a result, the court stated:

> The additional supporting documents submitted with plaintiffs'
> motion for summary judgment were not considered in the
> disposition of this case.

The Moorer Declaration, dated June 22, 2007, after FedCURE filed its Complaint on May 7, 2007, is not part of the administrative record.  Therefore, the Court cannot receive the Declaration into evidence and is irrelevant.[5]

### B.  *De Novo* Review of the Agency Decision.

Under FOIA, the Court need not defer to BOP's denial of the fee waiver and determination that FedCURE is not a "representative of the news media" or a "noncommercial scientific institution."

Rather, FOIA permits the Court to determine the matter *de novo*, albeit the Court must base its review only on the agency record.  5 U.S.C.  § 552(a)(4)(A)(vii); <u>Prison Legal News v. Lappin</u>, 436 F.Supp.2d 17, 22 (D.D.C. 2006).  Thus, the Court can reach its own factual and legal conclusions from the agency record before it.

The agency record consists of the correspondence between FedCURE, BOP and DOJ, as discussed in the Statement of Facts, above.  The Exhibits to this Opposition are in chronological

---

[5]  Moreover, a reading of the Declaration shows that it merely restates what is contained in the correspondence between FedCURE, BOP and DOJ.

order as well, so the sequence of request and response between FedCURE, BOP and DOJ can be followed that way as well.

Under the FOIA *de novo* review standard, this Court can examine and construe these documents without regard to the BOP's consideration of them. The Court can, independent of the Agency, determine that genuine issues of material fact exist concerning FedCURE's eligibility for a fee waiver or rule that FedCURE is eligible for the waiver.

### C.  FOIA Requirements for a Fee Waiver.

Under FOIA, a requester must meet a two-prong statutory test for waiver of fees for the costs of producing documents.   These two tests are: (1) disclosure of the information is in the public interest, and (2) is not primarily in the requester's commercial interest.  5 U.S.C. § 552(a)(4)(A)(iii).[6]

In addition to the above two-prong test, the Department of Justice has promulgated regulations prescribing six factors that the requester must meet for the fee waiver.  28 C.F.R. §§ 16.11 (a)-(k) (2007).  The first four factors fall under the public-interest prong and the last two under the commercial-free prong.

### 1.  Public Interest Prong Factors:

      **a.  Subject of the request.**  The requested materials must concern "operations of activities of the government," which have a connection that is direct and clear, not remote or attenuated.

---

[6]  The statute reads:

      [d]ocuments shall be furnished without charge ... if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

**b.  Informative value of the information to be disclosed.**  The information must be "likely to contribute" to an understanding of government operations or activities.  The disclosed material must be meaningfully informative about these operations or activities.

**c.  A contribution to the public's understanding of the subject is likely to result from disclosure.**

> i.  Disclosure of the material will contribute to public understanding of the subject.
>
> ii.  Disclosure will contribute to a "reasonably broad" audience interested in the subject, not just the requester's individual understanding.
>
> iii.  There is a consideration of the requester's expertise in the subject and intention to effectively disseminate the information to the public.
>
> iv.  There is a presumption that a representative of the news media satisfies the above consideration.

**d.  The significance of the contribution to the public understanding.**  The disclosure will likely contribute "significantly" to the public understanding of the government operation or activities.  Moreover, the disclosure will enhance the public's understanding compared to the understanding prior to the disclosure.

The Agency cannot make a subjective determination of whether the information is sufficiently important to be made public.  <u>Ettlinger v. FBI</u>, 596 F.Supp. 867, 877 (D.Mass. 1984).

**2.  Absence of Commercial Interest Prong:**

If the requester satisfies the public interest prong, he or she must show that the sought-after information is not primarily in his or her commercial interest.  5 U.S.C. § 552(a)(4)(A)(iii).

-13-

This test consists of two conditions.  First, the agency must ascertain if the disclosure would serve any commercial interest of the requester.  Second, the agency must weigh any commercial interest against the public interest in disclosing the information.  The agency must grant the fee waiver if the public interest outweighs the requester's commercial interest in the information. Larson v. CIA, 843 F.2d 1481, 1483 (D.C. Cir. 1988).

The regulations define commercial use as:

> ... a request from or on behalf of a person who seeks information for a use or purpose that furthers his or her commercial, trade, or profit interests ....  Components shall determine, whenever reasonably possible, the use to which a requester will put the requested records. ...

28 C.F.R. § 16.11(b)(1).

Educational institutions, noncommercial scientific institutions and representatives of the news media are not subject to fees.  Id. at § 16.11(c)(1)(i).  The regulations define these entities. Id. at § 16.11(b)(4)-(6).[7]

---

[7]  The news media definition reads, in pertinent part:

> (6) Representative of the news media, or new media requester, means any person actively gathering news for an entity that is organized and operated to publish or broadcast news to the public.  The term "news" means information that is about current events or that would be of current interest to the public. ...  To be in this category, a requester must not be seeking the requested records for a commercial use.  However, a request for records supporting the news-dissemination function of the requester shall not be considered to be for a commercial use.

The noncommercial scientific institution definition reads, in pertinent part:

> ... an institution that is not operated on a "commercial" basis ... and that is operated solely for the purposes of conducting scientific research the results of which are not intended to promote any particular product or industry.

-14-

BOP concedes that FedCURE is not a commercial entity and that disclosure of the ion spectrometry information is not for a commercial interest. (Exhibit G.)

### III.  ARGUMENT.

### A.  The Record Establishes that FedCURE Meets the Public Interest Requirement Under the FOIA Statute and Regulations and Qualifies for a Fee Waiver.

FedCURE meets all the criteria for a fee waiver.  FedCURE satisfies the public interest prong because the requested documents relate to government operations in the federal prisons and FedCURE's submissions to BOP show how disclosure will significantly contribute to the public's understanding of the government, in this case, use of ion spectrometry on visitors to federal prison inmates.

### 1.  FedCURE Did Not Rely Solely Upon Its Non-Profit Status, Small Budget or Staff and Directors Serving Without Pay to Justify a Fee Waiver.

Defendant contends that FedCURE requested a fee waiver based **solely** on three factors — its non-profit status, small budget and non-compensated staff and directors.  (Lappin Memorandum at 17-18).  This allegation is without support.  FedCURE's fee waiver application, appeal and request for reconsideration address the public interest and commercial-free tests and six factors contained in the regulations.  Therefore, the authorities that Defendant's cites concerning indigence are irrelevant.

Defendant also asserts that an entity's non-profit or public interest status does not relieve it from meeting the statutory test for a fee waiver.  FedCURE never advanced this argument when seeking the fee waiver.

-15-

Moreover, Defendant ignores authority acknowledging the suitableness of a fee waiver for public interest organizations. In <u>Institute for Wildlife Protection v. United States Fish and Wildlife Service</u>, 290 F.Supp.2d 1226, 1232 (D.Or. 2003), the court explained:

> ... I note that strong policy considerations support a fee waiver in this case. The legislative history discussed in <u>McClellan [Ecological Seepage Situation v. Carlucci</u>, 835 F.2d 182 (9th Cir. 1987)]; <u>National Security Archive v. U.S. Dep't of Defense</u>, 88 F.2d 1381 (D.C. Cir. 1989), <u>cert. denied</u>, 494 U.S. 1029 (1990), and other cases demonstrates that Congress intended independent researchers, journalists, and public interest watchdog groups to have inexpensive access to government records in order to provide the type of public disclosure believed essential to our society. Moreover, in the 1986 amendments to FOIA, Congress ensured that when such requesters demonstrated a **minimal showing** of their legitimate intention to use the requested information in a way that contributes to public understanding of the operations of government agencies, no fee attaches to their request.

(Emphasis added).

### 2. FedCURE's Fee Waiver Application, Appeal and Request for Reconsideration Addressed the Overall Public Interest Requirement with Sufficient Specificity.

Defendant claims that FedCURE did not sufficiently address the FOIA public interest requirements, statutory and regulatory. Specifically, Defendant states that FedCURE provided only:

> (1) statements of FedCure's organizational mission and bona fides,

> (2) paraphrases of the relevant statutory and regulatory language,

> (3) expressions of general interest in the material sought, and

> (4) vague and conclusory language.

(Lappin Memorandum at 19).  Defendant's assertions, however, do not support a finding, as a matter of law, that FedCURE did not fulfill the specificity necessary to meet the public interest test.[8]

### a. FedCURE's Organizational Mission and Bona Fides.

As explained above, the Defendant claims that this information constitutes one of the reasons why FedCURE failed to specifically describe the public interest.  Defendant's inclusion of this factor in its lack of public interest specificity argument is baffling.

As FedCURE explained, it is a 501(c)(3) non-profit organization.  It is also the largest private organization dealing with federal inmate issues.  (Exhibit E: the FedCURE Nov. 1, 2005, letter).

FedCURE also explained that it is the world's leading expert in matters concerning federal inmates and has on its board 14 members with "over 50 years of prison experience — behind the fence — as former federal inmates...."  (Exhibit C: the FedCURE April 20, 2005, letter).

FedCURE's description of itself was necessary to establish the organization's public interest agenda and federal inmate expertise.  Otherwise, the BOP could have denied the waiver on the grounds that FedCURE had a commercial interest in the information and/or did not have any experience with federal prison "safety" measures.

This information, contrary to Defendant's assertions, adds specifics necessary to meet the public interest component.

---

[8]  Defendant discusses the fact that the requester has the burden of establishing that it meets the public interest requirement.  (Lappin Memorandum at 21-22).  FedCURE does not dispute this rule.  FedCURE's position is that it does meet this burden.

**b. Paraphrases of the Relevant Statutory and Regulatory Language.**

Defendant claims that FedCURE's fee waiver request merely paraphrases the statute's two-pronged test and the regulations' six factors. When viewed together, however, the fee waiver application, appeal and reconsideration request adequately explain how FedCURE satisfies the statutory and regulatory requirements.

FedCURE provides specific information concerning the four factors under the public interest prong.

**a. Subject of the request.** The information concerns the ion spectrometry tests that federal prison authorities use on individuals visiting federal inmates. The test constitutes a government operation or activity, which has a direct and clear connection.

**b. Informative value of the information.** The information is of interest to the public by contributing to its understanding of government use of and spending on the ion spectrometry test. Federal inmates and their visitors to federal inmates will be especially interested.[9] Moreover, as FedCURE explained, as of November 1, 2005, it had received hundreds of questions and complaints about the ion spectrometer.

