UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **FedCURE,** | |
| Plaintiff, | |
| v. | Civil Action No. 07-0843 (RBW) |
| **HARLEY G. LAPPIN, Director**<br>**Federal Bureau of Prisons,** | Judge Reggie B. Walton |
| | April 18, 2008 |
| Defendant. | |

**PLAINTIFF'S REPLY TO DEFENDANT'S
OPPOSITION TO CROSS-MOTION FOR
SUMMARY JUDGMENT**

Plaintiff FedCURE respectfully submits this reply to Defendant Harley G. Lappin's opposition to FedCURE's cross-motion for summary judgment.

**I.  FEDCURE AGREES WITH DEFENDANT'S
ACKNOWLEDGMENT THAT THE COURT
CANNOT CONSIDER THE DECLARATION
OF WILSON J. MOORER BECAUSE IT IS NOT
PART OF THE ADMINISTRATIVE RECORD.**

Defendant concedes that the Declaration of Wilson J. Moorer is not part of the administrative record. (Defendant's Reply at 2). However, Defendant attempts to convince the Court to consider the Declaration by arguing that it is "a procedural mechanism to recite the chronology of the correspondence between the parties to establish the record in this case." Id. The place to describe the chronology of the correspondence, however, is in the Statement of Facts in the Memorandum of Law. As FedCURE stated in its opposition to Defendant's summary judgment motion, the Court cannot consider the Declaration because it is outside the administrative record. (FedCURE's Opposition at 10-11).

Defendant also argues that the Court should not consider FedCURE's chat room "Message History" from 2002 to 2008, as evidence of FedCURE's satisfying the dissemination requirement. (Defendant's Reply at 2, fn. 3). As FedCURE explained in its opposition to BOP summary judgment, Defendant introduced the chat room message numbers and cited to the chat room URL. (FedCURE's Opposition at 31, fn. 12). Defendant cannot now argue that the Court should disregard this evidence.

Lastly, FedCURE discussed its Yahoo Groups chat site in its July 10, 2006, response to Defendant. (FedCURE's Opposition, Exhibit H).[1] This letter is part of the administrative record. Therefore, the message information is part of the administrative record.

## II. FEDCURE HAS MET ITS BURDEN TO ESTABLISH ITS ENTITLEMENT TO A FEE WAIVER AND/OR REDUCTION.

### A. FedCURE Has Established that Disclosure Is in the Public Interest.

**1**. *Institute for Wildlife Protection* **Supports FedCURE's Intent to Analyze and Disseminate the Ion Spectrometer Information.**

Defendant argues that *Institute for Wildlife Protection v. Fish and Wildlife Service*, 290 F.Supp.2d 1226 (D.C. Or. 2003), does not support FedCURE's claim that it will disseminate and analyze the ion spectrometer information. However, Defendant's attempt to distinguish *Institute for Wildlife Protection* from FedCURE's case fails.

Defendant claims that this Institute provided more information to the agency about dissemination of the sought-after material than did FedCURE. (Defendant's Reply at 3-4). First, Defendant cited the Institute's explaining that its charter and primary organizational purpose was

---

[1] The exhibits are those attached to FedCURE's Opposition to Defendant's Motion for Summary Judgment.

disseminating information about government operations affecting wildlife. Second, Defendant pointed out that the court found that the Institute described its expertise in analyzing the material and its "ability and intent to 'produce a shorter, abstracted, informative analysis for the public.'" Third, Defendant noted the various venues that the Institute planned to release the information to — university classes, postings to web pages and electronic mailing lists, deposits in libraries and publication in scientific journals and popular news outlets. Id. at 4.

None of the above factors precludes FedCURE's reliance on *Institute for Wildlife Protection*. First, FedCURE demonstrated that dissemination of information about the federal prison system is an essential part of its "organizational purpose." In its November 11, 2005, letter concerning its waiver request, FedCURE stated:

> FedCure is the largest private organization dealing with federal inmate issues. Its website, which provides timely news for the public has been up for about two years and has already had over 250,000 hits. Its chat site at Yahoo Groups has as many as 100 requests for information each day.

(FedCURE's Opposition, Exhibit E).

Second, FedCURE established its expertise in analyzing the information it sought, stating in its April 20, 2005, letter:

> FedCure is the world's leading expert in matters relating to federal inmates. Collectively, five of FedCURE's 14 board members have over 50 years of in prison experience — behind the fence — as former federal inmates. ... Our lifetime members include the best criminal attorneys in the United States.

Id. at Exhibit C.

Third, although FedCURE did not list as many outlets for disseminating the ion spectrometer information as the Institute did for the endangered species evaluation, FedCURE

referred to electronic communication, as did the Institute — its website, web pages, and newsletter. *Institute for Wildlife Protection* is therefore directly on point for FedCURE's case.

### 2. Defendant Mischaracterizes FedCURE's Statements About the Size of the Audience That Will Benefit from the Ion Spectrometry Data.

Defendant claims that FedCURE mistakenly argues that the government has the burden to document the number of individuals benefitting from the ion spectrometer data. Defendant's argument arises from a misreading of FedCURE's opposition.

