**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

FEDERAL CURE (FedCURE)          :
                                :
                                :          Civil Action No. 07-843
          Plaintiff,            :
                                :
     v.                         :
                                :
HARLEY G. LAPPIN, DIRECTOR,    :
FEDERAL BUREAU OF PRISONS :
                                :
                                :
          Defendant.            :
_____ :

**Memorandum Opinion**

Federal CURE, Inc. ("FedCURE" or "the plaintiff") brought this lawsuit against the

Federal Bureau of Prisons ("BOP" or "the defendant") claiming that the defendant improperly

denied the plaintiff's fee waiver request for information sought under the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552 (2006). Complaint ("Compl.") ¶¶ 20-21. Currently

before the Court is the Defendant's Motion for Summary Judgment and its supporting

memorandum ("Def.'s Mem.") made pursuant to Federal Rule of Civil Procedure 56, which is

challenged by the plaintiff.  Plaintiff's Opposition to Motion for Summary Judgment ("Pl.'s

Opp'n").[1]  In the plaintiff's opposition, in addition to opposing summary judgment in favor of the

defendant, the plaintiff has cross-motioned the Court to grant summary judgment in its favor.

---

[1] Also filed in connection with the defendant's motion are the Defendant's Reply and
Memorandum of Points and Authorities in Opposition to Plaintiff's Opposition and Cross-
motion for Summary Judgment ("Def.'s Reply"), the Plaintiff's Reply to Defendant's Opposition
to Cross-motion for Summary Judgment (Pl.'s Reply"), the defendant's Statement of Genuine
Issues of Fact Not in Dispute ("Def.'s Stmt."), and the plaintiff's Statement of Material Facts Not
in Dispute ("Pl.'s Stmt.").

Upon consideration of the parties' submissions, the Court will deny the defendant's motion for summary judgment and grant summary judgment in favor of the plaintiff.

## I.  Factual Background

The plaintiff, FedCURE, "is a 501(c)(3) non-profit organization, [which] advocates for the federal inmate population and their families." Compl. ¶ 6. FedCURE "also provides information to the public about the workings of the BOP." Id. ¶ 7. On February 25, 2005, FedCURE submitted a FOIA request to the BOP's FOIA/Privacy Act ("PA") unit seeking:

> 1) all information about the accuracy of the ion spectrometer scanning method and the number of visitors turned away at all BOP facilities (by facility) because of the results of the scanning method since institution of its use,
> 2) all information relating to the training methods used for personnel operating this equipment and staff comments as to these methods and
> 3) all records of equipment failure and repairs.

Def.'s Mem., Exhibit ("Ex.") 2 (Letter from Kenneth Linn, Chairman of FedCURE, to BOP FOIA/PA unit, dated February 25, 2005) ("Linn Feb. 25, 2005 Letter").

The BOP's FOIA/PA office acknowledged its receipt of FedCURE's FOIA request in a letter dated April 4, 2005. Def.'s Mem., Ex. 3 (Letter from Wanda M. Hunt, Chief of BOP FOIA/PA Section, to Kenneth Linn, Chairman of FedCURE, dated April 4, 2005) ("Hunt Apr. 4, 2005 Letter"). The letter informed FedCURE that the search for the requested information would require 142 hours at $7.00 per quarter hour for professional time to process the request for a total cost of $3,976.00, excluding duplication fees of 10 cents per page. Id. The letter also informed FedCURE that the BOP would conduct the search if the $3,976.00 search fee was paid within 30 days. Id.