**c. Contribution to the public's understanding of the subject resulting from the disclosure.** As discussed in b., the disclosure of information about the ion spectrometer will contribute to the public's understanding of the process. The audience is reasonably broad, even if limited to federal inmates and their visitors. FedCURE specifically described its expertise in federal inmate matters. Lastly, FedCURE manifested its interest in effectively disseminating the information to the public through its newsletter,

---

[9] Defendant cannot argue that if, theoretically, the only "public" interested in the ion spectrometry information would be federal inmates and their visitors this public sector would be too small. In <u>Linn v. Dep't of Justice</u>, 1997 U.S. Dist. LEXIS 9321, *19 (D.D.C. May 29, 1997), this Court reiterated its rejecting the BOP's argument that dissemination of information to the "incarcerated public" was only a "narrow segment" of the population and would therefore not contribute to public understanding.

-18-

website and chat room on Yahoo Groups.  As FedCURE will
discuss below, it meets the news media representative category.

**d.  Significance of the contribution to public understanding.**
The information about the ion spectrometer test, as FedCURE
stated in its fee waiver materials, does not exist in an domain
accessible to the public.  Therefore, FedCURE's releasing this
information in form understandable by a layperson will enhance
public knowledge.

Thus, Defendant's claim that FedCURE merely paraphrased the statutory and regulatory

public interest requirements is invalid.

**c.  Statement of Interest in the Material Sought.**

As this Court explained in <u>Prison Legal News</u>, 426 F.Supp.2d at 21:

The requester of a fee waiver bears the initial burden of identifying,
with reasonable specificity, the public interest to be served ....

In that case, the plaintiff, Prison Legal News, was a non-profit legal journal devoted to

reporting news and litigation concerning prisons.  It requested that BOP provide it with:

... "all documents showing all money paid by the [BOP] for
lawsuits and claims against it" between January 1, 1996 and
July 31, 2003.

<u>Id</u>. at 19.

The requested material included copies of each "verdict, settlement or claim in each case

showing the dollar amount paid, the identity of the plaintiff/claimant and the legal identifying

information for each lawsuit or claim or attorney fee award" and "... the complaint ... or the claim

... in each incident which describes the facts underlying each lawsuit and claim."   <u>Id</u>.

Prison Legal News also requested a fee waiver for processing the request and duplication

of the documents.  <u>Id</u>.

-19-

One of the issues was whether Prison Legal News had addressed the public interest requirement with sufficient specificity. The court examined two decisions addressing this question: Judicial Watch v. Rossotti, 326 F.2d 1309 (D.C. Cir. 2003), and Judicial Watch v. Dep't of Justice (Judicial Watch I),133 F.Supp.2d 52 (D.D.C. 2000).

In Rossotti, the organization sought "reports, investigations, decisions, waivers and findings of fact concerning conflicts-of-interest by ... IRS Commissioner Charles O. Rossotti." 436 F.Supp.2d at 22.

The Rossotti plaintiff, Judicial Watch, explained that:

> the public is always well served when it knows how government activities, particularly matters touching on legal and technical questions, have been conducted and the information requested will be meaningfully informative in increasing public understanding of the IRS commissioner's involvement and interest in lucrative government contracts.

Id.

The District of Columbia Circuit found in Rossotti that the organization "specifically explain[ed] the public interest to be served." Id.

In contrast, Judicial Watch in Judicial Watch I, requested:

> material related ... to the [d]ecision(s) by Attorney General Janet Reno, the Department of Justice, the Immigration and Naturalization Service ... to return Elian Gonzales to the custody of his biological father in Cuba.

Id. 22-23.

The asserted public interest was that the information:

> would promote accountable government and benefit the public by identifying areas for future reform as well as deterring future abuses that could otherwise proliferate without scrutiny.

-20-

Id. at 23.

The Judicial Watch I court found that this explanation was "perfunctory" and "too ephemeral to satisfy the reasonable specificity standard."  Id.

In determining that Prison Legal News had met the specificity standard, this Court explained that:

> As in Rossitti, the PLN request specifically explains both the records sought and how the public will benefit from the information contained in those records. ...  Moreover, in contrast to Judicial Watch I, PLN does not assert that information related to a single isolated event will benefit the public in the general sense of "promoting accountable government."  Rather, the [Prison Legal News] PLN request seeks information regarding specific events that occurred within BOP facilities that will provide insight to the public about how its federal prisons are being managed and operated, and how its tax dollars are being expended.

Id. at 23-24.

The Court noted two ways that Prison Legal News explained how the information would "provide insight into how the requested information would benefit the public."  Id. at 24.

> 1.  Damage verdicts and settlements are an important means of measuring respect for constitutional rights within penal facilities.
>
> 2.  Litigation against government agencies is an important barometer of how well managed, or badly run as the case may be, the agency may be as well as illustrating trends and patterns of abuse or other forms of mismanagement.

Id. at 24.

FedCURE provided the same specificity in its letters requesting a waiver.  First, as did Prison Legal News, FedCURE sought information on specific events in the federal prison system:

1.  all information about the accuracy of the ion spectrometer scanning method and the number of visitors turned away at all BOP facilities (by facility) because of the results of the scanning method since institution of its use;

2.  all information relating to the training methods used for personnel operating his equipment and staff comments as to these training methods; and

3.  all records of equipment failures and repairs.

(Exhibit A: FedCURE's [Feb 25, 2005, letter.)

FedCURE also explained that it had "received numerous requests from the public" for the above information about the ion spectrometer.  (Exhibit C).  FedCURE also stated that this information would be valuable to "those who regularly visit incarcerated federal inmates."  Id.  In its appeal of the fee waiver denial, FedCURE further pointed out that:

In particular, FedCure has received hundreds of questions and complaints about ion spectrometer procedures and the reasoning behind their use.

(Exhibit E).

### d. The Purported Vague and Conclusory Language.

To support its claim that FedCURE used "vague and conclusory" language in explaining its entitlement to a fee waiver, Defendant cited Oglesby v. Dep't of the Army, 920 F.2d 57 (D.C. Cir. 1990).

Defendant, however, mischaracterizes this decision.  Oglesby did not rule on sufficiency of the requester's justification for a waiver.

Rather, the case involved failure to exhaust administrative remedies.  The court never ruled on whether the requester was entitled to a fee waiver.  Id. at 71.

<u>Oglesby</u> actually supports FedCURE's fee waiver request.  In a footnote, the court addressed the requester's explanation of why the information would serve the public interest.

> The information requested is beneficial to the public interest. I am a writer and lecturer who has disseminated such information in the past, and I intend to do so in the future.

<u>Id</u>. at 66, fn. 11.

The court also noted that the requester sent a second fee waiver request:

> explaining the public interest nature of the information and the specific journals in which he had previously published and which could be future forums for his work.

<u>Id</u>.

The court noted that the National Security Agency "accepted the showing as adequate to justify waiver of fees."  <u>Id</u>.

<u>Oglesby</u> specifically stated that it would not rule on the fee waiver issue.

> Because appellant did not exhaust his administrative remedies with respect to the Army's denial of his fee waiver request, we will not decide the merits of appellant's claim that his fee waiver was unreasonably denied.

Defendant's reliance on <u>Oglesby</u> to support its assertion that FedCURE's language in its fee waiver request is vague and conclusory is misplaced.  Rather, the explanation FedCURE provided resembles that from the requester in <u>Oglesby</u>, in which one agency found sufficient the public interest justification.

**B.  FedCURE Satisfies Regulatory Fee Waiver Factors Two, Three and Four Because It Established that Disclosure of the Ion Spectrometry Information Will Significantly Contribute to an Increased and Meaningful Understanding by a Reasonably Broad Public.**[10]

**1.  FedCURE Factor Satisfies Factor Two Because It Has Demonstrated that Disclosure of the Ion Spectrometer Material Will Be "Meaningfully" Informative and Contribute to Increased Public Understanding.**

Defendant claims that FedCURE cannot under satisfy factor two because it lacks the ability or intention to disseminate the information to the general public.  Defendant discusses its conclusion in its analysis of factor three.  (Lappin Memorandum at 23).  FedCURE will address this issue there.

Defendant provides other ground for determining that FedCURE had not met factor two, explaining that the information is "technical" and BOP did not find any evidence of "FedCure's intention to extract, analyze, synthesize and effectively convey the information received to the public."  Id. at 24.  From these observations, BOP inferred that:

> (1) [FedCURE] would only be able to share the information it sought with a small pool of people, and
>
> (2) in view of the technical nature of this information and [FedCURE's] intention to present it in undigested form, that only a small subset of these individuals would understand the date being shared.

Id.  These conclusions are erroneous.

---

[10]  Defendant concedes that FedCURE satisfies regulatory factor I — the information about the ion spectrometer concerns "identifiable operations and activities of the federal government that is direct and clear, not remote and attenuated."  (Lappin Memorandum at 22-23).

First, Defendant does not cite to any language in the FedCURE fee waiver materials that

FedCURE did not intend to "extract, analyze, synthesize and effectively convey" the information.

Rather, FedCURE directly contradicted this claim in its "Reconsideration of Appeal

Denial."  FedCURE stated that:

> The appeal response does not address FedCure's Yahoo Groups
> [chat] site whatsoever, which is where our daily information is
> disseminated and goes on to say that there is "no evidence ... of
> FedCure's intention to extract, analyze, synthesize and effectively
> convey the information received to the public" (Appeal Response,
> pg. 3), **even though that is exactly what we do every day when
> we answer those requests.**

(Exhibit H: FedCURE letter July 10, 2006.  Emphasis added here.)

Given the above, the Defendant's rationale for concluding that the information, because

of its technical nature, would reach only a "small subset" of individuals is incorrect.

FedCURE's explanation is like that of the environmental organization in <u>Institute for

Wildlife Protection v. United States Fish and Wildlife Service</u>, 290 F.Supp.2d at 1226.  In that

case, the court pointed to the organization's explanation that it would digest and analyze the

material it sought — petitions to the defendants (who also included the Department of the

Interior) requesting that they list certain species or sub-species as endangered.

The petitions addressed two technical tests to determine endangered species — GIS, a

form of computerized mapping, and GAP analysis, an evaluation of the "gap" between protected

habitats and needs of the species.  <u>Id</u>. at 1227, 1231-32.

Moreover, Defendant cannot rely upon its excuse that the information would reach only a

small subset of people.  First, Defendant does not provide any documentation of the number of

individuals who would read about and benefit from the ion spectrometry information. Defendant's characterization of this group as "small" is wholly speculative.