Defendant states:

> Plaintiff also argues that Defendant has failed to produce any documentation of the number of individuals who would read about and benefit from the ion spectrometry information ... However, it is Plaintiff who has the burden to produce such documentation to justify its request for a fee waiver.

(Defendant's Reply at 4).

Defendant misstates FedCURE's argument. The actual language is:

> Moreover, Defendant cannot rely upon its excuse that the information would reach only a small subset of people. First, Defendant does not provide any documentation of the number of individuals who would read about and benefit from the ion spectrometry information. Defendant's characterization of this group as "small" is wholly speculative.

(FedCURE's Opposition at 25-26). FedCURE was responding to Defendant's claim that only a small group of people would read the published analysis. FedCURE was pointing out that Defendant had not provided any figure to prove the reading public would be "small."

Given its mistaken interpretation of FedCURE's argument, Defendant's reliance on reliance on *Carney v. Dep't. of Justice*, 19 F.3d 807 (2nd Cir. 1994), is wrong. Rather, as

FedCURE discussed extensively in its Opposition, Carney supports its position that FedCURE's audience is a "broad-cross section." (FedCURE's Opposition at 26-27). The Second Circuit in Carney found even though the requester, a scholar, would not reach a general audience, his dissertation and proposed articles and book would:

> ... by enlightening interested scholars [be] of great benefit to the public at large. To suggest otherwise is to ignore the important role of academe in our democracy. **The relevant inquiry, as we see it, is whether the requester will disseminate the disclosed records to a reasonably broad audience of person interested in the subject.**

Carney, 19 F.3d at 814. Carney therefore supports FedCURE's position on the audience size necessary to support the public interest.

    Defendant also deliberately mischaracterizes FedCURE's argument by stating:

> Plaintiff also argues that "proof of the ability to disseminate the released information to a broad cross-section of the public is not required," and "that the prison population was a sufficient audience to meet the contribution to the public understanding requirement."

(Defendant's Reply at 5). Defendant leads the reader to believe that these two conclusions are FedCURE's. Both, however, are direct citations from the courts. The first is from *Judicial Watch, Inc., v. Dep't of Justice*, 365 F.3d 1108, 1126 (D.C. Cir. 2004), and the second is from *Linn v. Dep't of Justice*, No. 92-1406, 1997 U.S. Dist. LEXIS 9321, *19 (D.D.C. May 29, 1997). This is precedent, supporting summary judgment in FedCURE's favor.

    Defendant cannot expect its mischaracterizations of FedCURE's language to support summary judgment in its favor.

### 3. The Information's Technical Nature Is Irrelevant to FedCURE's Intent to Extract, Analyze, Synthesize and Effectively Convey the Data to the Public.

Defendant next argues that the large volume and technical nature of the ion spectrometer data requires FedCURE to have submitted evidence about the latter's intention to "extract, analyze, synthesize and effectively convey the information to the public." However, Defendant does not cite any authority for requiring a high degree of specificity about interpreting technical information for public consumption. Nor does Defendant cite any authority for such a requirement when the government must collect the information from 71 facilities.

The question also arises about how FedCURE could have, in its fee waiver application, actually shown how it would analyze the data. Could Defendant require that FedCURE provide a sample analysis? Doing so would be impossible because FedCURE does not have the data. Moreover, Defendant does not provide any authority requiring such a sample analysis.

The information the organization in *Institute for Wildlife Protection* sought was also highly technical.

> (1) "All petitions to list a species, sub-species, or distinct population segment that use Geographic Information Systems (GIS) as part of the petition; and (2) all petitions to list a species, sub-species, or distinct population segment that use CAP analysis as part of the petition." GIS is a form of computerized mapping, and GAP analysis evaluated the "gap" between protected habitats and the needs of the species.

290 F. Supp.2d at 1227.

### 4. FedCURE Established Its Intent to Analyze the Data.

The *Institute for Wildlife Protection* court found that the organization's stating that it would "produce a shorter, abstracted, informative analysis for the public" to be a sufficient explanation of the analysis of the data. Id. at 1231.

Defendant is wrong in claiming that FedCURE would merely post the information. (Defendant's Reply at 5). Rather, FedCURE explained that it regularly analyzed information.

> In FedCure's request for information, we specifically advised that FedCure has a website *and a chat site* at Yahoo groups. We state "Its chat site at Yahoo Groups has as many as 100 requests for information each day" (Request ¶ 2). The appeal response does address FedCure's Yahoo Groups site whatsoever, which is where our daily information is disseminated and goes on to say that there is "no evidence ... of FedCure's intention to extract, analyze, synthesize, and effectively convey the information received to the public" (Appeal Response, pg. 3), even thought that is exactly what we do every day when we answer those requests.

(FedCURE's Opposition, Exhibit H, July 10, 2006, Letter from Kenneth Linn to Daniel Metcalfe, Director, Office of Information & Privacy). (Italics in original). This explanation brings this case in line with *Institute for Wildlife Protection*.

Defendant again brings up the infrequent schedule of FedCURE's newsletter and the passivity of making the information available to those accessing the Internet site. FedCURE addressed both points in its Opposition at pages 28-30.