In an April 20, 2005, letter, FedCURE requested that the BOP waive the $3,976.00 search fee and any copying fees. Def.'s Mem., Ex. 4 (Letter from Kenneth Linn, Chairman of

FedCURE, to BOP FOIA/PA unit, dated April 20, 2005) ("Linn Apr. 20, 2005 Letter"). In

support of this fee waiver request, FedCURE's letter asserted, <u>inter alia</u>, that FedCURE is a non-

profit organization that receives less than $5,000.00 in yearly donations and that FedCURE is a

"noncommercial scientific institution," and a "representative of the news media" by virtue of the

publication of its newsletters. <u>Id.</u>  FedCURE additionally asserted that the availability of

information about the ion spectrometer was in the public interest and not in FedCURE's

commercial interest, that FedCURE had received numerous requests from the public for

information about the ion spectrometer, and that it intended to publish the ion spectrometer

information in its newsletter and on its website. <u>Id.</u>

        In a letter dated September 26, 2005, the BOP denied FedCURE's request for a FOIA fee

waiver, finding that FedCURE did not meet the statutory definitions of a "noncommercial

scientific institution" or "a representative of the news media" under 5 U.S.C. § 552(a). Def.'s

Mem., Ex. 5 (Letter from Wanda M. Hunt, Chief of BOP FOIA/PA Section, to Kenneth Linn,

Chairman of FedCURE, dated September 26, 2005) ("Hunt Sept. 26, 2005 Letter"). On

November 1, 2005, FedCURE administratively appealed the denial of its FOIA fee waiver

request to the Office of Information and Privacy ("OIP") at the Department of Justice ("DOJ").

Def.'s Mem., Ex. 6 (Letter from Kenneth Linn, Chairman of FedCURE, to OIP, dated November

1, 2005) ("Linn Nov. 1, 2005 Letter"). In its administrative appeal, FedCURE reasserted that it

satisfied the statutory prerequisites for a fee waiver and also cited cases "holding that the public

interest benefit test is to be liberally construed." <u>Id.</u>

        On June 29, 2006, the OIP determined that FedCURE's FOIA fee waiver request had

been properly denied by the BOP. Def.'s Mem., Ex. 7 (Letter from Daniel J. Metcalfe, Director

of OIP, to Kenneth Linn, Chairman of FedCURE, dated June 29, 2006) ("Metcalfe June 29, 2006

Letter"). FedCURE then submitted a "Reconsideration of Appeal Denial" on July 10, 2006,

Def.'s Mem., Ex. 8 (Letter from Kenneth Linn, Chairman of FedCURE, to Daniel Metcalfe,

Director of OIP, dated July 10, 2006) ("Linn July 10, 2006 Letter"), which was denied by the OIP

on November 8, 2006, Def.'s Mem., Ex. 9 (Letter from Daniel J. Metcalfe, Director of OIP, to

Kenneth Linn, Chairman of FedCURE, dated November 8, 2006) ("Metcalfe Nov. 8, 2006

Letter"). FedCURE subsequently filed this action on May 8, 2007.

## II.  Standard of Review

The Court may grant a motion for summary judgment if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with affidavits or declarations, show

that there is no genuine issue of material fact and that the moving party is entitled to judgment as

a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the burden of demonstrating the

absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

Factual assertions in the moving party's affidavits or declarations may be accepted as true unless

the opposing party submits his own affidavits or declarations or documentary evidence to the

contrary. Neal v. Kelly, 963 F.2d 453, 456 (D.C. Cir. 1992).

## III.  Legal Analysis

In a case regarding a FOIA fee waiver request, the Court determines the matter de novo,

basing its decision solely on the record that was before the agency.  5 U.S.C. § 552 (a)(4)(A)(vii);

see also Nat'l Treasury Employees Union v. Griffin, 811 F.2d 644, 648 (D.C. Cir.1987). The

legislative history of the FOIA fee waiver provision indicates that it "'is to be liberally construed

in favor of waivers for noncommercial requesters.'" McClellan Ecological Seepage Situation v.

Carlucci, 835 F.2d 1282, 1284 (9th Cir. 1987) (quoting 132 Cong. Rec. S14298 (Sept. 30, 1986)

(statement of Sen. Leahy)); see also Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C.

Cir. 2003) (construing the waiver provision liberally).  The fee waiver provision itself provides

that:

> [d]ocuments shall be furnished without any charge . . . if disclosure
> of the information is in the public interest because it is likely to
> contribute significantly to public understanding of the operations and
> activities of the government and is not primarily in the commercial
> interest of the requester.