Second, case law does not support the "small audience" defense. In <u>Carney v. Dep't of Justice</u>, 19 F.3d 807 (2nd Cir. 1994), a scholar requested information about the role of the Department of Justice in selection of federal judges. <u>Id</u>. at 809. The scholar requested a fee waiver, which the government denied. One of the reasons for the denial was that the requester had not provided sufficient evidence that "dissemination of any dissertation, book, or article he wrote would be broad enough to justify a waiver." <u>Id</u>. at 811.

The Second Circuit disagreed with this reasoning.

> Information need not actually reach a broad cross-section of the public in order to benefit the public at large. For instance, the DOJ suggests that, because Carney's dissertation and proposed articles and book on the role of the DOJ in the judicial selection process are scholarly in nature, they will not reach a general audience and hence will not benefit the public at large. Such work by its nature usually will not reach a general audience, but, by enlightening interested scholars, it often is of great benefit to the public at large. To suggest otherwise is to ignore the important role of academe in our democracy. The relevant inquiry, as we see it, is whether the requester will disseminate the disclosed records to a reasonably broad audience of persons interested in the subject.

> From the information he submitted to the DOJ, we are satisfied that Carney will disseminate the disclosed records to a sufficiently broad audience of students and academics interested in his work. ... Moreover, Carney submitted evidence that he is a serious scholar, qualified to perform research on this subject. Thus, we are satisfied that Carney's work is likely to be considered by other scholars. While it is true that Carney's book is only tentative, the fact that he is working on a related dissertation is sufficient evidence, for purposes of the public interest fee waiver, to conclude that his book will be completed. Thus, we reject the DOJ's contention that Carney was required to prove that his articles and book would be published.

<u>Id</u>. at 814-15.

Subsequently, in <u>Judicial Watch, Inc. v. Dep't of Justice</u>, 365 F.3d 1108, 1126 (D.C. Cir. 2004), the District of Columbia Circuit, citing <u>Carney</u>, ruled that:

> ... proof of the ability to disseminate the released information to a broad cross-section of the public is not required.

Lastly, as FedCURE has previously pointed out above in footnote 9, <u>Linn v. Dep't of Justice</u> found that the prison population was a sufficient audience to meet the contribution to the public understanding requirement.

Defendant is therefore wrong in concluding that the audience FedCURE will reach in disseminating the ion spectrometry information is too small.

### 2.  FedCURE satisfies Factor Three Because It Will Effectively Convey the Ion Spectrometry Information to a "Reasonably Broad"Audience.[11]

FedCURE demonstrated, in its fee waiver materials, that it has the ability and intention to effectively disseminate the information to the public.  These means of dissemination are FedCURE's:

> 1.  Online website that has been up for about two years, provides regular daily news updates, and had over 250,000 as of 2005,
>
> 2.  Online newsletter, and
>
> 3.  Chat room on Yahoo Groups that receives as many as 100 requests for information each day.

(Exhibits C, E, and H: FedCURE letters of April 20, 2005, Nov. 1, 2005, and July 10, 2006).

---

[11]  In as far as any of this argument requires a showing of a "broad audience," FedCURE relies upon its argument in the immediately preceding section that its audience is sufficiently large.

Defendant argues that these means of dissemination are inadequate because: (1) the newsletter exists only on the FedCURE website; (2) FedCURE does not regularly publish the newsletter; and (3) the newsletter is available only to those who visit the website. (Lappin Memorandum at 25-26). Defendant further argues that FedCURE does not "provide" the public with any material, but "passively" makes the material available on its website. Id. at 26. This comment implies that FedCURE does not mail a printed newsletter to subscribers.

Defendant repeats its argument that the ion spectrometer information is technical and that FedCURE has not stated an intention to digest this material for its public. Id. at 27. FedCURE has previously countered this claim and shown that it is untrue.

Defendant then claims that FedCURE falls within the ruling that "[s]imply maintaining a website is not disseminating information to a broad audience of interested individuals." Brown v. United States Patent and Trademark Office, 445 F.Supp.2d 1347, 1360 (M.D. Fla. 2006), aff'd in 2007 W.L. 446601 (11th Cir. 2007)(unpublished).

Brown, however, does not apply to this case. In Brown, the requester was a private individual who maintained his own website concerning lawsuits against the Patent Office. As the court explained, the requester did not:

> ... present evidence that he was employed by a news organization such as a television station or newspaper or magazine publisher. Rather, Plaintiff contends that the creation of his website, where he posts "information about the operations and activities of the USPTO," qualifies him as a representative of the news media.

Id. at 1356.

Unlike the Brown plaintiff, FedCURE has not claimed news representative status based solely on its creating its website.

Defendant claims that a requester must employ a wide range of communication methods to adequately disseminate information to the public. (Lappin Memorandum at 26). However, in the decisions that Defendant cites, the Courts merely described the means of communication. The Courts did not rule that all these methods were necessary. <u>Judicial Watch v. Rossotti</u>, 326 F.3d 1309 (D.C. Cir. 2003); <u>Judicial Watch v. Dep't of Justice</u>, 185 F.Supp.2d 54 (D.D.C. 2002).

Defendant also points to large circulation numbers as another indication of sufficient dissemination. (Lappin Memorandum at 26-27.) The reasoning is flawed because, as FedCURE has already established above, the Courts do not require a multitude of readers to satisfy the reasonably broad audience requirement.

As Defendant points out, part of the reason for denying FedCURE's fee waiver was that the organization was not sending out any printed material, but relied upon what it posted on its website. The Agency described this electronic means of communication as "passively making formation available to anyone who might seek access to the Internet." (Lappin Memorandum at 26.)

This observation ignores this Court's acknowledgment in <u>Electronic Privacy Information Center v. Dep't of Defense</u>, 241 F.Supp.2d 5, 14 (D.D.C. 2003), of the effect of technological changes upon news dissemination.

> The fact that EPIC's newsletter is disseminated via the Internet to subscribers' e-mail addresses does not change the analysis. DOD's regulation states that the examples of news medica cited "are not meant to be all-inclusive." ... More importantly, the regulation anticipates technological advancements, recognizing that "as traditional methods of news delivery evolve (e.g., electronic dissemination of newspapers through telecommunications services), such alternative media would be included in (the news media) category.

In light of <u>Electronic Privacy</u>, above, Defendant's attempt to distinguish <u>Prison Legal News</u>, 436 F.Supp.2d at 17, from the instant case is fruitless. Defendant interprets <u>Prison Legal News</u> as rejecting that organization's website as a viable mechanism for distributing the information sought from BOP. (Lappin Memorandum at 28-29). As a result, in refusing to follow <u>Prison Legal News</u> and grant FedCURE a fee waiver, the Agency focused solely on the printed newsletter that Prison Legal News sent out. <u>Id</u>. at 29.

The Defendant again relies upon the passivity argument, stating:

> [FedCURE] ... does not provide the public with any printed material, relies solely on passively making information available to anyone who might seek access to it online on its website and its Yahoo chat room, publishes its newsletter only on its website and on an infrequent basis, has provided no estimate of the size of its readership or the number of subscribers to its newsletter.

<u>Id</u>.

This interpretation is erroneous. The Court in <u>Prison Legal News</u> did not accept BOP's disregard of the website. Rather, the Court found:

> The question before the Court, therefore, is whether PLN has the ability to disseminate the information. The government primarily argues that the finding by the OIP that the PLN website is not a viable distribution channel shows that PLN failed to demonstrate its dissemination ability. Court does not agree, Regardless of the viability of the PLN website as a mechanism for distributing the requesting information, with 3,400 reported subscriber and an estimated readership population of 18,000, PLN has demonstrated its ability to distribute the printed journal to the public.

436 F.Supp.2d at 26-27.

Thus, Court left open the question about the viability of the website as a dissemination mechanism.

Defendant then discusses FedCURE's Yahoo chat room site, arguing that there are only a "small number" of messages.  (Lappin Memorandum at 29-30).  This characterization is misleading, as a copy of the chat room "Message History" from 2002 to 2008 proves.  (Exhibit J).[12]  There are a sufficient number of messages each month to satisfy the dissemination requirement.

Lastly, Defendant distinguishes Linn v. Dep't of Justice, 1997 U.S. Dist. LEXIS 9321 (D.D.C. May 29, 1997) on the basis that the defendant, as here, BOP, did not challenge FedCURE's ability to disseminate the requested information while here, BOP does.  (Lappin Memorandum at 30).  This reasoning is ludicrous.  Defendant cannot rescind its earlier finding that FedCURE would adequately disseminate requested material, especially when the court relied upon BOP's determination.

> Plaintiff [Linn] asserts that "there are federal inmate lobbying organizations (... CURE ...)[13] who have expressed an interest in BOP policy statements in general and the response to Plaintiff's FOIA requests in particular.  Their member mailings number in the thousands each month and they have both an interest and the ability to further disseminate the information. ...  Therefore, based on Plaintiff's representations that he will supply the information he has received to organizations which can widely disseminate it to the relevant public, and because this record gives the Court no reason to doubt the truth of such representations, the Court finds that the Plaintiff's fee waiver must be granted.

Linn v. Dep't of Justice, 1997 U.S. Dist. LEXIS 9321, *20.

---

[12]  FedCURE acknowledges that judicial review is limited to the record before the agency.  However, because Defendant introduced the chat room message numbers and cites to the chat room URL, http://groups.yahoo.com/group/FedCure-org., FedCURE urges this Court to examine this exhibit.

[13]  FedCURE is the federal prison chapter of CURE.  (Exhibit A FedCURE letter of Feb. 25, 2005).

Given <u>Linn</u>, this Court cannot uphold Defendant's about-face on FedCURE's ability to disseminate the requested information.

FedCURE satisfies factor three requiring a requester's ability and intention to effectively convey or disseminate the information to a reasonably broad audience of individuals interested in the subject. FedCURE has established that this information is not limited to the individual understanding of the requester.

### 3. FedCURE Satisfies Factor Four Because It Showed that Disclosure of the Requested Information Will Significantly Increase Public Understanding.

In support of this assertion, Defendant merely repeats its arguments that the information sought is technical and FedCURE did not adequately explain its intention to digest the material. Defendant again claims that the material will reach only a "small subset" of individuals. FedCURE relies upon its previous argument rebutting this position.