Moreover, as FedCURE explained in its Opposition, *National Security Archive v. Dep't of Defense*, 880 F.2d 1381 (D.C. Cir. 1989), rebuts the "requirement" of a regular publication and analyzing the information to merit a fee waiver. The organization in that case planned to publish the actual documents rather than analyzing or abstracting them. Id. at 1386. Additionally, the

court found that the organization was a representative of the news media even though it had previously published only one book.  Id.

### 5. Linn Does Apply to this Case.

Defendant claims that *Linn v. Dep't of Justice*, No. 92-1406, 1997 U.S. Dist. LEXIS 9321, *19 (D.D.C. May 29, 1997) — and its finding that FedCURE would sufficiently disseminate the information sought — does not apply here.  In that case, the court found that:

> Plaintiff [Linn] asserts that "there are federal inmate lobbying organizations (... CURE ...) who have expressed an interest in BOP policy statements in general and the response to Plaintiff's FOIA requests in particular.  Their member mailings number in the thousands each month and they have both an interest and the ability to further disseminate the information. ...  Therefore, based on Plaintiff's representations that he will supply the information he has received to organizations which can widely disseminate it to the relevant public, and because this record gives the Court no reason to doubt the truth of such representations, the Court finds that the Plaintiff's fee waiver must be granted.

*Linn v. Dep't of Justice*, 1997 U.S. Dist. LEXIS 9321, *20.  Linn thus provides precedent for granting the fee waiver here.

FedCURE cited Linn in its Opposition at p. 31.  FedCURE further stated in its Opposition that Defendant could not challenge its ability to disseminate the information the former seeks in this case because Defendant did not challenge the dissemination in Linn.

However, even if FedCURE is wrong about Defendant's being able to challenge the ability to disseminate here, the record evidence supports finding that FedCURE can adequately publicize the ion spectrometer data.

### B. FedCURE Demonstrated that It Is a Representative of the News Media.

To undercut FedCURE's contention that it is a representative of the news media, Defendant attempts to distinguish two decisions FedCURE relied upon, *National Security Archive v. Dep't of Defense*, 880 F.2d 1381 (D.C. Cir. 1989), and *Electronic Privacy Information Center v. Dep't of Defense*, 241 F.Supp.2d 5 (D.D.C. 2003). Defendant's arguments, however, are not persuasive.

Concerning National Security Archive, Defendant points out that the organization's previous publication of a book and its intention to create "document sets" from the FOIA material were undisputed. (Defendant's Reply at 7). These factors, however, do not distinguish National Security Archive from this case. Indeed, FedCURE pointed out that the Archive did not have an extensive history of publications. Nevertheless, the court did not let this "deficiency" prevent a finding that the Archive was a news media representative. (FedCURE Opposition at 33).

Defendant then focuses on what additional materials and research aids the Archive would include in the document set in addition to the Defense Department information. (Defendant's Reply at 7). However, the National Security Archive court did not find that these additional materials and reference guides were necessary to the news media representative classification. Indeed, the court pointed out that *The Pentagon Papers*, with only an introduction and an index, was sufficient for this category. 880 F.2d at 1387.

In discussing the legislative history of the news media representative exception, the National Security Archive court noted that the term was one "which we are to interpret broadly ...." National Security Archive squarely controls this case.

Defendant then tries to distinguish Electronic Privacy Information Center from this case by focusing on the Center's publishing history compared to that of FedCURE. (Defendant's Reply at 7). However, FedCURE did not cite Electronic Privacy Information Center concerning the organization's publications. FedCURE first cited Electronic Privacy Information Center for the court's acknowledgment of the effect of technological changes upon news dissemination. (FedCURE Opposition at 29). FedCURE's next citation of the case was for the proposition that an advocacy organization, such as a § 501(c)(3), could be a news media representative. Id. at 34-35. Thus, Electronic Privacy Information Center also applies here.

Neither case stands for the fact that a certain amount of publishing activity is necessary to warrant a news media representative fee waiver.

### C. FedCURE as a Noncommercial Scientific Institution.

FedCURE relies upon its argument in its Opposition to Defendant's motion for summary judgment. (FedCURE's Opposition at 35).

                                                Respectfully submitted,

April 18, 2008

                                                 /s/  *James R. Klimaski*
James R. Klimaski, #243543
Lynn I. Miller, #941559
Klimaski & Associates, P.C.
1625 Massachusetts Avenue NW – Suite 500
Washington, DC  20036-2245
202-296-5600

***Attorneys for Plaintiff***

**Certificate of Service**

I certify that the foregoing ***Plaintiff's Reply to Defendant's Opposition to Cross-Motion for Summary Judgment*** will be served to the following counsel for Defendant in this case by the Court's CM/ECF system after proper filing of an Adobe PDF version of this item on the Court's secure website on April 18, 2008:

Judith A. Kidwell
Assistant U.S. Attorney
555 4th Street NW – Room E-4905
Washington, DC  20530
judith.a.kidwell@usdoj.gov

                                                                            */s/ Jon Pinkus*
                                                                            Jon Pinkus
                                                                            Klimaski and Associates, PC