5 U.S.C. § 552 (a)(4)(A)(iii)(emphasis added).  Thus, the statute prescribes a two-pronged test

the requester must satisfy to qualify for a FOIA fee waiver.  The first prong requires that the

disclosure be in the public interest, while the second prong requires that the information sought

not be primarily in the requester's commercial interests.

In assessing whether a request satisfies the public and non- commercial interests

requirements of § 552(a)(4)(A)(iii), 28 C.F.R. § 16.11 delineates six factors that further refine the

two-pronged FOIA fee waiver test.  The first four factors address the public interest prong,

probing: (1) "Whether the subject of the request concerns the 'operations or activities of the

government,'" (2) "Whether the disclosure 'is likely to contribute to an understanding of

government operations or activities,'" (3) "Whether disclosure of the requested information will

contribute to 'public understanding,'" and (4) "Whether the disclosure is likely to contribute

'significantly' to public understanding of government operations or activities."  28 C.F.R. §

16.11(k)(2).  The final two factors concern the requester's commercial interest, inquiring: (5)

"Whether the requester has a commercial interest that would be furthered by the requested

disclosure," and (6) "Whether any identified commercial interest of the requester is sufficiently

large, in comparison with the public interest in disclosure," thereby rendering the disclosure

"primarily in the commercial interest of the requester."  Id. § 16.11(k)(3).

The BOP concedes that FedCURE's request probably satisfies the first of the six factors.

Def.'s Mem. at 22.  This Court is inclined to agree, as information regarding the use of ion spectrometers at federal prisons clearly "concern[s] [an] identifiable operation[] or activit[y] of the federal government, with a connection that is direct and clear, not remote or attenuated." 28 C.F.R. § 16.11 (k)(2)(i).  The BOP likewise does not contend that FedCURE fails to meet the requirements of factors five or six.  See Def.'s Mem. As a § 501(c)(3) non-profit organization, Compl. ¶ 6, the Court agrees that FedCURE's requests are not rooted in a "purpose that furthers [its] commercial, trade, or profit interests," 28 C.F.R. § 16.11 (b)(1); therefore, the fifth and sixth factors of the regulation are met, and accordingly, the second prong of FOIA's fee waiver provision is satisfied.

"For a request to be in the 'public interest,' [all] four [public interest] criteria must be satisfied," Judicial Watch v. Dep't of Justice, 365 F.3d 1108, 1126 (D.C. Cir. 2004), a burden that is shouldered by the requesting party based on the record that was before the agency, Larson v. CIA, 843 F.2d 1481, 1483 (D.C. Cir.1988).   The BOP asserts that FedCURE fails to satisfy the requirements of factors two, three and four, and therefore has not satisfied the first prong of the fee waiver provision of 5 U.S.C. § 552(a)(4)(A)(iii). Def.'s Mem. at 23-32. The Court will address each of these three factors in turn.

      1.  Has FedCURE Demonstrated that Disclosure is "Likely to Contribute" to an Increased Public Understanding of Government Activities or Operations?

To satisfy the second of the six factors, FedCURE must show that the information requested would be "meaningfully informative about government operations or activities in order to be 'likely to contribute' to an increased public understanding of those operations or activities." 28 C.F.R. § 16.11 (k)(2)(ii). The BOP contends that what FedCURE seeks is highly technical information regarding ion spectrometry, which it has no plans to analyze, synthesize or otherwise

digest, and which would only be conveyed to a small group of people.  Def.'s Mem., Ex. 7 at 2.

Accordingly, the BOP argues that the requested information is unlikely to be "meaningfully

informative" or likely to contribute to "increased public understanding."  Def.'s Mem. at 24.

FedCURE counters by stating that it does analyze technical information when it answers requests

for information on its Yahoo discussion group, Pl.'s Opp'n at 25, and that case law, specifically

Carney v. Dep't of Justice, 19 F.3d 807 (2d Cir. 1994), rejects the BOP's "small audience"

argument. Pl.'s Opp'n at 26.  For the reasons explained below, the Court sides with the plaintiff.