### C. FedCURE Established that It Is a Member of the News Media and/or a Noncommercial Scientific Institution.

### 1. FedCURE as News Media Representative.[14]

<u>National Security Archive v. Dep't of Defense</u>. 880 F.2d 1381 (D.C. Cir. 1989), supports finding that FedCURE qualifies as a representative of the news media. In that case, the court found that the National Security Archive came within the category of an organization that regularly publishes or disseminates information to the public. <u>Id</u>. at 1386.

The Defendant argues against categorizing FedCURE as a new media representative in large part because FedCURE does not regularly publish or update its newsletter. (Lappin

---

[14] A member of the news media is entitled to a partial fee waiver. 5 U.S.C. § 552(a)(4)(A)(ii)(II) (2007).

Memorandum at 34-35).  National Security Archive refutes this contention because the court did

not base its finding on regular publication of a newsletter.  As the court explained:

> The Archive has previously published only one book ... , but it has
> expressed a firm intention, which DoD does not here question, to
> publish a number of what it refers to as "document sets."  Each of
> the document sets it had planned at the time of the administrative
> proceedings will be devoted to a particular topic of current interest,
> including current United States policies toward various countries
> and regions, aspects of nuclear weapons policy, relations between
> the superpowers, the structure of major alliances and of the non-
> aligned movement.

Id. at 1386.

The Archive, therefore, was going to publish the actual documents rather than rewriting,

analyzing or synthesizing them.  The court described the editorial process:

> From these documents, the Archive's staff will cull those of
> particular interest in a given subject area to form the core of each
> document set.  The staff will then supplement the chose documents
> with "detailed cross-reference indices, other finding aids, and a
> sophisticated computerized retrieval system retrieval system in
> order to make it more accessible to potential users.

Id.

The court concluded that the above publishing plan and editorial activities as:

> ... well within the range that Congress ascribed to a representative
> of the news media.

Id.

The court provided another example.

> A representative of the news media is, in essence, a person or
> entity that gathers information of potential interest to a segment of
> the public, uses its editorial skills to turn the raw materials into a
> distinct work, and distributes that work to an audience.  Surely
> when a newspaper publisher, such as the New York Times
> Company, brings out *The Pentagon Papers* in the form of a

> paperback book, adding perhaps an introduction and an index, it is
> acting as a representative of the news media every bit as when it
> publishes a daily newspaper, and as we have seen that is the same
> sort of venture as, indeed one involving less editorial inut than, the
> one n which the Archive is engaged.

Id. at 1387.

National Security Archive squarely controls this case.  First, the lack of a regularly

published newsletter does not disqualify FedCURE from the news media representative category.

National Security Archive had published only one book when it requested the fee waiver.  Yet

the court found the Archive deserved a fee waiver, based on its plan to publish the document set.

FedCURE has published a newsletter and maintains a chat room where it updates information

about the federal prison system.  This past publishing history and the stated intention to provide

the ion spectrometry information to the public put FedCURE well within the National Security

Archive ruling.

Second, the court in National Security Archive found that the editorial activity of the

Archive with the requested documents and that of the New York *Times* concerning the Pentagon

Papers were sufficient.  FedCURE has stated an intention to go beyond those what were basic

organizational efforts and analyze and synthesize the ion spectrometry information.[15]

Lastly, Defendant claims that an advocacy organization does not fit within the news

media representative category.  (Lappin Memorandum at 34).  Electronic Privacy Information

Center v. Dep't of Defense, 241 F.Supp.2d at 5, refutes this declaration.  As the Court there

ruled:

---

[15]  This analysis of National Security Archive also supports FedCURE's fulfilling the
factors of the public interest prong of the test for a fee waiver, discussed previously.

> DoD has also refused to characterize EPIC as a representative of the news media because it is a tax-exempt entity under 26 U.S.C. § 501(c)(3). There is nothing in DoD's regulations or in FIRA [Freedom of Information Reform Act of 1986] that states that tax-exempt corporations are excluded from news media status. Again, the National Security Archive, like EPIC, was "a non-profit corporation to which the ... IRS ... granted tax-exempt status.... The determinative issue, once again, is the organization's "activities," not its corporate structure.

Id. at 12.

FedCURE is also a 501 (c)(3) organization. Thus, Electronic Privacy Information applies to FedCURE. *See also* Center for Public Integrity v. Dep't of Health & Human Services, 2007 U.S. Dist. LEXIS 56172 (D.D.C. Aug. 3, 2007) (holding that a nonpartisan, nonnnprofit investigative reporting organization that examines and writes about public sercvice and ethics-related issues is a representative of the news media).

Simply because FedCURE advocates prison reform, does not bar it from news media representative status.

### 2. FedCURE as Noncommercial Scientific Institution.

FedCURE conducts research in the "soft" sciences as they relate to the federal prison system. The information on the ion spectrometer will not promote any particular product or industry. Essentially, this is scholarly research concerning the means by which the prison system uses technology as a safety measure and the efficacy of this process.

### CONCLUSION

In light of the above, this Court should deny Defendant's motion for summary judgment, reverse the denial of and grant summary judgment to FedCURE concerning its fee waiver request in conjunction with production of information and documents on the ion spectrometer.

Respectfully submitted,

January 11, 2008                      /s/ **James R. Klimaski**
                                     James R. Klimaski, #243543
                                     Lynn I. Miller, #941559
                                     Klimaski & Associates, P.C.
                                     1625 Massachusetts Avenue NW – Suite 500
                                     Washington, D.C. 20036-2245
                                     202-296-5600
                                     Klimaski@Klimaskilaw.com
                                     Miller@Klimaskilaw.com

                                     *Attorneys for Plaintiff*

---

### Certificate of Service

I certify that the foregoing *Plaintiff's Opposition to Motion for Summary Judgment* and
its Exhibits will be served to the following counsel for Defendant in this case by the Court's
CM/ECF system after proper filing of an Adobe PDF version of this item on the Court's secure
website on January 11, 2008:

Jonathan C. Brumer
Special Assistant U.S. Attorney
555 4th Street NW – Room E-4815
Washington, DC  20530
202-514-8780 Fax
jonathan.brumer@usdoj.gov
jonathan.brumer@hhs.gov

Judith A. Kidwell
Office of the U.S. Attorney
555 4th Street NW
Washington, DC 20530
Judith.A.Kidwell@usdoj.gov

                                     /s/ *Jon Pinkus*
                                     Jon Pinkus
                                     Klimaski and Associates, PC

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

FedCURE,

     **Plaintiff,**

       **v.**

**HARLEY G. LAPPIN, Director**
**Federal Bureau of Prisons,**

     **Defendant.**

**Civil Action No. 07-0843 (RBW)**

## STATEMENT OF GENUINE ISSUES OF
## FACT NOT IN DISPUTE

     Pursuant to Fed. R. Civ. P. 56(e) and Local Rule 7.1(h), Plaintiff FedCURE submits this statement of genuine issues of material fact not in dispute.

1.     By letter dated February 25, 2005, FedCURE submitted a request to the Federal Bureau of Prisons' (BOP), Freedom of Information (FOIA)/Privacy Act (PA) unit for:

> 1) all information about the accuracy of the ion spectrometer scanning method and the number of visitors turned away at all BOP facilities (by facility) because of the results of the scanning method since institution of its use, 2) all information relating to the training methods used for personnel operating this equipment and staff comments as to these methods and 3) all records of equipment failure and repairs.

(Exhibit A to Plaintiff's Summary Judgment Opposition).

2.     By letter dated April 4, 2005, BOP's FOIA/PA office responded to FedCURE's request, stating that the search would entail 142 hours at $7.00 per quarter hour for professional time. BOP calculated the total cost at $3,976.00, excluding a duplication fee of .10 cents per page. (Exhibit B).

3.      BOP requested in the above same letter that it was requiring advance payment of the $3,976.00 search fee to be sent within 30 days.  <u>Id</u>.

4.      In a April 20, 2005, letter, FedCURE requested that the BOP waive the $3,976.00 search fee and any copy fees.  (Exhibit C).

5.      In support of the fee waiver request, FedCURE stated that it was a non-profit organization with less than $5,000.00 in yearly donations and further stated that it published a newsletter received by the public.  <u>Id</u>.

6.      FedCURE further stated that it qualified for a fee waiver because the organization was a noncommercial scientific institution" because of its involvement in the social sciences, possession of an extensive library, constitution as a "think tank" and devotion of time and resources to researching and disseminating information on matters of public interest.  <u>Id</u>.

7.      FedCURE also stated in this same letter that the organization was a "representative of the news media.," pointing out that it published a newsletter.  <u>Id</u>.

8.      The April 20, 2005, letter also noted that the ion spectrometer information was in the public interest because it would contribute significantly to public understanding of government operations and was not in FedCURE's commercial interest.  <u>Id</u>.

9.      Lastly, the April 20, 2005, letter explained that FedCURE had received numerous requests from the public for information about the ion spectrometer, intended to publish the letter in its newsletter and on its website, that the information was valuable to the public, especially regular visitors to federal inmates, and that FedCURE was the world's leading expert in federal inmate matters.  <u>Id</u>.

10.     By letter of September 26, 2005, BOP denied FedCURE's request for a fee waiver.

(Exhibit D).

11.    The BOP found that FedCURE did not meet the statutory public interest test or regulatory

factors for a fee waiver.  <u>Id</u>.

12.    In a letter of November 1, 2005, FedCURE appealed the denial of the fee waiver to the

Department of Justice (DOJ) Office of Information and Privacy (OIP).  (Exhibit E).

13.    In its appeal letter FedCURE enumerated the factors qualifying it for a fee waiver:

a.  FedCURE is the largest private organization dealing with
federal inmate issues.

b.  FedCURE's two-year-old website provides timely news to the
public and had already had over 250,000 hits.

c.  FedCURE's chat room at Yahoo Groups had as many as 100
requests for information daily.

d.  FedCURE was a 501(c)(3) non-profit whose directors and staff
served without pay.

e.  The primary function of FedCURE was to provide the public
with information about the operations of the BOP.

f.  FedCURE had received hundreds of questions and complaints
about the ion spectrometer and the reasoning behind its use.

g.  The general public was interested in the ion spectrometer and
disclosure would significantly answer the public's questions.

h.  FedCURE had no commercial interest in the disclosure of this
information.

<u>Id</u>.

14.    By letter of June 29, 2006, the DOJ upheld the BOP's denial of the fee waiver.

(Exhibit G).