_____The Court acknowledges that while Carney was decided in a different context, i.e., the

academic arena, the general principles of the case support the plaintiff's position.   The plaintiff

in Carney was a doctoral student who sought government records in order to use that information

in preparing several scholarly papers and a book.  Id. at 810.  Carney also advised the DOJ that

he planned to use the information in several college courses he taught. Id. The DOJ argued that

despite Carney's assertions, because the information was scholarly in nature, the information

would not reach a general audience and thus the information would fail to benefit the public at

large.  Id. at 815. The Carney court disagreed with the DOJ, stating that the "relevant inquiry, as

we see it, is whether the requester will disseminate the disclosed records to a reasonably broad

audience of persons interested in the subject."  Id.  The Carney court further stated that there was

very little information written pertaining to the subject of the plaintiff's FOIA request and that

the court  was satisfied, based on the submissions to the court, that the plaintiff would

disseminate the records to a "reasonably broad audience of persons interested in the subject." Id.

Here, FedCURE stated that it analyzes and synthesizes technical information when

processing Yahoo discussion group inquiries.  Pl.'s Opp'n at 25. Like the plaintiff's desire in

Carney to obtain information and relay it to his fellow scholars and the students he taught,

FedCURE seeks to relay ion spectrometry information to federal inmates and their families.  Id. at 27. Therefore, the information disseminated by FedCURE via its website, newsletter and chat room will inevitably trickle down from those who have sent inquiries to others who have an interest related to prisons.  Thus, like the Carney court, "[this Court is] satisfied that [FedCURE] will disseminate the disclosed records to a sufficiently broad audience of [federal inmates, their families and others] interested in [the activities and operations of the federal prison system]" and thus, increase the limited information currently written regarding the subject matter of the plaintiff's FOIA request.  Carney, 19 F.3d at 815.

Furthermore, this Court is inclined to adopt the rationale employed in Forest Guardians v. U.S. Dep't of Interior, where the Tenth Circuit Court of Appeals held that the plaintiff had satisfied the second and third factors of the above referenced regulation because the plaintiff "publish[d] an online newsletter, which is emailed to more than 2,500 people and stated that it intend[ed] to establish an interactive grazing website with information obtained from [the defendant]."  416 F.3d 1173, 1180 (10th Cir. 2005) (internal quotations omitted).  FedCURE also publishes an online newsletter, which it emails to roughly 2,000 subscribers,[2] and maintains a website with daily news updates.  Pl.'s Opp'n, Ex. C at 1.  FedCURE need not, as the BOP argues, Def.'s Mem. at 29, distribute printed materials in order to prove that they can contribute to an increased public understanding of the government's activities.  Def.'s Mem. at 29.  Indeed, compared with the plaintiffs in Forest Guardians, who had not yet even established a website, FedCURE has actually done more to demonstrate their ability to convey meaningful information through their already established website, which has received "over 250,000 hits", i.e., viewings, since its inception two years ago.  Pl.'s Opp'n, Ex. E at 1.   Liberally construing the fee waiver

---

[2] See http://www.fedcure.org/newsletter.shtml.

8

requirements in the favor of the requester as it must, the Court finds that FedCURE's website, newsletter and chat room are an adequate means of disseminating information about ion spectrometry.

Therefore, the Court must conclude that FedCURE has met its burden of showing that the requested information would be "meaningfully informative about government operations or activities so as to be 'likely to contribute' to an increased public understanding of those operations or activities." 28 C.F.R. § 16.11(k)(2)(ii).

### 2.  Has FedCURE Demonstrated that the Disclosed Information will Reach a Reasonably Broad Group of Interested Persons?

To satisfy the third factor, FedCURE must show that disclosure of the requested information will contribute to "public understanding" of government operations or activities by reaching a "reasonably broad audience of persons interested in the subject [area]." Id. § 16.11(k)(2)(iii). To make this showing, a requester must demonstrate the "intention to effectively convey [the requested] information to the public . . . ." Id.