15.    FedCURE filed a "Reconsideration of Appeal Denial" by letter of July 10, 2006.

(Exhibit H).   FedCURE requested that BOP reconsider the upholding of the fee waiver

denial based on the then recent decision, also dealing with an information request to the

BOP, <u>Prison Legal News v. Lappin</u>, 436 F.Supp.2d 17 (D.D.C. 2006).

16.    In a November 8, 2006, letter, DOJ denied the reconsideration.  (Exhibit I).

Respectfully submitted,


January 11, 2008                          */s/  James R. Klimaski*
                                          James R. Klimaski, #243543
                                          Lynn I. Miller, #941559
                                          Klimaski & Associates, P.C.
                                          1625 Massachusetts Avenue NW – Suite 500
                                          Washington, D.C. 20036-2245
                                          202-296-5600
                                          Klimaski@Klimaskilaw.com
                                          Miller@Klimaskilaw.com

                                          *Attorneys for Plaintiff*

*Exhibit   A*



# Citizens United for Rehabilitation of Errants

### Federal Prison Chapter

*A National Effort to Reduce Crime*
*Through Federal Criminal Justice Reform*

**Federal CURE, Inc.**
P.O. Box 15667
Plantation, Florida
33318-5667

E-mail: Information@FedCURE.org
e-Fax: (408) 549-8935
Web site: www.FedCURE.org

**Chairman of the Board**

Kenny H. Linn, J.D., L.L.M.

**Executive Director**
Office Vacant

**Board of Directors**

Mark A. Varca, J.D.
Chief Information Officer

Elizabeth Alexander, J.D.
Paula Eyre
Jana V. Jay, J.D.
Rev. Alan Laird
Sylvia McAfee
John McCarty
Justine C. McCarty
Daniel S. Murphy, Ph. D.
Fred M. Mosely, J.D., L.L.M.
Stephen C. Richards, Ph. D.
Mike Shryock, M.Ed.

**National CURE**

Charles & Pauline Sullivan
Co-Directors

**Public Official Sponsors**

*Senators*

Daniel K. Akaka (HI)
Tom Harkin (IA)
James M. Jeffords (VT)

*Congressmen*

Howard L. Berman  (CA)
William L. Clay (MO)
Bob Clement (D) TN
John Conyers, Jr. (MI)
Lane Evans (IL)
Martin Frost (TX)
Sheila Jackson-Lee (TX)
John Lewis (GA)
James P. Moran, Jr. (VA)
Charles B. Rangel (NY)
Martin O. Sabo (MN)
Robert Scott (VA)
Louise M. Slaughter (NY)
Fortney "Pete" Stark (CA)
Mel Watt (NC)

February 25, 2005

Bureau of Prisons
320 First St., NW
Washington DC 20534

Attention: FOIPA Unit

This is a request under the Freedom of Information Act as amended (Title 5 USC Sec. 552) in conjunction with the Privacy Act (Title 5 USC Sec. 552a).

I wish to obtain 1) all information about the accuracy of the ion spectrometer scanning method and the number of visitors turned away at all BOP facilities (by facility) because of the results of the scanning method since institution of its use, 2) all information relating to the training methods used for personnel operating this equipment and staff comments as to these methods and 3) all records of equipment failures and repairs.

If all or part of my request is denied, please list the specific exemption(s) which is (are) being claimed to withhold information.  If you determine that some portions of the requested material are exempt, I will expect, as the Act provides, that you will provide me with the remaining non-exempt portions.  I, of course, reserve the right to appeal any decision to withhold information and expect that you will list the address and office where such an appeal can be sent.  As provided in the FOIA, I will expect to receive a response within ten working days.

Pursuant to Title 28 USC Sec. 1746, I declare all information herein is true and correct to the best of my information and belief under penalty of perjury.

Sincerely,

Kenneth Linn, J.D., LL.M.
Chairman, FedCure
Soc. Sec. No.▮
DOB: 7/22/39
POB:  New York, N.Y.
FBI #▮

*Serving Federal Prisoners and Their Families*
*Working to Reinstate Parole and to Increase Good Time Allowances*

**"Using Technology To Bring About Federal Criminal Justice Reform"** TM
www.FedCURE.org  2002-2005.  All rights reserved.

*Exhibit   B*



U.S. Department of Justice

Federal Bureau of Prisons

APR    4 2005

Washington, DC 20534

Kenneth Linn, J.D., LL.M.          For Further Inquiry Contact:
Chairman, FedCure, Inc.            Federal Bureau of Prisons
P.O. Box 15667                     320 First Street. N.W.
Plantation, Florida 33318-5667     Room 841, HOLC Building
                                   Washington, D.C. 20534
                                   Attn: FOIA/Privacy Act Office


RE:  Request for Information, FOIA Request No. 2005-03326

Dear Mr. Linn:

     This is in response to your Freedom of Information Act
request for a copy of the following information:

1.   All information about the accuracy of the ion spectrometer
     scanning method and the number of visitors turned away at
     all BOP facilities (by facility) because of the results of
     the scanning method since institution of its use.

2.   All information relating to the training methods used for
     personnel operating this equipment and staff comments as to
     these methods.

3.   All records of equipment failure and repairs.

     After a careful review of your request, it has been
determined it will take an estimated **142** hours of search time to
locate the above requested information.  In accordance with
28 C.F.R. §16.11(c)(1)(ii), the cost for staff time involved in
the search of this information is assessed at **$7.00** per quarter
hour for professional time.

     Therefore, you are being charged $7.00 per quarter hour for
an estimated **142** hours for a cost of **$3,976.00**.  This amount does
not include a duplication fee of .10 cents per page of
information reproduced as a result of the search.

     In accordance with 28 C.F.R. § 16.11(i)(2), we can require
advance payment of fees in excess of $250.00.  Therefore,
should you require this office to proceed with your request,
please submit a check or money order, payable to the **Treasury of
the United States**, in the amount of **$3,976.00 within 30 days** to
this office at the above address so that we may begin retrieval
and review of these records.

Page 2
Kenneth Linn
FOIA Request Number 2005-03326


    Please reference the above-listed request number in any
further correspondence.  If you have any questions or concerns
please contact Wilson J. Moorer, Paralegal at 202-514-6655,
ext. 4879.

Sincerely,

Wanda M. Hunt
Chief, FOIA/PA Section

cc: File

*Exhibit   C*

# Citizens United for Rehabilitation of Errants

## Federal CURE, Inc.
P.O. Box 15667
Plantation, Florida
33318-5667

E-mail: Information@FedCURE.org
e-Fax: (408) 549-8935
Web site: www.FedCURE.org

### Federal Prison Chapter

*A National Effort to Reduce Crime
Through Federal Criminal Justice Reform*

**Chairman of the Board**

Kenny H. Linn, J.D., LL.M.

**Executive Director**
Office Vacant

**Board of Directors**

Mark A. Varca, J.D.
Chief Information Officer

Elizabeth Alexander, J.D.
Paula Eyre
Jana V. Jay, J.D.
Rev. Alan Laird
Sylvia McAfee
John McCarty
Justine C. McCarty
Daniel S. Murphy, Ph. D.
Fred M. Mosely, J.D., LL.M.
Stephen C. Richards, Ph. D.
Mike Shryock, M.Ed.

**National CURE**

Charles & Pauline Sullivan
Co-Directors

**Public Official Sponsors**

*Senators*

Daniel K. Akaka (HI)
Tom Harkin (IA)
James M. Jeffords (VT)

*Congressmen*

Howard L. Berman (CA)
William L. Clay (MO)
Bob Clement (D) TN
John Conyers, Jr. (MI)
Lane Evans (IL)
Martin Frost (TX)
Sheila Jackson-Lee (TX)
John Lewis (GA)
James P. Moran, Jr. (VA)
Charles B. Rangel (NY)
Martin O. Sabo (MN)
Robert Scott (VA)
Louise M. Slaughter (NY)
Fortney "Pete" Stark (CA)
Mel Watt (NC)

April 20, 2005

Bureau of Prisons
320 First St., NW
Washington DC 20534

Attention: FOIPA Unit        Re: 2005-03326

Please let this letter serve as an application for a fee waiver of the $3976.00 sought for search time to respond to this FOIA request and for any copy fees. FedCure is a non-profit with less than $5000.00 in yearly donations. We publish a newsletter that is received by members of the public as well as maintain a website with regular daily news updates.

We believe we qualify for a fee waiver for the following reasons:

1. We are considered a "noncommercial scientific institution," since we are involved in the social sciences, keep an extensive library, can be called a "think tank," and devote time and resources to research and dissemination of information on matters of public interest. See: §552(a)(4)(A)(ii)(II) and §6(i) OMB Guidelines (1986).
2. We are representatives of the news media through our regular newsletters. See: §552(a)(4)(A)(ii)(II) and §6(j) OMB Guidelines (1986); National Security Archive v. Dept. Of Defense, 880 F2d 1381, 1386-7.
3. The information sought is in the public interest because it is likely to contribute significantly to public understanding of the operations of the government and is certainly not in the commercial interest of the requestor. See: §552(a)(4)(A)(ii)(II); Ettlinger v. FBI, 596 F. Supp. 867, 872 (D MA-1984)(public interest benefit test to be liberally construed).

FedCure has received numerous requests from the public for the information requested and we intend to publish the response in our newsletter and on our website. The information has value to the public - particularly those who regularly visit incarcerated federal inmates. The information is not now in the public domain.

FedCure is the world's leading expert in matters relating to federal inmates. Collectively, five of FedCURE 's 14 board members have over 50 years of in prison experience--behind the fence--as former federal inmates, each holding J.D.'s, two holding LL.M's and two holding Ph.D's. Our lifetime members include the best criminal attorneys in the United States.

*Serving Federal Prisoners and Their Families
Working to Reinstate Parole and to Increase Good Time Allowances*

"Using Technology To Bring About Federal Criminal Justice Reform" TM
www.FedCURE.org 2002-2005. All rights reserved.

Thank you for consideration of this fee waiver request. I, of course, reserve the right to appeal any decision to seek a fee and expect that you will list the address and office where such an appeal can be sent. Pursuant to Title 28 USC Sec. 1746, I declare all information herein is true and correct to the best of my information and belief under penalty of perjury.

Sincerely,

Kenneth Linn, J.D., LL.M.
Chairman, FedCure
Soc. Sec. No.:
DOB: 7/22/39
POB: New York, N. Y.
FBI #:

*Serving Federal Prisoners and Their Families*
*Working to Reinstate Parole and to Increase Good Time Allowances*

**"Using Technology To Bring About Federal Criminal Justice Reform"** TM
www.FedCURE.org  2002-2005.  All rights reserved.