FedCURE's intention to disseminate the requested information cannot be challenged and it contends that its website, newsletter, and Yahoo discussion group sufficiently demonstrate its ability to disseminate the requested information to a reasonably broad segment of the public. Pl.'s Opp'n at 27.  The BOP asserts, however, that FedCURE's request for information is inadequate to merit a fee waiver because it fails to demonstrate its ability to disseminate the requested materials to a reasonably broad segment of the public, since its website is a passive distribution source, and its newsletter is infrequently published.  Def.'s Mem. at 25-26.  The Court again agrees with the plaintiff for the reasons explained below.

In Prison Legal News v. Lappin, this Court granted Prison Legal News' ("PLN") motion

for summary judgment regarding the BOP's denial of a FOIA fee waiver.  436 F. Supp. 2d 17, 27 (D.D.C. 2006).  There, PLN clearly demonstrated that it had the ability to disseminate information to the public by having provided the BOP with information that 3,400 subscribers received its printed monthly journal and that it had an actual readership population of 18,000, along with having an operational website.  Id. at 19, 26-27.  This Court reached that conclusion despite the government's challenge to the viability of the website as a distribution channel.  Id. at 26.

Although this Court never ultimately decided whether a website is a sufficient means to distribute information in Prison Legal News, FedCURE relies upon this case as further support that a website, coupled with reported subscribers and a readership base, demonstrates an organization's ability to distribute FOIA requested material to the public.  Pl.'s Opp'n at 30, Prison Legal News, 436 F. Supp. 2d at 26-27 (stating that "with 3,400 reported subscribers and an estimated readership population of 18,000, PLN ha[d] demonstrated its ability to distribute the printed journal to the public").  PLN specifically provided the information about its readership base in its FOIA request.  Prison Legal News, 436 F. Supp. 2d at 19.  It also stated that its website supplemented an already sizable subscriber and readership base.  Id.  Here, FedCURE has similarly provided reasonably specific numbers detailing its subscribers and readership.  In its appeal letter to the OIP, FedCURE states: "[Our] website, which provides timely news for the public has been up for about two years and has already had over 250,000 hits.  [Our] chat site at Yahoo Groups had as many as 100 requests for information each day."  Pl.'s Opp'n, Ex. E at 1. Additionally, FedCURE emails its newsletter to 2,000 subscribers.  See http://www.fedcure.org/ newsletter.shtml.

This Court in Prison Legal News determined that PLN had demonstrated its ability to

disseminate the requested information because it published a newsletter with a subscriber population of approximately 3,400, and an actual readership population of around 18,000.  Prison Legal News, 436 F. Supp. 2d at 19, 26-27.  FedCURE, in comparison, produces an online newsletter with a subscriber base of 2,000 and a Yahoo chat group with 2,500 subscribers.  See http://groups.yahoo.com/group/FedCURE-org. The information provided regarding the activity on its chat site and website, coupled with the estimated subscriber base who receive its newsletter, makes this case factually similar to Prison Legal News, and thus presents a strong case for treating FedCURE's dissemination efforts as an effective means of distributing the requested information to a broad group of interested persons.

Nonetheless, the BOP contends that FedCURE's and PLN's abilities to disseminate the requested information is not comparable because PLN published a printed journal on a monthly basis, whereas FedCURE publishes its online newsletter less frequently.[3] Def.'s Mem. at 29. While FedCURE may publish infrequently, that fact alone does not prove that FedCURE cannot disseminate information to a reasonably broad section of the public.  Thus, liberally construing the fee waiver provision of the FOIA in the favor of the requester leads the Court to the conclusion that FedCURE has the necessary means to disseminate the requested information to a reasonably broad segment of the public.

Finally, FedCURE's stature as the largest advocacy group for federal inmates, Compl.¶ 6, lends credence to its position that a substantial number of individuals have and will continue to access its newsletters, chat room services and daily news updates. Accordingly, for all of the reasons outlined above, the Court must agree that FedCURE's dissemination activity would

---

[3] A visit to FedCURE's website (<http://www.fedcure.org/newsletter.shtml>) reveals that it released newsletters in April 2003, June 2003, two volumes in Summer 2005, and again one volume in the  Fall 2005, March 2006, October 2006, December 2006, and June 2007.

cause the requested information to reach an audience "reasonably broad" enough to meet the standard required for a FOIA fee waiver.