*Exhibit   D*



**U.S. Department of Justice**

Federal Bureau of Prisons

RECIEVED: 28092005
FedCURE

SEP 26 2005

Washington, DC 20534

Kenneth Linn, J.D., LL.M.
Chairman, FedCure, Inc.
P.O. Box 15667
Plantation, Florida 33318-5667

For Further Inquiry Contact:
Federal Bureau of Prisons
320 First Street. N.W.
Room 841, HOLC Building
Washington, D.C. 20534
Attn: FOIA/Privacy Act Office

RE:  Request for Fee Wavier, FOIA Request No. 2005-03326

Dear Mr. Linn:

     This is in response to your request for a fee wavier of the
**$3,976.00** being sought for search time to respond to the above
FOIA request.  Specifically, you believe you qualify for a fee
wavier for the following reasons: you are considered a
"noncommercial scientific institution," you are representative of
the news media, and the information you seek is in the public
interest.

     The statutory test for evaluating fee waiver requests is
whether the release of the information "is in the public interest
because it is likely to contribute significantly to public
understanding of the operations or activities of the government
and is not primarily in the commercial interest of the
requester," in which event a fee waiver or reduction is required
by law. 5 U.S.C. §552 (a)(4)(A)(iii).

     The six factors used in the determination as to whether a
sufficient contribution to public understanding of government
operations or activities would result from disclosure, so as to
warrant the granting of a fee waiver are as follows: 1) whether
the subject of the requested records concerns "the operations or
activities of the government"; 2) whether the disclosure is
"likely to contribute" to an understanding of government
operations or activities; 3) whether disclosure of the requested
information will contribute to the understanding of the general
public at large; 4) whether the disclosure is likely to
contribute "significantly" to public understanding of government
operations and activities; 5) whether the requester has a
commercial interest that would be furthered by the requested
disclosure; and 6) whether any such commercial interest outweighs
the public interest in disclosure.

Page 2
Kenneth Linn
FOIA Request Number 2005-03326

On the basis of all the information you provided, we have concluded that your request for a waiver of fees is denied. In reaching this conclusion, we analyzed the above six factors as they applied to the circumstances of your request. We analyzed the definition of a "noncommercial scientific institution" as stated in 5 U.S.C. §552(a) which is a "noncommercial" institution that is operated solely for the purpose of conducting scientific research the results of which are not intended to promote any particular product or industry. Based on the information you have provided, this definition has not been met.

We also analyzed the definition of a "representative of the news media" as stated in 5 U.S.C. §552(a) which is any person actively gathering information of current interest to the public for an organization that is organized and operated to publish or broadcast news to the general public. Based on the information you have provided, this definition has not been met. There is no evidence that releasing the information to you will contribute significantly to the public's understanding of how the Bureau of Prisons operates.

As stated in our letter dated April 4, 2005, the cost for staff time involved in the search of this information is assessed at $7.00 per quarter hour for 142 hours. See 28 C.F.R. §16.11(c)(1)(ii). The fee for search and review of this information is estimated to be **$3,976.00**. This cost does not include the duplication cost of .10 cents per page after the first one-hundred pages.

Before we begin processing your request, you must indicate your willingness to pay such a fee. In the alternative, you can reformulate your request to meet your needs at a lower cost. In accordance with 28 C.F.R. §16.11(e), until you agree to pay the anticipated total fee, or you reformulate what you seek, this request will not be considered as received and no further action will be taken.

Pursuant to 28 C.F.R. §16.9, this partial denial may be appealed to the Attorney General by filing a written appeal within sixty days of the receipt of this letter. The appeal should be addressed to the **Co-Director, Office of Information and Privacy, U.S. Department of Justice, Flag Building, Suite 570, Washington, D.C. 20530.**

Page 3
Kenneth Linn
FOIA Request Number 2005-03326

Both the envelope and the letter of appeal itself must be clearly
marked:  **"Freedom of Information Act Appeal."**

     Please reference the above-listed request number in future
correspondence concerning this request.  If you have any
questions or concerns please contact Wilson J. Moorer, Paralegal
at 202-514-6655, ext. 4879.

                              Sincerely,


                              Wanda M. Hunt
                              Chief, FOIA/PA Section


cc: File

*Exhibit   E*



**Citizens United for Rehabilitation of Errants**

Federal Prison Chapter

*A National Effort to Reduce Crime Through Federal Criminal Justice Reform*

**Federal CURE, Inc.**

P.O. Box 15667
Plantation, Florida
33318-5667

E-mail: FedCURE@FedCURE.org

e-Fax: (408) 549-8935

Web site: www.FedCURE.org

**Chairman**

Kenny Linn, J.D., LL.M

**Executive Director**
Office Vacant

**Board of Directors**

Mark A. Varea, J.D.
Chief Information Officer

Elizabeth Alexander, J.D.
Fred M. Mosely, J.D., LL.M
Paula Eyre
Jana V. Jay, J.D.
Rev. Alan Laird
Sylvia McAfee
John McCarty
Justine C. McCarty
Daniel S. Murphy, Ph.D.
Stephen C. Richards, Ph.D.
Mike Shryock, M.Ed.

**National CURE**

Charles & Pauline Sullivan
Co-Directors

**Public Official Sponsors**

*Senators*

Daniel K. Akaka (HI)
Tom Harkin (IA)
James M. Jeffords (VT)

*Congressmen*

Howard L. Berman (CA)
William L. Clay (MO)
Bob Clement (D) TN
John Conyers, Jr. (MI)
Lane Evans (IL)
Martin Frost (TX)
Sheila Jackson-Lee (TX)
John Lewis (GA)
James P. Moran, Jr. (VA)
Charles B. Rangel (NY)
Martin O. Sabo (MN)
Robert Scott (VA)
Louise M. Slaughter (NY)
Fortney "Pete" Stark (CA)
Mel Watt (NC)

*Of Counsel*

H.J. Hurst, II, Attorney.
Chief of Legislative Affairs

11/01/05

Co-Director, OIP
US DOJ
Flag Building, Suite 570
Washington DC 20530

Gentlemen:                                Re: FOIA Request No. 2005-03326

This is a Freedom of Information Act appeal of the denial of a fee waiver dated 9/26/05.

In a letter dated 2/25/05, the Federal Chapter of C.U.R.E. requested documents relating to complaints about the use of ion spectrometers during visitor processing at all BOP facilities using this equipment. That request was "lost." A second request was faxed to the FOIA on 8/18/05 to the FOIA component of the BOP, which led to the fee request of $3,976.00 for processing and a subsequent denial of the fee waiver request.

FedCure is the largest private organization dealing with federal inmate issues. Its website, which provides timely news for the public has been up for about two years and has already had over 250,000 hits. Its chat site at Yahoo Groups has as many as 100 requests for information each day. It should be obvious that FedCure meets the definition of "representative of the news media," that it is a "noncommercial scientific think tank" and that the information sought is in the public interest. See: §552(a)(4)(A)(ii)(II) and 6(i) and (j) OMB Guidelines (1986); National Security Archive v. Dept. of Defense, 880 F2d 1381, 1386-7; Ettlinger v. FBI, 596 F. Supp. 867, 872 (D MA-1984). There are numerous cases holding that the public interest benefit test is to be liberally construed.

Moreover, FedCure is a 501(c)(3) non-profit. Its directors and staff serve with no pay. The primary function of FedCure is to provide information to the public about the workings of the Bureau of Prisons. In particular, FedCure has received hundreds of questions and complaints about ion spectrometer procedures and the reasoning behind their use.

*Serving Federal Prisoners and Their Families*
*Working to Reinstate Parole and to Increase Good Time Allowances*

**"Using Technology To Bring About Federal Criminal Justice Reform"** TM
www.FedCURE.org 2002-2005. All rights reserved.

FedCure meets each of the six factors used to determine whether a fee waiver should be granted: 1. This request deals solely with the operations of government. 2. The disclosure would contribute to the public's understanding of government operations. 3. The general public at large is interested in the use of these machines. 4. The disclosure would "significantly" answer the public's questions. 5. FedCure has no commercial interest whatsoever in the disclosure. 6. There is no commercial interest to outweigh the public interest.

On October 27, 2005, the Chairman of FedCure, Kenny Linn, met with the Director of the Bureau of Prisons, Harley Lappin, in his office about various prison issues. First on the agenda was the subject of ion spectrometers. A news posting about this meeting and this issue is now on the FedCure website.

FedCure is fully prepared to litigate whether it meets the criteria for a fee exemption and hopes that this appeal will forestall that scenario. Thank you for your consideration.

Sincerely,

Kenneth Linn, J.D., LL.M.
Chairman. FedCure

*Serving Federal Prisoners and Their Families*
*Working to Reinstate Parole and to Increase Good Time Allowances*

"Using Technology To Bring About Federal Criminal Justice Reform" TM
www.FedCURE.org 2002-2005. All rights reserved.

*Exhibit   F*



**U.S. Department of Justice**

Office of Information and Privacy

---

*Telephone: (202) 514-3642*                    *Washington, D.C. 20530*

## NOV 1 7 2005

Mr. Kenneth Linn, J.D., LL.M.
Federal CURE, Inc.
P.O. Box 15667
Plantation, FL 33318-5667

      Re: Request No. 2005-03326

Dear Mr. Linn:

      This is to advise you that your administrative appeal from the action of the Federal Bureau of Prisons on your request for information from the files of the Department of Justice was received by this Office on November 9, 2005.

      The Office of Information and Privacy, which has the responsibility of adjudicating such appeals, has a substantial backlog of pending appeals received prior to yours. In an attempt to afford each appellant equal and impartial treatment, we have adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number **06-0453**. Please mention this number in any future correspondence to this Office regarding this matter.

      We will notify you of the decision on your appeal as soon as we can. The necessity of this delay is regretted and your continuing courtesy is appreciated.

              Sincerely,

              Priscilla Jones
              Chief, Administrative Staff

*Exhibit   G*



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                    _Washington, D.C. 20530_



**JUN 2 9 2006**

Mr. Kenneth Linn, J.D., LL.M.                Re:    Appeal No. 06-0453
Federal CURE, Inc.                                  Request No. 2005-03326
Post Office Box 15667                               JGM:TEH
Plantation, FL 33318-5667

Dear Mr. Linn:

        You appealed on behalf of Federal CURE, Inc. (FedCure) from the Federal Bureau of
Prisons' (BOP) denial of your request for a waiver of the fees associated with your request for
access to records pertaining to the use of ion spectrometer scanning equipment in BOP facilities.
You also challenged BOP's determination that FedCure does not qualify for statutory fee
limitations as either a representative of the media or as a noncommercial scientific institution.