> ### 3.  Has FedCURE Demonstrated that Disclosure of the Information Requested will Contribute "Significantly" to Public Understanding of Government Operations or Activities?

Finally, satisfaction of the fourth of the six-part test requires FedCURE to show that the disclosure will contribute significantly to the public's understanding of government operations or activities. To make this showing, FedCURE must demonstrate that public knowledge will be enhanced following the disclosure.  28 C.F.R. § 16.11 (k)(2)(iv).  Existing public availability of the information is also weighed when determining the degree of significance that will be derived from the disclosure.  Forest Guardians, 416 F.3d at 1181.

The BOP argues that disclosure of the information sought by the plaintiff will not contribute significantly to public understanding because of the limited number of individuals who will receive the information, and the even smaller subset that will understand it due to the highly technical nature of the information.  Def.'s Mem. at 31.  As support of its position, FedCURE also relies upon its arguments concerning why disclosure will significantly contribute to public understanding.  Pl.'s Opp'n at 32.  The Court agrees with the plaintiff for the reasons explained below.

In order to prove that the information requested will significantly contribute to the public's understanding of government operations or activities, FedCURE must show that the information disclosed will enhance public understanding of the BOP's use of ion spectrometry, as opposed to the public's understanding of ion spectrometry prior to the disclosure.  As evidenced by the requests submitted to FedCURE's Yahoo chat group, Pl.'s Opp'n, Ex. E at 1, public knowledge of ion spectrometry technology is limited.  Indeed, "[i]nformation regarding

the details of ion spectrometry is not currently in the public domain." Pl.'s Opp'n at 19. Thus, regardless of FedCURE's specific plan for interpreting the information before disseminating it, any dissemination of information regarding the BOP's use of ion spectrometry will enhance the public's understanding of the technology because, as the plaintiff asserts and the defendant does not contest, information regarding ion spectrometry is not available to the public. See id.

The availability of the requested information prior to disclosure must also considered when determining whether a requester satisfies the fourth prong of 28 C.F.R. § 16.11(k)(2). Forest Guardians, 416 F.3d at 1181. In Forest Guardians, the court found that where information was publicly available only in the form of various unorganized sources,[4] the plaintiff had satisfied this prong of the six-factor test because they planned to compile the information and present it on an interactive website. Id.; see also Campbell v. United States Dep't of Justice, 164 F.3d 20, 36 (D.C. Cir. 1999) ("[T]he mere fact that material is in the public domain does not justify denying a fee waiver; only material that has met a threshold level of public dissemination will not further 'public understanding' within the meaning of the fee waiver provisions."). Here, the information requested is not even in the public domain; it does not have an existing "threshold level of public dissemination," as the public currently has no access to it, accordingly current availability of the information is not a bar to the plaintiff's fee waiver request.

FedCURE desires to compile currently unpublicized ion spectrometry data in order to provide a centralized source of information for federal inmates and their families. Certainly, placing such data on a website, in an online newsletter, or in response to chat queries is an

---

[4] The court specifically noted that the information was not available in public libraries, as part of the administrative record, or on the internet, but was instead scattered throughout courthouses in the western part of the country, in newspaper articles and affidavits. Forest Guardians, 416 F.3d at 1181.

acceptable manner of making ion spectrometry data accessible to the public.  Such data would

then be available for consumption by interested parties, in centralized and easily accessible

forums, leading the Court to conclude that the plaintiff has satisfied the fourth factor of the test

for assessing a FOIA fee waiver request.

## IV.  Conclusion

For the aforementioned reasons, the Defendant's Motion for Summary Judgment is

**DENIED**.  Because the Court agrees that FedCURE has satisfied the requirements for a FOIA

fee waiver, the Court need not address FedCURE's alternative argument that it is deserving of a

fee reduction at this time. Thus, the Court will **GRANT**, the plaintiff's cross-motion for

summary judgment.

**SO ORDERED** on this 18th day of March, 2009.[5]

REGGIE B. WALTON
United States District Judge

---

[5]  This Memorandum Opinion accompanies an Order that amends an earlier Order issued
by this Court on September  30, 2008.