        The statutory standard for evaluating fee waiver requests provides that fees shall be
waived or reduced "if disclosure of the information is in the public interest because it is likely to
contribute significantly to public understanding of the operations or activities of the government
and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). In
determining whether you have satisfied this statutory standard, I considered the six factors set out
in the Department of Justice regulation that puts this statutory standard into effect. See 28 C.F.R.
§ 16.11(k) (2005). The first four of these factors concern the "public interest" requirement; the
fifth and six factors concern whether your interest in the records is primarily commercial.

        In support of your appeal, you state that FedCure has received "hundreds of complaints
and questions about the ion spectrometers and the reasoning behind their use." (FedCure appeal,
Nov. 1, 2005, at 1.) In that same letter, you also state that "[t]he disclosure would 'significantly'
answer the public's questions." (Id. at 2.) Furthermore, you describe FedCure as a nonprofit
corporation, as having a small budget, and as the largest organization dealing with federal inmate
issues. In your appeal you characterize FedCure's primary function as "to provide information to
the public about the working of the Bureau of Prisons." (Id. at 1.) Your letter of appeal also
describes the methods by which FedCure advances its mission and advises that this request is not
in its financial interest.

        On the basis of all of the information available to this Office, I have concluded that your
request for a waiver of fees was properly denied. Although the records you seek concern, in part,
the operations or activities of BOP, and you do not appear to have an overriding commercial

-2-

interest in the records, you have not satisfied other factors, most significantly factors two, three, and four of the statutory public interest requirement.

First, your fee waiver request letter of April 20, 2005 did not adequately address the public interest requirement imposed by the Freedom of Information Act. See Oglesby v. Dep't of the Army, 920 F.2d 57, 66 & n.11 (D.C. Cir. 1990); see also 28 C.F.R. § 16.11(k)(2)(i)-(iv) (encompassing the first four fee waiver factors). The only information you provide in support of FedCure's fee waiver request is a paraphrase of the statutory standard. (See FedCure fee waiver request, Apr. 20, 2005, item 3 at 1.) Such limited information is insufficient to qualify FedCure for a fee waiver. Indeed, the Court of Appeals for the District of Columbia Circuit found "conclusory and clearly insufficient" the statement of a requester who asserted that "[t]he information requested is beneficial to the public interest. I am a writer and a lecturer who has disseminated in the past, and I intend to do so in the future." Oglesby, 920 F.2d at 66 n.11. Similarly, your letter of appeal states that "FedCure meets each of the six factors used to determine whether a fee waiver should be granted." (FedCure appeal, Nov. 1, 2005, at 2.) But again, you did little more than paraphrase each of those six fee waiver factors. (See id.) You do not in any way explain how, in what manner, or why you believe that FedCure's request meets each of the fee waiver factors. The burden, as you are aware, is on the requester to prove entitlement to a fee waiver; you have not done so.

In addition to failing to substantiate the overall public interest requirement, the information you did provide raises additional specific concerns with regard to fee waiver factor three. Notably, you have not adequately demonstrated that FedCure is able to disseminate this information to the public. While nonprofit organizations often are capable of disseminating information, they do not by virtue of their status presumptively qualify for fee waivers. The record before me merely indicates that any information you receive will be available to subscribers or visitors of FedCure's Web site in a newsletter which, according to FedCure, is only posted on its Web site. Importantly, upon viewing FedCure's Web site, it appears that the release of your newsletter is infrequent and irregular, with gaps as long as two years between some issuances. Likewise, requests such as yours that make no showing of how the information would be disseminated other than by passively making it available to anyone who might seek access to it on the Internet do not meet the burden for fee waiver purposes of demonstrating with particularity that the information will be communicated to the public.

FedCure's request seeks a large volume of information, much of it technical (particularly records sought with regard to the accuracy of ion spectrometers, training methods used for operating the equipment, and equipment failure rates and repairs), that would need to be collected from the seventy-one BOP facilities that use the equipment. I find no evidence, however, of FedCure's intention to extract, analyze, synthesize, and effectively convey the information received to the public. Merely posting the requested technical information on your Web site, as you seem to suggest, without analysis is insufficient to meet the public interest requirement. See, e.g., S.A. Ludsin & Co. v. SBA, 1997 U.S. Dist. LEXIS 8617 (S.D.N.Y. June 19, 1997).

-3-

You further assert that FedCure falls within both the "representative of the news media" and the "noncommercial scientific institution" subcategories of the second statutory fee category. See 5 U.S.C. § 552(a)(4)(A)(ii)(II). Placement in either of those subcategories would entitle FedCure to favored fee treatment by limiting fees to duplication costs only. Because the statutory standard speaks to the use to which the requester will put the information released to it, it is essential to any fee category analysis that the agency be provided sufficient information about the requester's intended use for the records in order for the agency to make a proper fee category determination. See Nat'l Sec. Archive v. DOD, 880 F.2d 1381, 1382 (D.C. Cir. 1989).

By definition, a "representative of the news media" is one who gathers "news for an entity that is organized and operated to publish or broadcast news." 28 C.F.R. § 16.11(b)(6) (2005) (Department of Justice FOIA regulation encompassing definitions). The regulations also define a "noncommercial scientific institution" as one that is "operated solely for the purpose of conducting scientific research the results of which are not intended to promote any particular product or industry." Id. § 16.11(b)(5).[1] Although you state that "it should be obvious that FedCure meets the definition of 'representative of the news media' and that [FedCure] is a 'noncommercial scientific think tank'" you provide no information that would lead me to conclude that FedCure should be placed in either of these fee subcategories. (FedCure appeal, Nov. 1, 2005, at 1). According to your appeal and the information you provided BOP, your intended use for this request is "to publish the response [received from BOP] in [y]our newsletter and on [y]our website." (FedCure fee waiver request, Apr. 20, 2005, at 1.) However, the D.C. Circuit in National Security Archive ruled that requesting information in order to make it "available" is insufficient to include the requester in the favored fee category under the FOIA. In that case the D.C. Circuit warned that activities that provide a way "of making information available to the public . . . are insufficient to establish an entitlement to preferred [fee] status." Id. 880 F.2d at 1386.

Additionally, there is nothing on FedCure's Web site that indicates that the information it posts is "news" as defined by 28 C.F.R. § 16.11(b)(6) (defining news as "information that is about current events or that would be of current interest to the public"). Your statements that FedCure maintains "a website with regular daily news updates" (FedCure fee waiver request, Apr. 20, 2005) and that it "provides timely news to the public" (FedCure appeal, Nov. 1, 2005) are not substantiated by FedCure's Web site. As already noted above, there appears to be no regularity to the posting of FedCure's newsletters -- i.e., there have been a total of only six since Winter 2003. In addition, at least four of the six newsletters posted contain significant overlap of information with other newsletters. Indeed, the several paragraphs that comprise FedCure's Summer 2005 newsletter are repeated virtually verbatim in three subsequent newsletters, with minimal differences in overall content. Moreover, at least two of FedCure's six newsletters

_____

[1] Department regulations that provide definitions for FOIA fee categories should be read in conjunction the Uniform Freedom of Information Act Fee Schedule and Guidelines, issued by the Office of Management and Budget, 52 Fed. Reg. 10,012 (Mar. 27, 1987), the official guidance used by federal agencies in implementing their fee regulations.

-4-

contain disclaimers that advise the reader that "the content herein is presented for informational purposes only." This is not to suggest that the information you post may not be of assistance to the federal prison population or their families, but rather to indicate that FedCure's newsletters do not appear to publish "regular daily news updates" nor post "news" as defined by Department regulations.

Similarly, FedCure's Web site does not demonstrate that FedCure is operated solely to conduct scientific research. See 28 C.F.R. § 16.11(b)(5). While I agree that those organizations that further scientific research within the "soft sciences," such as social studies, could come within this category, FedCure is not such an organization. Accordingly, your appeal is denied.

Inasmuch as I have concluded that FedCure is an "other" requester for fee limitation purposes, you are entitled to the first two hours of search time at no cost. 5 U.S.C. § 552(a)(4)(A)(iv)(II). You may ask BOP to process your request up to this time limit or you may specify a particular amount you are willing to pay. For either of these options, please contact BOP directly.

If you are dissatisfied with my action on your appeal, you may seek judicial review in accordance with 5 U.S.C. § 552(a)(4)(B).

Sincerely,

Daniel J. Metcalfe
Director

*Exhibit   H*



Citizens United for Rehabilitation of Errants

 Federal Prison Chapter

*A National Effort to Reduce Crime Through Federal Criminal Justice Reform*

Federal CURE, Inc.
P.O. Box 15667
Plantation, Florida
33318-5667

e-Fax: (408) 549-8806

Web site:

**Chairman**
Kenny Linn, J.D., L.L.M.

**Executive Director**
Office Vacant

**Board of Directors**

Mark A. Varca, J.D.
Chief Information Officer

Elizabeth Alexander, J.D.
Brad M. Mossey, J.D.
Paula Pyte
Jana V. Jay, J.D.
Rev. Alan Laird
Sylvia McArter
John McCarty
Justine C. McCarty
Daniel S. Murphy, Ph.D.
Stephen C. Richards, Ph.D.
Mike Shreverd, M.ed

**National CURE**

Charles & Pauline Sullivan
Co-Directors

**Public Official Sponsors**

*Senators*

Daniel K. Akaka (HI)
Tom Harkin (IA)
James M. Jeffords (VT)

*Congressmen*

Howard L. Berman (CA)
William L. Clay (MO)
Bob Clement (TN)
John Conyers, Jr. (MI)
Lane Evans (IL)
Martin Frost (TX)
Sheila Jackson-Lee (TX)
John Lewis (GA)
James P. Moran, Jr. (VA)
Charles B. Rangel (NY)
Martin O. Sabo (MN)
Robert Scott (VA)
Louise M. Slaughter (NY)
Fortney "Pete" Stark (CA)
Mel Watt (NC)

*Of Counsel*

T.J. Hunt, II, Attorney
Chief of Legislative Affairs

July 10, 2006

Mr. Daniel Metcalfe, Director
Office of Information & Privacy
Washington DC 20530

VIA FAX

Attention: Ms. Janice McLeod    Re: Appeal No. 06-0453

**RECONSIDERATION OF APPEAL DENIAL**

Pursuant to my conversation with you this morning, I would appreciate it if you would take another look at the fee waiver issue involved in this appeal. I would ask you to consider the DC District Court opinion filed in an almost identical case on June 26, 2006 in *Prison Legal News v. Harley G. Lappin, Director, Federal Bureau of Prisons*, Civil Action No. 05-1812 (RBW). That case cited extensively from *Linn v. DOJ*, 1997 WL 577586 (D.D.C. May 29 1997), particularly about dissemination of requested information. I am quite familiar with the *Linn* case, since I am the *Linn* mentioned.

In FedCure's request for information, we specifically advised that FedCure has a website *and a chat site* at Yahoo groups. We stated "Its chat site at Yahoo Groups has as many as 100 requests for information each day" (Request, ¶ 2). The appeal response does not address FedCure's Yahoo Groups site whatsoever, which is where our daily information is disseminated and goes on to say that there is "no evidence ... of FedCure's intention to extract, analyze, synthesize, and effectively convey the information received to the public" (Appeal Response, pg. 3), even though that is exactly what we do every day when we answer those requests.

The appeal response makes no distinction whether a web-based organization is large or small, old or new, sophisticated or rudimentary. If this type of decision is allowed to stand, it would be virtually impossible for a small, new, unsophisticated web-based organization to ever receive a fee waiver from the government for requested information from one of its agencies. I do not believe that is what the FOIA stands for and would appreciate a response to this reconsideration at your earliest convenience.

Thank you for your consideration.

Sincerely,

Kenneth Linn, J.D., LL.M

*Serving Federal Prisoners and Their Families*
*Working to Reinstate Parole and to Increase Good Time Allowances*

"*Using Technology To Bring About Federal Criminal Justice Reform*" TM
2000-2006. All rights reserved

*Exhibit   I*



**U.S. Department of Justice**

Office of Information and Privacy

_Telephone: (202) 514-3642_                          _Washington, D.C. 20530_

                                                       **NOV - 8 2006**

Mr. Kenneth Linn, J.D., LL.M.
Federal CURE, Inc.                    Re:    Appeal No. 06-0453
Post Office Box 15667                        Request No. 2005-03326
Plantation, FL  33318-5667                   JGM:TEH

Dear Mr. Linn:

        This responds to your letter dated July 10, 2005, in which you request that I reconsider
my decision on your appeal from the action of the Federal Bureau of Prisons (BOP) on your
request for a waiver of fees associated with your request for access to records pertaining to the
use of ion spectrometer scanning equipment in BOP facilities. Specifically, you ask that I
reconsider my fee waiver decision in light of the decision in <u>Prison Legal News v. Lappin</u>, No.
05-1812, 2006 WL 1737483 (D.D.C. June 26, 2006).

        After careful consideration, I have determined that my original decision, as outlined in my
letter to you of June 29, 2006, was appropriate.

        You have specifically asked that I review Federal CURE, Inc.'s (FedCure) ability to
disseminate information to the public. (FedCure Request for Reconsideration, July 10, 2006, at
1). The record before me merely indicates that any information you receive will be available to
subscribers or visitors of FedCure's Web site in a newsletter which, according to FedCure, is only
posted on its Web site. While the Court in <u>Prison Legal News</u> did suggest that a Web site could
be viable distribution channel, it was not the basis of its finding that the plaintiff in that case
(PLN) had the intent and ability to disseminate the requested records. In fact, the Court
specifically stated that its finding was made "regardless of the viability of the PLN website as a
mechanism for distributing the requested information." <u>Prison Legal News</u>, 2006 WL 1737483,
at *8. The opinion then found that PLN had demonstrated an ability to disseminate information
through a nonelectronic means, specifically its distribution of a printed journal to the public, with
a readership population of approximately 18,000. <u>Id.</u>

        FedCure, however, does not provide the public with any printed material, and instead
relies solely on passively making information available to anyone who might seek access to it on
the Internet. Furthermore, a review of FedCure's Web site, shows that the release of your
newsletter is infrequent and irregular, with gaps as long as two years between some issuances.
There is also no indication of the size of readership or number of subscribers to this newsletter.
PLN, by contrast, was able to demonstrate that it has published a monthly newsletter since 1990,
and it was able to provide an estimated number of subscribers and size of readership. <u>See id.</u> at

-2-

*1. This information was a basis for the Court in Prison Legal News to determine that the plaintiff had a "represented readership of 'thousands each month'" and could "'widely disseminate' the requested information to the "'relevant public.'" Id. at *8. Conversely, requests such as yours, that make no showing of how the information would be disseminated other than by passively making it available to anyone who might seek access to it on the Internet, do not meet the standard for fee waiver purposes of demonstrating with particularity that the information will be communicated to the public.

Furthermore, you assert in your Request for Reconsideration that FedCure has a "chat site at Yahoo groups" that allows it to disseminate the information received. (FedCure Request for Reconsideration, July 10, 2006, at 1). I am aware of no legal authority to the effect that the existence of an Internet "chat room" is a sufficient demonstration of an ability to communicate to the public, nor is that consistent with common practice. FedCure's chat rooms are distinct from the PLN newsletters that were affirmatively distributed to a defined membership. Reliance on chat rooms administered by Yahoo Groups is also distinct from the holding in Linn v. Dep't of Justice, No. 92-1406, 1997 WL 577586, at *6 (D.D.C. May 29, 1997), where the plaintiff specified the particular lobbying organizations that would disseminate the received information to a defined mailing membership numbering in the thousands each month. Answering questions as provided by anyone who might seek access to the site on Yahoo does not demonstrate a comparable ability to transmit the requested information to the public.

If you remain dissatisfied with my action on your appeal, judicial review of it is available to you as indicated in my letter of June 29, 2006.

Sincerely,

Daniel J. Metcalfe
Director

*Exhibit   J*

Yahoo!  My Yahoo!  Mail    Make Y! your home page                    Search:                          Web Search



**YAHOO! GROUPS**    Sign In
New User? Sign Up                    Groups Home · Blog · Help



NETFLIX    **Join in the reindeer games**    FREE TRIAL    ▶ **Click here**
Rent "Rudolph the Red-Nosed Reindeer" today!

**FedCURE-org** · www.FedCURE.org (c) 2002-2008    Search for other groups...    Search

## Home

| | |
|---|---|
| Home | |
| **Members Only** | |
| Messages | |
| Post | |
| Files | |
| Photos | |
| Database | |
| Calendar | |
| Promote | |

**Join This Group!**

**Activity within 7 days:**    200 New Messages · New Questions

**Description**

**Info**  Settings

**Group Information**

Members: 1808
Category: Prisons
Founded: Oct 16, 2002
Language: English

⚙ Already a member?
Sign in to Yahoo!

**Yahoo! Groups Tips**

**Did you know...**
Show off your group to
the world. Share a photo
of your group with us.

**Best of Y! Groups**



Check them
out and
nominate
your group.

FedCURE is the world's leading advocate for America's 199,342+ federal inmates and their loved ones. We are working to reinstate parole and to increase good time



allowances; and we focus on issues in the federal prison system. FedCURE's central goal is to educate, inform and advocate for issues confronted by the federal prison population. We work diligently to educate and encourage elected officials to reduce crime through federal criminal justice reform in the United States. Seeking to empower federal prisoners and their families to be agents of change, FedCURE encourages all interested persons to join us in our efforts. Over 45,000 people were released from federal prison last year. We welcome your comments, suggestions and input. Click here to Visit our website and learn more about FedCURE.

To become a member of FedCURE go to: Donate and Join Now!

Many Thanks for all of your support.

FedCURE
P.O. Box 15667
Plantation, Florida 33318-5667

## Urgent Action Alert
### FEDERAL PAROLE BILL
H.R. 3072 - "A bill to revive the system of parole for Federal prisoners."
[Please click here to go to Alert]

---

### Message History

|      | Jan  | Feb | Mar | Apr | May | Jun | Jul  | Aug | Sep | Oct | Nov | Dec |
|------|------|-----|-----|-----|-----|-----|------|-----|-----|-----|-----|-----|
| 2008 | 271  |     |     |     |     |     |      |     |     |     |     |     |
| 2007 | 238  | 309 | 495 | 509 | 598 | 443 | 677  | 534 | 511 | 610 | 788 | 689 |
| 2006 | 439  | 462 | 367 | 209 | 311 | 433 | 326  | 316 | 288 | 262 | 231 | 201 |
| 2005 | 486  | 283 | 490 | 329 | 271 | 252 | 249  | 325 | 280 | 163 | 213 | 190 |
| 2004 | 148  | 108 | 166 | 229 | 145 | 205 | 217  | 243 | 168 | 186 | 356 | 473 |
| 2003 | 78   | 60  | 151 | 180 | 399 | 707 | 1236 | 736 | 652 | 200 | 139 | 101 |
| 2002 |      |     |     |     |     |     |      |     |     | 32  | 43  | 9   |

---

Yahoo! Answers What's this?

## What is Yahoo! Answers?

Yahoo! Answers, a new Yahoo! community, is a question and answer exchange where the world gathers to share what they know...and make each other's day. People can ask questions on any topic, and help others out by answering their questions.

Hide this tip

### Questions in Society & Culture

**What should I do?**
Asked By minky5 - 5 answers - 40 minutes ago - Answer Now

**why don't female teachers that have sex with a student get as harsh a sentence as a male teacher?**
Asked By fishinwidow - 4 answers - 5 hours ago - Answer Now

**Why do Jails and Prisons contain more Blacks and Hispanics than White's?**
Asked By Lolis - 2 answers - 12 hours ago - Answer Now

**is it appropriate for me to invite this girl to my daughter's b-day party?**
Asked By Jennifer S - 10 answers - 16 hours ago - Answer Now

**Did you know Kent Hovind from Dr. Dino is in prison because people hate the truth he preaches?**
Asked By sisterzeal - 9 answers - 16 hours ago

**Want to help answer other questions? Go to** Yahoo! Answers

### Group Email Addresses

Related Link:     http://www.FedCURE.org
Post message:   FedCURE-org@yahoogroups.com
Subscribe:        FedCURE-org-subscribe@yahoogroups.com
Unsubscribe:     FedCURE-org-unsubscribe@yahoogroups.com
List owner:       FedCURE-org-owner@yahoogroups.com

Join This Group!

Copyright © 2008 Yahoo! Inc. All rights reserved.
Privacy Policy - Terms of Service - Copyright Policy - Guidelines - Help